No. 25-40624

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

ASSOCIATION OF AMERICAN PHYSICIANS AND SURGEONS
EDUCATIONAL FOUNDATION, AAPS; PIERRE KORY, M.D., M.P.A.;
PAUL E. MARIK, M.D., FCCM, FCCP,
Plaintiffs-Appellants
v.
AMERICAN BOARD OF INTERNAL MEDICINE, ABIM; AMERICAN
BOARD OF OBSTETRICS & GYNECOLOGY, ABOG; AMERICAN
BOARD OF FAMILY MEDICINE, ABFM; KRISTI NOEM,
SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY,
Defendants-Appellees.

_____

On Appeal from the United States District Court
for the Southern District of Texas No. 3:22-cv-240
(The Honorable Jeffrey Brown)

_____

## BRIEF OF DEFENDANT-APPELLEE
## AMERICAN BOARD OF INTERNAL MEDICINE

_____

Date:  January 16, 2026

Jason Leckerman
leckermanj@ballardspahr.com
Paul Lantieri III
lantierip@ballardspahr.com
Elizabeth Weissert
weisserte@ballardspahr.com
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel. 215.665.8500

## CERTIFICATE OF INTERESTED PERSONS

Defendant-Appellee, American Board of Internal Medicine ("ABIM"), certifies that it has no parent corporation and there is no publicly held corporation that owns 10% or more of its stock.

ABIM further certifies that the following listed persons and entities, as described in the fourth sentence of Local Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the Honorable Judges of this Court may evaluate possible disqualification or recusal:

### Defendants-Appellees

1. American Board of Internal Medicine

2. American Board of Family Medicine

3. American Board of Obstetrics & Gynecology

4. Kristi Noem, Secretary U.S. Department of Homeland Security

### Counsel for Defendants-Appellees

Jason Leckerman
Paul Lantieri III
Elizabeth Weissert
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103

Ashley Parrish
MCGINNIS LOCHERIDGE LLP
500 N. Akard Street, Suite 2250
Dallas, Texas 75201

Marcus Eason
MCGINNIS LOCHERIDGE, LLP
609 Main Street, Suite 2800
Houston, Texas 77002

Barry Moscowitz
Cassie Dallas
Shelby Hall
THOMPSON, COE, COUSINS & IRONS, L.L.P.
700 N. Pearl Street, 25th Floor
Dallas, Texas 75201

## **Plaintiffs-Appellants**

1. Association of American Physicians and Surgeons Educational
   Foundation

2. Pierre Kory, M.D.

3. Paul Marik, M.D.

## **Counsel for Plaintiff-Appellant**

Andrew L. Schlafly
939 Old Chester Rd.
Far Hills, New Jersey 07931

DATE: January 16, 2026          /s/ *Jason Leckerman*

BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
Tel. 215.665.8500
Fax 215.864.8999

*Attorney for Defendant-Appellee*
*American Board of Internal Medicine*

## STATEMENT REGARDING ORAL ARGUMENT

ABIM respectfully submits that oral argument is unnecessary because this appeal involves the application of well-established principles of law, and the facts and the arguments pertinent to the issues on appeal are adequately presented in the briefs and in the record. Nevertheless, ABIM would welcome oral argument should the Court determine it would be helpful.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PARTIES ............................................. i

STATEMENT REGARDING ORAL ARGUMENT ................................. iv

TABLE OF AUTHORITIES .................................................................. viii

STATEMENT OF JURISDICTION ......................................................... 1

STATEMENT OF THE ISSUES ............................................................. 2

STATEMENT OF THE CASE ................................................................. 4

I.     Introduction ................................................................................. 4

II.    Background .................................................................................. 5

     A.    ABIM Offers Board Certification to Physicians Who
          Choose to Meet ABIM's Uniform Standards ......................... 5

     B.    ABIM Requires that Diplomates Comply with
          ABIM's Policies, Including Ethics and
          Professionalism Standards ...................................................... 6

     C.    ABIM Has a Robust Process for Considering and
          Imposing Sanctions for Violations of Its Policies .................. 8

     D.    Drs. Kory and Marik Complain of ABIM's
          Enforcement of Its Ethics and Professionalism
          Standards ............................................................................... 10

     E.    AAPS, which Co-Sponsors Medical Conferences,
          Complains of Alleged Harm Indirectly Arising from
          ABIM's Enforcement of Its Ethics and
          Professionalism Standards .................................................... 11

III.   Procedural History ..................................................................... 12

SUMMARY OF THE ARGUMENT ....................................................... 14

ARGUMENT .................................................................................... 16

I.   Standard of Review ................................................................. 16

II.  The District Court Correctly Held that Plaintiffs'
     Constitutional Claims Against ABIM Fail as a Matter of
     Law ........................................................................................ 17

     A.   No State Action Is Implicated ............................................. 17

     B.   Drs. Kory and Marik's Due Process Claim Fails in
          Any Event ........................................................................ 25

III. This Court Should Affirm the Dismissal of Plaintiffs'
     Antitrust Claims ..................................................................... 27

     A.   The District Court Properly Dismissed Plaintiffs'
          Antitrust Claims .............................................................. 27

          1.   Plaintiffs Have Not Suffered Antitrust Injury ........... 27

               a.   Plaintiffs' Reliance on *Lorraine Journal
                    v. United States* is Misguided ............................ 35

               b.   Dismissal for Lack of Antitrust Standing
                    Is Warranted at this Stage ................................ 36

          2.   This Court Should Not Consider Factual
               Allegations or Legal Arguments Raised for the
               First Time on Appeal ................................................. 37

     B.   Plaintiffs Fail to State a Sherman Act Section 1
          Claim ............................................................................... 40

          1.   Plaintiffs Do Not Plausibly Allege an
               Agreement ................................................................ 40

          2.   Plaintiffs Do Not Plead a Relevant Market as
               Required to Support a Rule of Reason Claim ............. 43

     C.   Plaintiffs Fail to State a Sherman Act Section 2
          Claim ............................................................................... 47

1.    Plaintiffs Do Not Allege a Relevant Market in which the Board Defendants Possess Monopoly Power ........................................................... 48

2.    Plaintiffs Do Not Allege Exclusionary Conduct .......... 49

IV.    The Court Properly Dismissed Plaintiffs' Tortious Interference Claim ......................................................... 51

V.    The District Court Correctly Held that Drs. Kory and Marik's Defamation Claims Fail as a Matter of Law Because Plaintiffs Do Not Identify any Specific Statement by ABIM that Purportedly Defamed Them ................. 55

CONCLUSION ......................................................... 60

CERTIFICATE OF COMPLIANCE ....................................... 61

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abraham & Veneklasen Joint Venture v. American Quarter Horse Association,*
776 F.3d 321 (5th Cir. 2015) ........................................................ 41, 42

*Afzal v. ABIM,*
2022 WL 2447115 (3d Cir. July 6, 2022) ........................................... 21

*Alan v. Wells Fargo Bank, N.A.,*
604 F. App'x 863 (11th Cir. 2015) ................................................. 55, 59

*American Amusement Machine Association v. Kendrick,*
115 F. Supp. 2d 943 (S.D. Ind. 2000) ................................................ 42

*American Society of Mechanical Engineers v. Hydrolevel Corp.,*
456 U.S. 556 (1982) ...................................................................... 31

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...................................................................... 59

*Association of American Physicians & Surgeons Educational Foundation v. American Board of Internal Medicine,*
103 F.4th 383 (5th Cir. 2024) ............................................... 13, 28, 41

*Association of American Physicians & Surgeons Educational Foundation v. American Board of Internal Medicine,*
793 F. Supp. 3d 882 (S.D. Tex. 2025) ................................................ 28

*Association of American Physicians & Surgeons Educational Foundation v. American Board of Medical Specialties,*
2020 WL 5642941 (N.D. Ill. Sept. 22, 2020) ....................................... 47

*Atlantic Richfield Co. v. USA Petroleum Co.,*
495 U.S. 328 (1990) ...................................................................... 28

*Bailey v. McCann,*
550 F.2d 1016 (5th Cir. 1977) .............................................. 19, 20, 21

*Ballew v. Continental Airlines, Inc.*,
   668 F.3d 777 (5th Cir. 2012)........................................ 17, 27

*Basulto v. Netflix, Inc.*,
   2023 WL 7129970 (S.D. Fla. Sept. 20, 2023)..................... 56

*Belk v. Chancellor of Washington University*,
   336 F. Supp. 45 (E.D. Mo. 1970)........................................ 25

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................ 41, 43, 50

*Bridges v. Methodist Hospital*,
   2025 U.S. App. LEXIS 14964 (5th Cir. June 17, 2025)...................... 22

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
   429 U.S. 477 (1977).............................................................. 28

*Chacko v. Preston*,
   2024 WL 943455 (E.D. Va. Mar. 5, 2024)......................... 56

*Clean Water Opportunities, Inc. v. Willamette Valley Co.*,
   759 F. App'x 244 (5th Cir. 2019).................................... 48, 49

*Coinmach Corp. v. Aspenwood Apartment Corp.*,
   417 S.W.3d 909 (Tex. 2013) .............................................. 53

*Continental T.V., Inc. v. GTE Sylvania Inc.*,
   433 U.S. 36 (1977)............................................................ 44

*Cornish v. Correctional Service. Corp.*,
   402 F.3d 545 (5th Cir. 2005)................................... 17, 22, 23

*Cox Operating LLC v. Wells Fargo Bank, NA*,
   2020 WL 13228364 (S.D. Tex. June 16, 2020) ................... 52

*Doctor's Hospital of Jefferson, Inc. v. Southeast Medical
   Alliance, Inc.*,
   123 F.3d 301 (5th Cir. 1997)..................................... passim

*DTEX, LLC v. BBVA Bancomer, S.A.*,
   508 F.3d 785 (5th Cir. 2007)............................................ 52

*English v. Perdue,*
    777 F. App'x 94 (5th Cir. 2019) ................................................ 5, 38, 54

*Ewell v. Boutwell,*
    121 S.E. 912 (Va. 1924) ...................................................................... 57

*Federal Trade Commission v. Superior Court Trial Lawyers*
    *Association,*
    493 U.S. 411 (1990) ............................................................................ 31

*Finch v. Fort Bend Independent School District,*
    333 F.3d 555 (5th Cir. 2003) .............................................................. 26

*Ginzburg v. Memorial Healthcare Systems,*
    993 F. Supp. 998 (S.D. Tex. 1997) ................................................ 29, 30

*Hanks v. Wavy Broad., LLC,*
    2012 WL 405065 (E.D. Va. Feb. 8, 2012) ......................................... 57

*Horne v. Flores,*
    557 U.S. 433 (2009) ............................................................................ 32

*Hughes v. Tobacco Institute, Inc.,*
    278 F.3d 417 (5th Cir. 2001) .............................................................. 34

*Jefferson County School District No. R-1 v. Moody's*
    *Investor's Services,*
    175 F.3d 848 (10th Cir. 1999) ....................................................... 30, 31

*Kenney v. ABIM,*
    847 F. App'x 137 (3d Cir. 2021) ........................................................ 47

*Kenney v. American Board of Internal Medicine,*
    412 F. Supp. 3d 530 (E.D. Pa. 2019) ................................................... 7

*Levine v. CMP Publications,*
    738 F.2d 660 (5th Cir. 1984) .............................................................. 55

*LifeScan, Inc. v. Home Diagnostics, Inc.,*
    103 F. Supp. 2d 345 (D. Del. 2000) ................................................... 42

*Lorain Journal Co. v. United States,*
　342 U.S. 143 (1951) .................................................................... 35, 36

*Malone v. WP Co., LLC,*
　2023 WL 6447311 (W.D. Va. Sept. 29, 2023) .................................... 58

*Mandeville Island Farms, Inc. v. American Crystal Sugar Co.,*
　334 U.S. 219 (1948) ........................................................................... 33

*Manhattan Community Access Corp. v. Halleck,*
　587 U.S. 802 (2019) ........................................................................... 18

*Marucci Sports, L.L.C. v. NCAA,*
　751 F.3d 368 (5th Cir. 2014) ............................................................. 29

*Mercola v. N.Y. Times Co.,*
　2024 WL 551952 (M.D. Fla. Feb. 12, 2024) ...................................... 58

*Morris v. Dillard Department Stores, Inc.,*
　277 F.3d 743 (5th Cir. 2001) ............................................................. 17

*National Society of Professional Engineers v. U.S.,*
　435 U.S. 679 (1978) ........................................................................... 31

*NCAA v. Tarkanian,*
　488 U.S. 179 (1988) ........................................................................... 20

*New Orleans Association of Cemetery Tour Guides &*
　*Companies v. New Orleans Archdiocesan Cemeteries,*
　56 F.4th 1026 (5th Cir. 2023) ............................................................ 46

*Norris v. Hearst Trust,*
　500 F.3d 454 (5th Cir. 2007) ................................................. 29, 33, 36

*Pacific Bell Tel. Co. v. linkLine Communications, Inc.,*
　555 U.S. 438 (2009) ........................................................................... 35

*Park v. El Paso Board of Realtors,*
　764 F.2d 1053 (5th Cir. 1985) ............................................................ 43

*Paul Kadair, Inc. v. Sony Corp. of America,*
　694 F.2d 1017 (5th Cir. 1983) ............................................................ 43

*Pearson v. Shriners Hospital for Children, Inc.*,
   133 F.4th 433 (5th Cir. 2025) ..................................................... 22, 23

*In re Pool Products Distribution Market Antitrust Litigation*,
   940 F. Supp. 2d 367 (E.D. La. 2013).................................................. 44

*Pruneyard Shopping Center v. Robbins*,
   447 U.S. 74 (1980)............................................................................. 25

*PSKS, Inc. v. Leegin Creative Leather Products, Inc.*,
   615 F.3d 412 (5th Cir. 2010)....................................................... 44, 46

*Ramirez v. Ahn*,
   843 F.2d 864 (5th Cir. 1988)............................................................. 26

*Ramming v. United States*,
   281 F.3d 158 (5th Cir. 2001)............................................................. 16

*Reed v. Chamblee*,
   2023 WL 6292578 (M.D. Fla. Sept. 27, 2023) ................................. 57

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*,
   547 U.S. 47 (2006).............................................................................. 32

*Sambrano v. United Airlines, Inc.*,
   45 F.4th 877 (5th Cir. 2022) ............................................................. 51

*Sanjuan v. American Board of Psychiatry & Neurology*,
   40 F.3d 247 (7th Cir. 1994)............................................................... 20

*Shah v. VHS San Antonio Partners LLC*,
   612 F. Supp. 3d 686 (W.D. Tex. 2020)......................................... 39, 40

*Sherman College of Straight Chiropractic v. American
   Chiropractic Ass'n*,
   654 F. Supp. 716 (N.D. Ga. 1986)...................................................... 44

*Sims v. Jefferson Downs Racing Association*,
   778 F.2d 1068 (5th Cir. 1985)...................................................... 23, 24

*Spectators' Communication Network Inc. v. Colonial Country Club*,
    253 F.3d 215 (5th Cir. 2001) .................................................. 40

*Taylor Publishing Co. v. Jostens, Inc.*,
    216 F.3d 465 (5th Cir. 2000) .................................................. 49

*Texaco, Inc. v. Dagher*,
    547 U.S. 1 (2006) .................................................................. 44

*Texas Beef Cattle Co. v. Green*,
    921 S.W.2d 203 (Tex. 1996) .................................................. 52

*Torrington Co. v. Stutzman*,
    46 S.W.3d 829 (Tex. 2000) .................................................... 52

*Town of Chester, N.Y. v. Laroe Estates, Inc.*,
    581 U.S. 433 (2017) ............................................................... 32

*Transource International, Inc. v. Trinity Industries, Inc.*,
    725 F.2d 274 (5th Cir. 1984) ............................................ 28, 36

*Virginia Citizens Defense League v. Couric*,
    910 F.3d 780 (4th Cir. 2018) ............................................ 55, 59

*Waggoner v. Denbury Onshore, L.L.C.*,
    612 F. App'x 734 (5th Cir. 2015) .......................................... 33

*Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*,
    382 U.S. 172 (1965) ............................................................... 48

*Yeager v. City of McGregor*,
    980 F.2d 337 (5th Cir. 1993) .................................................. 24

## Statute

28 U.S.C. § 1291 ....................................................................... 1

## STATEMENT OF JURISDICTION

Defendant-Appellee American Board of Internal Medicine ("ABIM") agrees with Plaintiff-Appellants that this Court has subject matter jurisdiction and jurisdiction pursuant to 28 U.S.C. § 1291 to review the final judgment entered by the District Court.

## STATEMENT OF THE ISSUES

1.     Whether Plaintiffs plausibly allege that the conduct on which their constitutional claims are premised—the application of the physician certification standards established by ABIM, a private entity—constitutes state action.

2.     Whether Plaintiffs plausibly plead antitrust injury even though they do not allege harm to competition in any relevant market.

3.     Whether Plaintiffs state a plausible claim for unlawful restraint of trade under Section 1 of the Sherman Act even though they neither allege that ABIM entered into any anti-competitive agreement nor properly define a relevant market.

4.     Whether Plaintiffs state a plausible claim for abuse of monopoly power under Section 2 of the Sherman Act even though they do not properly define a relevant market or allege anti-competitive conduct by ABIM.

5.     Whether Plaintiffs state a plausible tortious interference claim even though they do not identify any current or prospective contracts impacted by ABIM's actions, and fail to allege any unlawful acts by ABIM.

6.     Whether Plaintiffs state a plausible defamation claim even though they do not identify any specific statement by ABIM that purportedly defamed them.

## STATEMENT OF THE CASE

### I.    Introduction

Plaintiff-Appellant Association of American Physicians and Surgeons Educational Foundation ("AAPS") is a private organization that presents medical educational conferences. Plaintiff-Appellants Pierre Kory, M.D., and Paul Marik, M.D., are internists who had their board certifications revoked by ABIM after ABIM determined through a robust disciplinary and appeal process that they had violated ABIM's professionalism standards.[1]

Defendants-Appellees ABIM, the American Board of Obstetrics & Gynecology ("ABOG"), and the American Board of Family Medicine ("ABFM") (collectively, "the Board Defendants") are private medical certification organizations, or "boards." They establish standards for the certification of physicians who meet and agree to abide by the boards' policies, including their ethics and professionalism standards. Certification is voluntary and not required for the practice of medicine.

---

[1]    Karl N. Hanson, M.D., a plaintiff below, has not appeared in this appeal. He did not allege he was ever certified by ABIM and did not bring claims against ABIM.

Plaintiffs disagree with ABIM's ethics and professionalism standards concerning the dissemination of false or inaccurate medical information. They sued ABIM claiming that its voluntary standards violated the U.S. Constitution, the Sherman Antitrust Act, and the common law. The District Court correctly held that Plaintiffs failed to state First Amendment, constitutional due process, tortious interference, antitrust, or defamation claims against ABIM, and dismissed their amended complaint with prejudice.

## II.    <u>Background</u>[2]

### A.    **ABIM Offers Board Certification to Physicians Who Choose to Meet ABIM's Uniform Standards.**

ABIM is a private, non-profit evaluation organization. It certifies physicians who meet certain educational and training requirements, pass an exam, and agree to abide by ABIM's uniform standards and policies.

---

[2]  The Factual Background section of Plaintiffs' Brief is riddled with new allegations that appear nowhere in their Amended Complaint. For example, Plaintiffs make new arguments that ABIM is "widely criticized," citing several articles not cited in their Amended Complaint. Appellants' Brief ("Appellants' Br.") at 3. They also add a discussion about non-party Florida Surgeon General Joseph Ladapo, M.D. *Id.* at 25. The Court should disregard all such new allegations raised for the first time on appeal. *See English v. Perdue*, 777 F. App'x 94, 96 n.4 (5th Cir. 2019) ("We cannot and do not consider . . . allegations advanced for the first time on appeal.").

ROA.526 ¶ 17. Certified physicians are called "diplomates" of ABIM. ROA.561-62 ¶ 158.

Board certification is voluntary. ROA.760. It is not required to practice medicine in any state. ROA.762. State licensing boards alone "regulate the practice of medicine." *Id.* Although many healthcare institutions and insurers require physicians to be board certified, they make independent decisions about the value of board certification. *Id.*

As Plaintiffs acknowledge, ABIM is not the only organization that certifies physicians in internal medicine. Appellants' Br. at 14. Nothing prevents other organizations from offering competing certification programs, and indeed some have done so. ROA.762.

### B. ABIM Requires that Diplomates Comply with ABIM's Policies, Including Ethics and Professionalism Standards.

Physicians who choose to seek certification from ABIM agree to be bound by ABIM's policies, including ethics and professionalism standards. *Id.* They further agree to remain in compliance with such policies to maintain their certification. *Id.*

Thus, in its Policies & Procedures for Certification ("ABIM P&P"), ABIM states that it "may impose disciplinary sanctions, including the

suspension or revocation of Board Certification," if it "obtains evidence that in its judgment demonstrates that a candidate or diplomate" has, among other things, "failed to maintain moral, ethical or professional behavior satisfactory to ABIM," or "engaged in misconduct that adversely affects professional competence or integrity." ROA.535 & n.12. ABIM diplomates are specifically subject to sanctions for disseminating false or inaccurate medical information:

> While ABIM recognizes the importance of legitimate scientific debate, physicians have an ethical and professional responsibility to provide information that is factual, scientifically grounded, and consensus driven. Providing false or inaccurate information to patients or the public is unprofessional and unethical, and violates the trust that the profession of medicine and the public have in ABIM Board Certification. Therefore, such conduct constitutes grounds for disciplinary sanctions.

ROA.763. *See also Kenney v. Am. Bd. of Internal Med.*, 412 F. Supp. 3d 530, 545 n.2 (E.D. Pa. 2019) ("ABIM has an interest in ensuring that all ABIM-certified internists can meet and maintain the same standards and requirements. Otherwise, hospitals, insurance companies, and patients would lose faith in the ABIM certification process."), *aff'd*, 847 F. App'x 137 (3d Cir. 2021). ABIM also has stated publicly that physicians

who spread false or inaccurate medical information are subject to discipline against their certifications. ROA.763.

Plaintiffs also sued the Secretary of the United States Department of Homeland Security ("DHS") based in part on DHS's creation of a Disinformation Governance Board and other government activities. They do not allege that ABIM had any involvement whatsoever in those activities. Rather, Plaintiffs allege "[u]pon information and belief" that the Board Defendants were "aware of the partisan positions taken by federal agency officials" and sought to "respond to pressure or requests by, federal agency officials to censor the expression of independent viewpoints by physicians." ROA.528 ¶ 24, ROA.537 ¶ 57. But Plaintiffs allege no facts supporting these speculative contentions, and the only government "directive" they reference was aimed at social media companies and media outlets, not medical certification boards. ROA.546 ¶ 101.

## C.  ABIM Has a Robust Process for Considering and Imposing Sanctions for Violations of Its Policies.

If ABIM obtains evidence of a potential violation of its standards, its policies afford the physician the right to review such evidence and participate in the process:

In the event ABIM obtains such evidence, it shall so notify the physician in writing. Such notification shall: (1) advise the physician that the ABIM Credentials and Certification Committee ("CCC") will determine on behalf of ABIM . . . whether to recommend any disciplinary sanction; (2) summarize the evidence in ABIM's possession; (3) include copies of any documentary evidence in ABIM's possession; (4) provide the physician an opportunity to make a written submission to the CCC; (5) disclose the policy(ies) and/or procedure(s) pursuant to which ABIM may recommend a sanction, and the possible sanction(s); (6) advise the physician that the failure to respond timely to the notice may be considered unprofessional and weighed against the physician by the CCC; and (7) advise the physician that if the CCC recommends a sanction, the physician would have a right of appeal with an in-person or telephonic hearing before a panel designated by ABIM's Board of Directors.

ROA.763-64. If a sanction is recommended, the physician has a right to appeal to a panel of peer physicians:

An appeal of a recommended sanction shall be determined by a panel consisting of three non-ABIM employee physicians designated by ABIM's Board of Directors and including at least one member of the Board of Directors (an "Appeal Panel"). An Appeal Panel shall have the discretion to affirm, rescind or modify a recommended sanction, or impose an alternative sanction. In advance of each appeal hearing ABIM shall provide each member of the Appeal Panel and the physician appellant with copies of the documentary record for the physician's sanction and appeal proceeding. In its consideration of an appeal of a recommended sanction, an Appeal Panel . . . shall consider any information timely submitted by or on behalf of the physician at any stage of the proceeding, and shall hold a hearing. At an appeal hearing, the physician and/or the physician's counsel may present information and, subject to the Appeal Panel's discretion,

> witnesses . . . . After reaching a decision, an Appeal Panel shall notify the physician of its decision in writing. Such written decision shall include the factual bases of the decision and a summary of the reasons for the decision.

ROA.764. ABIM thus gives physicians notice they are subject to its disciplinary process and an opportunity to be heard before imposing any sanctions for violating ABIM's standards.

### D.    Drs. Kory and Marik Complain of ABIM's Enforcement of Its Ethics and Professionalism Standards.

Drs. Kory and Marik are internists who had their board certifications revoked by ABIM through its disciplinary and appeal process. ROA.760. Drs. Kory and Marik participated in their respective disciplinary and appeal proceedings, including at their hearings, and were represented by counsel of their choosing. *Id.* At the conclusion of those proceedings, ABIM determined that Drs. Kory and Marik each had violated ABIM's "False or Inaccurate Medical Information" policy. ROA.765. As a result, ABIM revoked their board certifications. *Id.*

Because licensure is the province of state medical licensing boards, ABIM's sanctions did not impair their ability to practice medicine. In fact, Dr. Marik had previously been placed on inactive status by ABIM because he had retired from clinical practice and allowed his state medical license to lapse. ROA.525 ¶15.

### E.    AAPS, which Co-Sponsors Medical Conferences, Complains of Alleged Harm Indirectly Arising from ABIM's Enforcement of Its Ethics and Professionalism Standards.

AAPS "co-sponsors" medical conferences and publishes videos of presentations made by physicians at its conferences on the internet. ROA.524 ¶12. AAPS does not allege that ABIM has restricted AAPS's speech, or that ABIM otherwise engaged with or took any action directed at AAPS. Rather, it claims that ABIM's enforcement of its professional standards harmed AAPS by having a "chilling effect on speakers at its conferences." ROA.10 ¶ 25. Plaintiffs do not link any alleged conduct of ABIM to AAPS in any other way, except with the indirect allegation that "[p]resenters at conferences co-sponsored by Plaintiff have received letters threatening revocation of their earned board certifications, for statements they made at AAPS co-sponsored conferences." ROA.523 ¶ 9. No such alleged conference presenter, however, is a party to this case, or even identified in the amended complaint.

Although Plaintiffs speculate about ABIM's alleged political motivations for ABIM's enforcement of its professionalism policies, they make no factual allegations of conduct directed towards AAPS, or harm incurred by AAPS. For example, they allege nothing about the extent to

which attendance at its conferences, visits to its website, or revenue from donations have supposedly declined.

## III.   **Procedural History**

AAPS commenced this action in July 2022, asserting claims against the Board Defendants for violating AAPS's freedom of speech and Section 2 of the Sherman Act, and for tortiously interfering with AAPS's business relationships. ROA.15. The District Court granted the Board Defendants' motion to dismiss, holding that it "[did] not have subject matter jurisdiction over the First Amendment and antitrust claims because AAPS has no standing." ROA.420. As to AAPS's First Amendment claim, the court held that AAPS had not alleged a First Amendment injury in fact because "AAPS alleged no instances in which the board defendants restricted its speech." *Id.* The District Court also explained that, even if AAPS suffered an injury as a listener, it failed to "identify any willing speakers." ROA.421.

On AAPS's antitrust claim, the District Court held that AAPS failed to establish an antitrust injury—*i.e.*, the type of injury the antitrust laws were intended to prevent—because the Board Defendants "do not compete with AAPS and are not purchasers or consumers of AAPS's

services." ROA.423. The District Court also held that AAPS's alleged injuries are not fairly traceable to the challenged actions by the Board Defendants or redressable by a favorable decision. ROA.426-429. In summary, the District Court found it "pure speculation that the board defendants' action, rather than any other factors, caused [AAPS's] alleged harm." ROA.429.

AAPS appealed, and this Court found that AAPS had sufficiently alleged standing and redressability, and that its injuries were fairly traceable to conduct by the Board Defendants. *Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.* ("*AAPSEF I*"), 103 F.4th 383, 396 (5th Cir. 2024). This Court also determined that AAPS should have been afforded an opportunity to amend its complaint. *Id.*

AAPS filed an Amended Complaint adding Drs. Kory, Marik, and Hanson as Plaintiffs. ROA.499. The Amended Complaint repleads AAPS's earlier First Amendment, antitrust, and tortious interference claims, and asserts three additional claims against ABIM: violation of Section 1 of the Sherman Act; violation of constitutional and contractual due process; and defamation. ROA.519.

In granting ABIM's motion to dismiss for failure to state a claim, the District Court held that (i) the First Amendment and due process claims failed because Plaintiffs did not plausibly allege state action; (ii) the tortious interference claim failed because Plaintiffs offered no description of a proposed agreement that never came to fruition; (iii) the Sherman Act claims failed for failure to plead antitrust injury; and (iv) the defamation claim failed because Plaintiffs failed to identify any defamatory statements. ROA.1238 (Tab 3 at 16).[3]

## SUMMARY OF THE ARGUMENT

The District Court correctly recognized that this action is an ill-founded attempt by Plaintiffs to turn their disagreement with the positions that ABIM—a private medical certification organization—has taken with respect to board-certified physicians' dissemination of certain medical information into constitutional, antitrust, tortious interference, and defamation claims.

Board certification is voluntary, and available to physicians who meet ABIM's requirements and agree to abide by its policies, including

---

[3]    The District Court's opinion is at Tab 3 of Appellants' Record Excerpts.

its ethics and professionalism standards. Under those standards, the dissemination of information not sufficiently based in established science and medicine can result in loss of certification.

Drs. Kory and Marik are internists who had their board certifications revoked by ABIM after robust disciplinary and appeal processes. ABIM determined that they had violated ABIM's "False or Inaccurate Medical Information" policy and revoked their board certifications. ABIM certification is not required by any state to practice medicine, and Drs. Kory and Marik have not alleged that ABIM's actions interfered in any way with their ability to freely express their opinions or to practice medicine.

AAPS co-sponsors medical education conferences and posts videos of the conferences on its website. It has no relationship with ABIM. Yet Plaintiffs contend that, by enforcing its ethics and professionalism standards for physicians who seek to represent themselves as board certified, ABIM has chilled speech at AAPS's co-sponsored conferences and caused AAPS to lose revenue and donations from conference attendees and website traffic. Plaintiffs allege no facts supporting its conclusory assertions. Nevertheless, Plaintiffs assert that ABIM's

conduct violated their First Amendment rights and the Sherman Antitrust Act, as well as the common law.

Each of Plaintiffs' claims fails on the merits. ABIM is a private entity, and its enforcement of its professionalism standards is not state action subject to the First Amendment. Plaintiffs have not stated an antitrust claim because they do not plausibly allege: (i) injury redressable by the antitrust laws (that is, antitrust standing), because they do not allege harm to competition in any relevant market; (ii) unlawful restraint of trade, because they do not allege facts sufficient to show concerted action or define a cognizable relevant market; and (iii) a monopolization claim, because they do not define a relevant market or allege facts sufficient to show that ABIM engaged in exclusionary conduct in any such market. Plaintiffs also do not plausibly allege any of the elements of a tortious interference or defamation claim.

Accordingly, the District Court's decision should be affirmed.

## ARGUMENT

## I. <u>Standard of Review</u>

This Court reviews the grant of a motion to dismiss under Rule 12(b)(6) *de novo. See, e.g., Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Moreover, this Court may "affirm on any ground

supported by the record, including one not reached by the district court."

*Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012).

## II. **The District Court Correctly Held that Plaintiffs' Constitutional Claims Against ABIM Fail as a Matter of Law.**

### A. **No State Action Is Implicated.**

It is black-letter law that "private conduct, no matter how discriminatory or wrongful" it is alleged to be, "is excluded from § 1983's reach." *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). Thus, "for a plaintiff to state a viable [constitutional] claim . . . against any private defendant, . . . the conduct of the private defendant that forms the basis of the claimed constitutional deprivation must constitute state action under color of law." *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 747 (5th Cir. 2001). That means that, to state a Section 1983 claim, Plaintiffs were required to plausibly allege that the conduct on which their constitutional claims are premised—ABIM's application of its certification standards—constitutes state action. The District Court correctly held that Plaintiffs failed to do so, and accordingly their claims against ABIM under the First and Fourteenth Amendments failed as matter of law.

On appeal, Plaintiffs assert one theory of state action regarding ABIM: that certifying physicians constitutes a "public function" under the "public-function test" for state action.[4] *See* Appellants' Br. at 32-42. The conduct Plaintiffs ascribe to ABIM does not satisfy that test.

Under the public-function test, "a private entity may qualify as a state actor when it exercises 'powers traditionally exclusively reserved to the State.'" *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974)). "It is not enough that the federal, state, or local government exercised the function in the past, or still does," or "that the function serves the public good or the public interest in some way." *Id.* Rather, "the government must have traditionally *and* exclusively performed the function." *Id.* (emphasis in original). As the Supreme Court has emphasized, "'very few' functions fall into that category." *Id.* (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978)).

---

[4]    In holding that Plaintiffs failed to adequately allege state action, the District Court analyzed the alleged conduct under each of this Court's three tests for state action: (i) the public-function test; (ii) the coercion test; and (iii) the joint-action test. ROA.1228-32 (Tab 3 at 6-10). (citing *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241-24 (5th Cir. 1999)). Plaintiffs pursue only the public-function theory here.

Plaintiffs have not come close to satisfying the test. They contend that ABIM is performing a "public function" because "[g]overnments have delegated state functions to the Board Defendants," including ABIM, "in connection with medical licensure," and thus "the Board Defendants behave as *de facto* state regulators." Appellants' Br. at 16, 37; *see also* ROA.522, 537-38, 540-41 ¶¶ 6, 59-65, 74-77 (alleging that state medical boards have "delegated the determination of who is eligible for state licensure" to the Board Defendants and other certification boards). This is not a viable theory of state action. As the District Court correctly held, that the government chooses to accord significance to a private entity's credentialing decisions does not transform those credentialing decisions into state action, either under the public-functions test or any other test. ROA.1231 (Tab 3 at 9). This is because, under such circumstances, it is still the government performing the function of granting or revoking licensure, not the private entity whose credentialing decisions the government is crediting.

This reasoning was decisively laid out in *Bailey v. McCann*, 550 F.2d 1016 (5th Cir. 1977), on which the District Court principally relied. In that opinion, this Court held the decision by the United States Trotting

Association ("USTA") to deny the plaintiff a license could not give rise to a Section 1983 claim notwithstanding that many states require licensure by the USTA as a condition for participating in state-sanctioned harness racing. *Id.* at 1018. As this Court explained:

> The fact that the State chooses to accord automatic weight to some of defendant's decisions does not alone render those decisions state action. The State may at any time choose to do otherwise and adopt and use its own standards. The fact that the State requires a USTA license in order to race is no more significant than its requirement of a law degree from an approved school as a prerequisite for taking the bar examination. Such a requirement does not change the conduct of private law schools into state action.

*Id.* at 1019; *see also NCAA v. Tarkanian*, 488 U.S. 179, 194-95 (1988) (state university's adoption of disciplinary standards and recommendations promulgated by private organization governing college athletics did not render organization's sanctions recommendation state action).

Other courts have held the same specifically in the context of medical certification organizations, including ABIM. *See, e.g., Sanjuan v. Am. Bd. of Psychiatry & Neurology*, 40 F.3d 247, 248-50 (7th Cir. 1994) (certification decisions by ABPN were not state action, notwithstanding "[t]hat states make certification by the Board a prerequisite for some

public positions"); *Afzal v. ABIM*, 2022 WL 2447115, at *2 (3d Cir. July 6, 2022) (affirming district court decision that allegation that some "states require certification by ABIM or some other specialty board as one component in a broader licensing scheme set by the state" was insufficient to plead state action).

Although Plaintiffs dismiss *Bailey* as a case "decided nearly a half-century" ago that "makes no mention of the public function test," Appellants' Br. at 35, they do not dispute that a private credentialing organization does not become a state actor just because governments accord significance to the credential it bestows. In fact, they concede that organizations like ABIM do not engage in state action when they administer "board certification exams to young physicians, in order to establish their medical proficiency in their fields of specialty," even if governments accord significance to those certifications. *Id.* at 33. Plaintiffs, nonetheless, insist that those certification determinations somehow get transformed into state action when they are made based on application of continuing professionalism standards rather than test performance. *See, e.g., id.* at 39 (asserting that "Defendants ABIM and ABOG have strayed far outside their proverbial lane of test

administration," and that these "new roles . . . require scrutiny for their similarity to a public function"); *id.* at 40 ("Testing for physicians' competency as Defendants ABIM and ABOG have traditionally done is not at issue here, but the discipline or retaliation against a certified physician is functionally equivalent to a state medical board disciplining him . . . ."). This contention has no basis in the law.

It is true that, under this Court's precedents, a defendant can be engaged in state action in some capacities but not others—but that requires the capacities at issue to be actually different. For instance, in *Cornish*, this Court held the defendant acted under color of law for purposes of the public-function test when providing juvenile correctional services because "incarceration is a traditionally exclusive state function," but did not act under color of law in terminating the plaintiff's employment because it was not a state actor in its capacity as an employer.[5] 402 F.3d at 550.

---

[5] The cases Plaintiffs cite for the proposition that a private defendant can be a state actor in some capacities but not others both rely on *Cornish. See Pearson v. Shriners Hosp. for Children, Inc.*, 133 F.4th 433, 444 (5th Cir. 2025) (cited in Appellants' Br. at 33) (citing *Cornish* for general proposition that "a defendant 'may be a state actor for some purposes but not others'"); *Bridges v. Methodist Hosp.*, 2025 U.S. App. LEXIS 14964, at *6 & n.17 (5th Cir. June 17, 2025) (cited in

Plaintiffs' assertion here is fundamentally different. Plaintiffs contend that ABIM's work as a private certifying organization is *not* state action when performed based on one criterion (*i.e.*, test performance), but *is* state action when performed based on another (*i.e.*, ABIM's professionalism standards). Plaintiffs cite no case indicating that whether an activity constitutes a public function for purposes of the state action analysis depends on how it is performed. Nor do they cite any authority even remotely suggesting that certifying physicians based on professionalism standards—conduct they describe as "ideologically motivated public action . . . against physicians," Appellants' Br. at 33—is somehow an activity traditionally and exclusively reserved to the state. Accordingly, Plaintiffs' theory of state action fails.

Finally, *Sims v. Jefferson Downs Racing Association*, 778 F.2d 1068 (5th Cir. 1985) (cited in Appellants' Br. at 36-37), provides no support for Plaintiffs' argument. In *Simms*, this Court held the eviction of a horse trainer from a private racetrack constituted state action because (1) under the relevant state law, the eviction required action by a state

---

Appellants' Br. at 32) (citing *Pearson* and *Cornish* for that same general proposition).

commission, and (2) the manager of the racetrack wrongfully enlisted police to enforce the improper eviction notice. *Id.* at 1079. Plaintiffs do not identify anything in the factual circumstances of *Simms* that would make it relevant here. Instead, they assert "[t]he real thrust of [*Simms*] was to ensure that there be a cause of action for such retaliation against plaintiff's exercise of his First Amendment right of free speech." Appellants' Br. at 37. This gets the law exactly backwards. Private conduct does not constitute state action because it is alleged to constitute retaliation based on speech. Rather, it is only where private conduct satisfies one of the tests for state action that it can constitute retaliation in violation of the First Amendment. *See, e.g.*, *Yeager v. City of McGregor*, 980 F.2d 337, 338-43 (5th Cir. 1993) (plaintiffs' allegations that they were expelled from volunteer fire department based on speech critical of department were insufficient to state Section 1983 claim because firefighting is not an exclusive state function). Here, the conduct at issue does not satisfy any of the tests for state action, making Plaintiffs'

allegations of retaliation irrelevant for purposes of the Section 1983 analysis.[6]

Because the conduct by ABIM that Plaintiffs complain about does not constitute state action, the District Court correctly dismissed their First and Fourteenth Amendment claims.

## B.  Drs. Kory and Marik's Due Process Claim Fails in Any Event.

Even if ABIM were engaged in state action such that it could be subject to a constitutional due process claim, Drs. Kory and Marik's due process claim would still fail as matter of law.[7]

---

[6]  Plaintiffs also rely on *Pruneyard Shopping Center v. Robbins*, 447 U.S. 74, 87 (1980), and *Belk v. Chancellor of Washington University,* 336 F. Supp. 45, 48 (E.D. Mo. 1970), to make a strained analogy between certifying physicians for internal medicine and running a shopping mall or university. *See* Appellants' Br. at 37-38. At any rate, *Pruneyard* was not a state action case at all, but, instead, involved a First Amendment challenge by a private entity to a state law regulating the circumstances in which certain private entities can exclude the speech of other private entities. 447 U.S. at 85-88. And, *Belk*'s holding that "[e]ducation is a public function," 336 F. Supp. at 48, is inconsistent with subsequent Supreme Court decisions narrowly interpreting and applying the public function test. *See* pp. 18-20, *supra* (discussing those cases). Thus, neither case supports Plaintiffs' position.

[7]  The due process claim is asserted only by Drs. Kory and Marik. ROA.572-73 ¶¶ 227-33.

In assessing the due process challenge, the Court's role is limited to determining whether the process ABIM afforded them was sufficient— not whether their certifications should have been revoked. *See Ramirez v. Ahn,* 843 F.2d 864, 869 (5th Cir. 1988) ("A federal court has no business intruding upon the substantive decisions of a [medical certifying] institution by substituting its judgment for that of the [medical certifying board]."). The essential requirements of procedural due process under the Constitution are notice and opportunity to respond. *Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 562 (5th Cir. 2003) (finding the essential requirements of due process were met when the former principal received notice of her reassignment and was given the opportunity to present her basic argument).

Here, Drs. Kory and Marik concede that, before being subject to discipline by ABIM, each had notice and an opportunity to respond to the charges against them. ROA.556 ¶ 137. Indeed, the Amended Complaint specifically alleged that "[o]ver the course of the disciplinary matter, Drs. Kory and Marik presented substantial argument in support of their position." ROA.554 ¶ 132. This is all the process constitutionally required.

Accordingly, dismissal of the due process claim asserted against ABIM can be affirmed on the alternate ground that Drs. Kory and Marik received constitutionally sufficient process. *See Ballew*, 668 F.3d at 781 (court may "affirm on any ground supported by the record").

## III. This Court Should Affirm the Dismissal of Plaintiffs' Antitrust Claims.

### A. The District Court Properly Dismissed Plaintiffs' Antitrust Claims.

The District Court properly dismissed Plaintiffs' antitrust claims on the basis that they allege harm only to themselves, not to competition itself in any relevant market, as required to plead antitrust injury. Plaintiffs also do not plausibly allege the elements of either a Section 1 or Section 2 claim. This Court should uphold dismissal of these claims.

#### 1. Plaintiffs Have Not Suffered Antitrust Injury.

The District Court correctly observed that the analysis of Plaintiffs' antitrust claims "begins and ends with antitrust injury." ROA.1235 (Tab 3 at 13).

Plaintiffs' alleged injury—misuse of monopoly power to censor speech about matters of public policy through threats to revoke board certification—"is not a recognized antitrust injury because it does not decrease consumer choice on where to seek medical treatment or

physician choice on where to speak publicly about controversial public health topics." *Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.* ("*AAPSEF II*"), 793 F. Supp. 3d 882, 891 (S.D. Tex. 2025), *on remand from AAPSEF I*, 103 F.4th 383 (5th Cir. 2024).

The antitrust laws impose a threshold standing requirement onto all plaintiffs. *See Transource Int'l, Inc. v. Trinity Indus., Inc.*, 725 F.2d 274, 280 (5th Cir. 1984) ("Before reaching any substantive issues in plaintiff's claim, . . . we must establish whether plaintiff had standing to maintain this claim under the Sherman Act."). "Antitrust injury must be established for the plaintiff to have standing under section 1 or section 2 of the Sherman Act." *Doctor's Hosp. of Jefferson, Inc. v. SE Med. All., Inc.*, 123 F.3d 301, 305 (5th Cir. 1997). An "antitrust injury" is an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendant's acts unlawful. . . . It should, in short, be the 'type of loss that the claimed violations . . . would be likely to cause.'" *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).

"The antitrust laws were enacted for 'the protection of *competition*, not *competitors*." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 338 (1990)) (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320

(1962)). The Fifth Circuit has made it clear that "the Sherman Act was enacted to assure customers the benefits of *price competition*." *Norris v. Hearst Trust*, 500 F.3d 454, 467 (5th Cir. 2007) (emphasis added) (quoting *Assoc. Gen. Contractors of Cal. V. Cal. St. Council*, 459 U.S. 519, 537 (1983)).

Drs. Kory and Marik.  The individual Plaintiffs allege only that they suffered "monetary injuries in the form of lost wages and compensation." ROA.569 ¶ 206. Their "predominate focus on [their] own injury is misguided because antitrust laws are designed to protect competition, not competitors." *Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368, 376 (5th Cir. 2014). "Antitrust injuries are analyzed 'from the perspective of the consumer' in the marketplace, so they are typically injuries that decrease consumer choice or increase prices." ROA.1235-36 (Tab 3 at 13-14) (quoting *Ginzburg v. Mem'l Healthcare Sys.*, 993 F. Supp. 998, 1015-16 (S.D. Tex. 1997). Drs. Kory and Marik's alleged lost wages do not constitute an antitrust injury; the claimed harm does not flow from the price, quantity, or quality of products or services in any markets. *See Marucci Sports*, 751 F.3d at 377. Plaintiffs do not allege that the supposedly monopolized markets for physician certification were affected

in any way by ABIM's conduct. Moreover, as the District Court recognized, because "physicians without board certification can still legally practice medicine and voice their medical opinions," Plaintiffs have not sufficiently pled antitrust injury. ROA.1237 (Tab 3 at 15).

Plaintiffs assert the District Court's reliance on *Ginzburg* was misplaced because Ginzburg was denied reappointment at one hospital while retaining staff privileges at several other hospitals, whereas here we have the "the exclusion . . . of physicians who speak out on certain issues . . . from practicing in hospitals and in insurance networks." Appellants' Br. at 44. But Drs. Kory and Marik do not allege that they have ever been excluded from a hospital or insurance network as a result of ABIM's actions, making their case for antitrust injury significantly weaker than that of Ginzburg, who was denied reappointment.

Plaintiffs also quibble with the District Court's reliance on *Jefferson County School District No. R-1 v. Moody's Investor's Services*, 175 F.3d 848 (10th Cir. 1999). Arguing *Jefferson County* dealt with speech alone and not with conduct, Plaintiffs suggest the several cases cited by *Jefferson County* involving both speech and conduct are more factually analogous. Appellants' Br. at 45. But in each of those cases, antitrust

claims were permitted to proceed on the basis of allegations of harm to competition supporting well-established theories of antitrust liability.[8] Those cases' similarities to Plaintiffs' begin and end with the fact that they all involve allegations of antitrust violations by professional associations. Those case do not bear on the question whether Plaintiffs have alleged antitrust injury. The District Court appropriately relied on *Jefferson County* instead.

AAPS. Plaintiffs' allegations of harm to AAPS, too, are untenable as the basis for an antitrust claim. Plaintiffs effectively concede that AAPS lacks antitrust standing, arguing only that AAPS is somehow transitively endowed with standing through Drs. Kory and Marik.

---

[8] *Federal Trade Commission v. Superior Court Trial Lawyers Association*, 493 U.S. 411, 423 (1990), involved a horizontal arrangement among competitors to restrain prices and output. *American Society of Mechanical Engineers v. Hydrolevel Corporation*, 456 U.S. 556, 571 (1982), found an antitrust violation where a member of a trade association deliberately deceived the public in an association publication, abusing the association's reputation to undermine a competitor. And *National Society of Professional Engineers v. U.S.*, 435 U.S. 679, 693 (1978), which Plaintiffs describe as "closely analogous to the facts at bar here," Appellants' Br. at 46, involved a ban on competitive bidding for engineering services, an openly anticompetitive attempt to interfere with the setting of price by free market forces. All of these cases involved economic activity that was alleged to affect competition.

Appellants' Br. at 43. Plaintiffs admit that "antitrust injury is not an Article III standing issue," and then proceed to cite a string of Article III standing cases in support of their argument that plaintiffs who lack antitrust standing can derive it from plaintiffs who possess standing. *Id.* at 43-44. Those cases do not support Plaintiffs' position because in none of these cases was an uninjured plaintiff permitted to piggyback on the standing of injured plaintiffs.[9] But even if such a mechanism for acquiring second-hand standing were available, it would not help AAPS here, where Drs. Kory and Marik themselves lack standing for the reasons discussed above.

AAPS lacks antitrust standing itself because it has not suffered the type of injury the antitrust laws are intended to prevent. Antitrust injuries are typically suffered by "competitors, purchasers, or consumers in the relevant market." *Waggoner v. Denbury Onshore, L.L.C.*, 612 F.

---

[9] The plaintiff in *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006), was deemed to have *associational standing* to bring suit on behalf of its members. The issue in *Horne v. Flores*, 557 U.S. 433, 445-446 (2009), was whether intervenors in that case had standing to bring a Rule 60(b)(5) motion. *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439-440 (2017), also addressed the standing of intervenors.

App'x 734, 737 (5th Cir. 2015). Plaintiffs note that antitrust standing is not necessarily limited to these traditional groups, but ignore that no plaintiff can suffer antitrust injury as the result of conduct "in a market in which [plaintiff] is not a participant."[10] *Id.* at 738. No antitrust injury exists when the plaintiffs were "neither consumers nor competitors in the market attempted to be restrained." *Norris*, 500 F.3d at 467 (holding that distributors of a newspaper, which were neither buyers of advertising (consumers) nor publications selling advertising (competitors), lacked standing to bring monopolization and conspiracy claims). AAPS cannot cite to any case in which a plaintiff who was not a competitor, consumer, or other participant in the same market as the defendant had standing to assert a Sherman Act claim. As this Court has explained, "[p]arties

---

[10] Plaintiffs cite *Mandeville Island Farms, Inc. v. American Crystal Sugar Co.*, 334 U.S. 219, 236 (1948), in support of their experimental speech-based theory of antitrust liability, but that case did not expand the contours of the traditional "forbidden practices" prohibited by the Sherman Act. It merely clarified that sellers, in addition to consumers, could bring an antitrust claim, and that "monopolization of local business, when achieved by restraining interstate commerce, is condemned by the Act. And a conspiracy with the ultimate object of fixing local retail prices is within the Act, if the means adopted for its accomplishment reach beyond the boundaries of one state." *Id.* at 235-36 (cleaned up).

whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 423 (5th Cir. 2001).

AAPS cannot sufficiently allege antitrust injury because it does not operate in the same markets as ABIM. As the District Court reasoned in dismissing AAPS's previous complaint, even assuming that ABIM's conduct violated antitrust law—as courts do for purposes of this analysis[11]—"the resulting antitrust injury, if any, would befall either their consumers (the physicians) or their competitors (other board-certification organizations). AAPS—which fits in neither group—would not suffer an antitrust injury." ROA.423. AAPS concedes that it does not operate in any of the same markets as ABIM. *Compare* ROA.520 ¶ 1 (alleging that AAPS co-sponsors medical conferences), *with* ROA.420-14 ¶¶ 2, 38 (alleging that ABIM competes in the markets for certifications

---

[11]  In *Doctor's Hospital*, 123 F. 3d at 306, the Fifth Circuit explained that the "[s]tanding analysis can be most helpful in the atypical antitrust case if the court assumes an antitrust violation has occurred and then determines whether the plaintiff has . . . experienced 'antitrust injury' from the violation."

of medical specialties). This concession is fatal to AAPS's attempt to assert that it suffered antitrust injury.

### a. Plaintiffs' Reliance on *Lorraine Journal v. United States* is Misguided.

To the extent Plaintiffs argue that ABIM unlawfully refused to deal with Drs. Kory and Marik, they do not establish antitrust injury. It is well-established that market participants are, as a general rule, "free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing." *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 448 (2009) (citing *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919)). Plaintiffs offer no basis for deviating from this rule here. Citing *Lorain Journal Co. v. United States*, 342 U.S. 143 (1951), they claim that victims of a monopolist's exclusionary refusal to deal have suffered antitrust injury. Appellants' Br. at 50. But *Lorain Journal* did not address antitrust injury. The case was brought by the federal government, which need not establish antitrust standing. *See* Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 335a (5th ed. 2021) ("Unlike the United States government, which is authorized to sue anyone who violates the antitrust laws, a private antitrust plaintiff must show

'standing' to sue."). *Lorain Journal* is also distinguishable because, in that case, the defendant newspaper refused to deal with merchants who also did business with a radio station to undermine its competition in the news market. 342 U.S. at 150-51. In contrast, none of the Plaintiffs here competes with ABIM in any market.

### b. Dismissal for Lack of Antitrust Standing Is Warranted at this Stage.

Plaintiffs' argument that it was premature for the District Court to dismiss their antitrust claims based on lack of antitrust injury alone, citing *Brader v. Allegheny General Hospital*, 64 F.3d 869, 876 (3d Cir. 1995), is inconsistent with this Court's precedent that "the [antitrust] standing test is often a useful filter at an early stage of litigation." *Doctor's Hosp.*, 123 F.3d at 306; *see also Transource*, 725 F.2d at 280 ("The question of standing is a preliminary one, to be answered from examination of the allegations of the complaint."). Thus, in *Norris*, for example, the Fifth Circuit affirmed the grant of a motion to dismiss based on lack of antitrust injury and standing. 500 F.3d at 469. Under the precedent of this Court, it was entirely appropriate for the District Court to dismiss AAPS's claim based on its failure to allege antitrust injury. Accordingly, the District Court correctly found that Plaintiffs' antitrust

claims failed as a matter of law due to Plaintiffs' inability to articulate any recognized theory of antitrust injury.

### 2. This Court Should Not Consider Factual Allegations or Legal Arguments Raised for the First Time on Appeal.

Plaintiffs improperly raise new factual allegations and a new theory of antitrust liability under the Sherman Act for the very first time in their Brief here as a basis for reversing the District Court's decision. They argue that ABIM is "excluding physicians from practicing at hospitals and in insurance networks, which reduces output"; ABIM's actions have reduced "the quantity and quality of medical services"; and "[c]onsumers have lost access to these exemplary physicians, which decreases consumer choice." Appellants' Br. at 42, 47. Their new allegations contemplate a hazily defined relevant market for "medical services," which was never mentioned in Plaintiffs' Amended Complaint; Plaintiffs there only alleged markets for physician certification and for medical conferences. Plaintiffs now argue ABIM's revocation of Drs. Kory and Marik's board certifications resulted in reduced consumer access to their services, "and thus reduced choice in the market." *Id.* at 42. The

Court should not consider this new theory, but even if it did, Plaintiffs'
antitrust claims would still fail.

Because these facts, including an entirely new proposed market,
and this quality and output reduction theory of antitrust injury were
never raised before the District Court, this Court should not consider
them. *See English*, 777 F. App'x at 96. Accordingly, Plaintiffs waived any
claim of reduced quality and output and decreased consumer choice in
the physician services market.

Even if Plaintiffs had properly alleged reduced output or consumer
choice, those claims should be dismissed as threadbare, conclusory, and
thoroughly implausible. Plaintiffs identify just two physicians—Drs.
Kory and Marik—who have had their board certifications revoked by
ABIM. Of these two, just one—Dr. Kory—was still practicing medicine at
the time the Amended Complaint was filed. By then, Dr. Marik had
retired from clinical practice. He voluntarily allowed his medical license
to lapse before ABIM took any action against him. If consumers "lost
access" to Dr. Marik, it is because Dr. Marik himself decided to retire.
There is no causal connection that can be drawn between ABIM's actions

and the "decrease[d] consumer choice" that resulted from Dr. Marik unilateral decision to leave the practice of medicine.

Dr. Kory, by contrast, remains as accessible to patients interested in his services as he was before ABIM revoked his board certification. Plaintiffs have not alleged that a single patient has been prevented from seeing Dr. Kory, nor have they alleged Dr. Kory has been excluded from practicing at any hospital or within any insurance network. Even if Dr. Kory had been excluded from practicing, allegations of harm to a single market participant are insufficient to establish a Sherman Act violation. *See Shah v. VHS San Antonio Partners LLC*, 612 F. Supp. 3d 686, 698 (W.D. Tex. 2020) (rejecting antitrust challenge based on allegations of harm to a single physician: "This Court agrees with many others that have held a hospital's staffing decision, without more, does not violate the Sherman Act. . . . . Without evidence of market-wide harm to the consumers of pediatric anesthesia services, Dr. Shah's antitrust claims fail as a matter of law . . . ."), *aff'd sub nom. Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450 (5th Cir. 2021).

Last, even if ABIM *had* deprived consumers of Dr. Kory's or Dr. Marik's services—which it has not—they would not be the proper

plaintiffs to pursue antitrust claims based on such an alleged injury; patients would be. *Id.* at 693 (explaining that "'patients, insurance companies, or the government would all be better situated to bring suit' than excluded physician alleging decreased patient choice and increased prices") (quoting *Benson v. St. Joseph Reg'l Health Ctr.*, 2007 WL 7120757, at *9 (S.D. Tex. Mar. 22, 2007), *aff'd*, 575 F.3d 542 (5th Cir. 2009)). Thus, even if the Court were to consider these new allegations and theory, it should still dismiss Plaintiffs' antitrust claims.

## B.    Plaintiffs Fail to State a Sherman Act Section 1 Claim.

This Court can also affirm the dismissal of Plaintiffs' Sherman Act Section 1 claim against ABIM on the ground, fully briefed by the parties below, that Plaintiffs fail to state a claim under Section 1. To state a claim for restraint of trade under Section 1 of the Sherman Act, Plaintiffs must present well-pled factual allegations that ABIM engaged in "concerted action" "that restrained trade . . . in a particular market." *Spectators' Commc'n Network Inc. v. Colonial Country Club*, 253 F.3d 215, 220 (5th Cir. 2001) (cleaned up). Plaintiffs fail to allege facts sufficient to do so.

### 1.    Plaintiffs Do Not Plausibly Allege an Agreement.

In the prior appeal in this case, Judge Ho, writing separately from the majority, wrote that "collusion between members of a medical

association to exclude certain services from patients *could* violate § 1" and that "an agreement to exclude certain viewpoints and shun providers who adopt such views *could* constitute 'a concerted refusal to deal under § 1.'" *AAPSEF I*, 103 F.4th at 399 (Ho, C.J., dissenting in part) (emphasis added). In their Amended Complaint, Plaintiffs do not plead facts supporting any such theory of liability.

ABIM is not a membership association. As such, Plaintiffs cannot allege an agreement among its members. Nor do Plaintiffs plausibly allege any unlawful agreement among the Board Defendants. Plaintiffs allege only that the Board Defendants "colluded and conspired" to "adopt[] similar approaches for retaliation against physicians based on their public statements." ROA.568 ¶ 198. These allegations fall woefully short of alleging a "common design and understanding, or a meeting of minds in an unlawful arrangement." *Abraham & Veneklasen Joint Venture v. Am. Quarter Horse Ass'n*, 776 F.3d 321, 330 (5th Cir. 2015). Instead, they are the types of "conclusory allegation[s] of agreement at some unidentified point" that the Supreme Court in *Twombly* held are insufficient to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

41

A violation of Section 1 of the Sherman Act can be proven via either "direct" or "circumstantial" evidence that an unlawful agreement existed. *Abraham & Veneklasen*, 776 F.3d at 330. Plaintiffs here allege neither. Plaintiffs do not allege any direct evidence of any unlawful agreement among the Board Defendants. They allege only that ABIM and ABFM issued a joint statement expressing support for a non-party organization, the Federation of State Medical Boards.[12] ROA.568 ¶ 202. Mission-driven organizations like the Board Defendants routinely issue similar joint statements addressing matters bearing on their missions without running afoul of the Sherman Act.[13] Nothing in the Board Defendants' statement reveals an agreement between ABIM and ABFM to refuse to

---

[12]  Plaintiffs did not appeal the dismissal of their antitrust claims against ABFM.

[13]  *See, e.g.*, *LifeScan, Inc. v. Home Diagnostics, Inc.*, 103 F. Supp. 2d 345, 372 (D. Del. 2000) (American Diabetes Association, Center for Disease Control, and others issued joint statement addressing importance of glucose monitoring for diabetics), *aff'd*, 13 F. App'x 940 (Fed. Cir. 2001); *Am. Amusement Mach. Ass'n v. Kendrick*, 115 F. Supp. 2d 943, 965 (S.D. Ind. 2000) ("[T]he American Academy of Pediatrics, the American Medical Association, the American Psychological Association, the American Academy of Child and Adolescent Psychiatry, and the American Academy of Family Physicians issued a Joint Statement on the public health aspects of violence in the media."), *rev'd on other grounds*, 244 F.3d 572 (7th Cir. 2001).

deal with certain physicians. *Id.* Plaintiffs' purported circumstantial evidence is that the Board Defendants engaged in parallel conduct: ABIM and ABFM "took actions that were nearly identical in substance, scope and timing." *Id.* ¶ 201. But parallel conduct alone is not enough to establish a conspiracy. *Twombly*, 550 U.S. at 556. Rather, plaintiffs who rely on parallel conduct must "establish not merely consciously parallel action but a 'plus factor' that indicates agreement." *Park v. El Paso Bd. of Realtors*, 764 F.2d 1053, 1060 n.11 (5th Cir. 1985). A "plus" factor is something that "tends to indicate that . . . the decisions not to deal were contrary to the defendants' economic self-interest so as to raise an issue of good faith business judgment." *Paul Kadair, Inc. v. Sony Corp. of Am.*, 694 F.2d 1017, 1027 n.27 (5th Cir. 1983). Plaintiffs make no attempt to plead any such additional factors here and thus fall well short of sufficiently alleging an agreement.

### 2. Plaintiffs Do Not Plead a Relevant Market as Required to Support a Rule of Reason Claim.

Even if Plaintiffs had adequately pled ABIM joined an agreement among the Board Defendants, they still could not state a Section 1 claim. As Plaintiffs concede, the Court should judge Plaintiffs' Section 1 claim under the rule of reason standard, which is the "prevailing" standard of

evaluation of a restraint on competition. *See, e.g., Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49, 59 (1977); *Texaco, Inc. v. Dagher*, 547 U.S. 1, 5 (2006) ("[T]his Court presumptively applies rule of reason analysis . . . .").[14] Under the rule of reason standard, a plaintiff must adequately plead market power and the anticompetitive effects of the challenged restraints. *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 940 F. Supp. 2d 367, 377 (E.D. La. 2013) (citing *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 418 (5th Cir. 2010)). The relevant market must reflect the realities of competition, including the elasticity of demand—*i.e.*, where consumers could turn for alternative products or sources of the product. *Doctor's Hosp.*, 123 F.3d at 311. "Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand . . . the relevant market is legally insufficient, and a motion to dismiss may be granted." *PSKS*, 615 F.3d at 417-18 (quoting *Apani Sw., Inc. v. Coca-*

---

[14] "A case involving a concerted refusal to deal does not automatically invoke application of the per se rule." *Sherman Coll. of Straight Chiropractic v. Am. Chiropractic Ass'n*, 654 F. Supp. 716, 721 (N.D. Ga. 1986), *aff'd* 813 F.2d 349 (11th Cir. 1987). "Antitrust cases involving the impact of professional educational standards . . . are more appropriately analyzed under the rule of reason." *Id.* at 722.

*Cola Enters.*, 300 F.3d 620, 628 (5th Cir. 2002)). Because Plaintiffs fail to plead a relevant market that satisfies those requirements, their claim should be dismissed.[15]

At the outset, it is not easy to understand which (or even how many) markets Plaintiffs believe are "relevant" for purposes of the antitrust analysis here. They refer to at least six different markets in their Brief, none of them properly defined in the Amended Complaint. Plaintiffs allege that the three Board Defendants monopolize the markets for "certification" in their respective specialties. ROA.570 ¶ 213. They claim the Board Defendants have interfered with the market for "medical conferences." ROA.571 ¶ 217. They tangentially mention a market for expert witness services. ROA.524 ¶ 13. And for the first time on appeal, they introduce the idea of interference with a market for "medical

---

[15] Plaintiffs assert that "[t]here is no plausible justification under the Rule of Reason" for ABIM's revocation of Dr. Kory and Dr. Marik's certifications. Appellants' Br. at 47. The Court need not—and, in the absence of properly-defined market, cannot—engage in a full rule of reason analysis here, but in any event, this assertion is flatly contradicted by Plaintiffs' Complaint. *See* ROA.534 ¶ 50 n.8. There, Plaintiffs cite an ABIM blog post in which ABIM's president explained the organization's rationale for decertifying physicians who engage in unprofessional or unethical behavior.

services." Appellants' Br. at 47. It is Plaintiffs' burden to plead a legally sufficient product market. *See New Orleans Ass'n of Cemetery Tour Guides & Companies v. New Orleans Archdiocesan Cemeteries*, 56 F.4th 1026, 1035 (5th Cir. 2023) (dismissing antitrust claims because the plaintiff failed to "define a legally sufficient relevant market as required by both sections 1 and 2 of the Sherman Act."). Plaintiffs' shotgun approach to this foundational component of their antitrust claims is unavailing.

The only market in which ABIM even conceivably competes is the proposed market for internal medicine board certification. Plaintiffs allege the "Board Defendants have monopoly power in their respective specialties, as each controls an estimated 80% of the certification of physicians in their corresponding specialties." ROA.532 ¶ 38. But Plaintiffs allege nothing about substitute products in the markets for certifications in each specialty, demand for them, or any other metrics that would permit a court to measure a defendant's ability to lessen or destroy competition in that market. Courts have repeatedly rejected similarly vague market definitions. *See, e.g., PSKS*, 615 F.3d at 418 (holding "women's accessories" is "too broad and vague a definition to

constitute a market"). In fact, the Court of Appeals for the Third Circuit upheld dismissal of antitrust claims against ABIM on this very basis. *Kenney v. ABIM*, 847 F. App'x 137, 146 (3d Cir. 2021) (affirming dismissal because "Plaintiffs have not plausibly alleged the existence of a [certification] market"); *see also Ass'n of Am. Physicians & Surgeons v. Am. Bd. of Med. Specialties*, 2020 WL 5642941, at *4-7 (N.D. Ill. Sept. 22, 2020) (holding that complaint brought by an AAPS affiliate against ABMS did not sufficiently allege a relevant market), *aff'd*, 15 F.4th 831, 834 (7th Cir. 2021). This Court should similarly affirm dismissal of Plaintiffs' Sherman Act Section 1 claim.

## C.    Plaintiffs Fail to State a Sherman Act Section 2 Claim.

This Court can affirm the dismissal of Plaintiffs' Section 2 claim on the separate ground, also fully briefed by the parties below, that Plaintiffs fail to state a claim under Section 2 of the Sherman Act for abuse of monopoly power. To state such a claim, a plaintiff must plead factual allegations establishing that the defendant "(1) possesses monopoly power in the relevant market and (2) acquired or maintained that power willfully, as distinguished from the power having arisen and continued by growth produced by the development of a superior product,

business acumen, or historic accident." *Clean Water Opportunities, Inc. v. Willamette Valley Co.*, 759 F. App'x 244, 248 (5th Cir. 2019) (quoting *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 522 (5th Cir. 1999)). "The second element requires a showing of exclusionary conduct." *Id.* Plaintiffs fail to allege facts sufficient to show either of the two elements.

### 1. Plaintiffs Do Not Allege a Relevant Market in which the Board Defendants Possess Monopoly Power.

"To establish Section 2 violations . . . a plaintiff must define the relevant market." *Doctor's Hosp.*, 123 F.3d at 311. "Without a definition of that market, there is no way to measure [a defendant's] ability to lessen or destroy competition." *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965). As discussed above, Plaintiffs fail to plead a relevant market.

Moreover, although Plaintiffs claim AAPS has been injured in the alleged market in which it actually participates—*i.e.*, the market for "medical conferences," ROA.571 ¶ 217, they make no allegations about the scope of the medical conference market, let alone the substitute products available in that market, or the demand for products in that

market. Nor do Plaintiffs allege ABIM participates in the market for medical conferences. Such facts would be necessary to state a claim that ABIM's enforcement of its certification standards has somehow harmed competition in the medical conference market.

Because Plaintiffs fail to allege possession of monopoly power by ABIM in any properly defined relevant market, their monopolization claim fails.

### 2. Plaintiffs Do Not Allege Exclusionary Conduct.

Plaintiffs' abuse of monopoly power claim also fails because Plaintiffs do not sufficiently plead any exclusionary (*i.e.*, anticompetitive) conduct by ABIM. "Exclusionary conduct under [S]ection 2 is the creation or maintenance of monopoly by means other than the competition on the merits . . . ." *Clean Water Opportunities*, 759 F. App'x at 248 (quoting *Stearns*, 170 F.3d at 522). In particular, courts consider whether "the conduct has no rational business purpose other than its adverse effects on competitors." *Id.* "[N]ot all 'unfair' conduct—even by a monopolist … fits within the prohibition of § 2. Conduct must not only be inconsistent with competition on the merits, it must also have the potential for making a significant contribution to monopoly power." *Taylor Publ'g Co.*

*v. Jostens, Inc.*, 216 F.3d 465, 475-76 (5th Cir. 2000) (quoting Areeda & Hovenkamp, *supra*, ¶ 806d at 331).

Plaintiffs plead no facts that plausibly show ABIM's conduct was intended to have, or did have, an adverse effect on its competitors or competition, or that it had the potential to make a significant contribution to ABIM's alleged monopoly power. Rather, Plaintiffs rely on a single conclusory, factually unsupported allegation that fails the *Twombly* plausibility standard: the Board Defendants "interfere[d] with physicians' freedom of speech" "in order to advance a political agenda preferred by a major political party in Congress and officials in the Executive Branch of the federal government, and thereby gain favors from federal officials to perpetuate this monopoly power by the Board Defendants." ROA.571 ¶¶ 219-220. Among other things, Plaintiffs do not allege how ABIM's efforts to address the dissemination of false medical information impedes competition among certification organizations. Plaintiffs also fail to explain how appeasing government officials would help ABIM perpetuate its alleged monopoly power. Indeed, one might well infer from Plaintiffs' Amended Complaint that ABIM's alleged conduct would in fact ***erode*** its power in the certification market because

physicians who share Plaintiffs' views would choose to seek certification elsewhere.

Plaintiffs have no legal support for their novel proposition that allegedly silencing speech can be considered exclusionary, anti-competitive conduct sufficient to support a claim for violation of the antitrust laws.[16] The antitrust laws are concerned with economic harm rather than harms to intangible rights. The conduct Plaintiffs challenge is simply not the kind of anticompetitive behavior the antitrust laws were designed to prevent. Indeed, Plaintiffs plead no facts establishing any reduction in competition in any cognizable relevant market. Accordingly, the Court should affirm the dismissal of Plaintiffs' antitrust claims.

## IV. The Court Properly Dismissed Plaintiffs' Tortious Interference Claim.

The District Court also properly dismissed Plaintiffs' claim for tortious interference. It found Plaintiffs' vague contentions that ABIM's enforcement of its professional standards interfered with AAPS's

---

[16] Plaintiffs cite the concurrence in *Sambrano v. United Airlines, Inc.*, 45 F.4th 877, 883 (5th Cir. 2022), "decrying the misuse of monopoly power by corporations to interfere with the ability of citizens to speak out." Appellants' Br. at 48. But *Sambrano* is a Title VII employment case that did not involve any antitrust claims or allegations of anti-competitive conduct.

unidentified medical conferences, and with Drs. Kory and Marik's professional reputations, do not state a claim.

"Tortious interference with business relations" is not a cause of action under Texas law.[17] Texas law recognizes two distinct torts: tortious interference with existing business relations and tortious interference with prospective business relations. *See, e.g.*, *Cox Operating LLC v. Wells Fargo Bank, NA*, 2020 WL 13228364, at *4 (S.D. Tex. June 16, 2020) (citing *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726-27 (Tex. 2001)). The District Court correctly concluded that Plaintiffs failed to state a claim for either. ROA.1234 (Tab 3 at 12).

Plaintiffs do not identify any existing contracts with which ABIM allegedly interfered. Accordingly, they cannot state a claim for tortious interference with existing business relations. *See Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex. 1996) ("To recover for tortious

---

[17] Texas applies the law of the place that has the most significant relationship to the litigation to tort claims. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000). In tort actions, one of the relevant contacts is the place where the injury occurred. *See DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 802 (5th Cir. 2007). Drs. Kory and Marik both allege that they incurred reputational injury in Texas. ROA.524-25 ¶¶ 13, 15; ROA.574 ¶ 237. Thus, Texas has a significant relationship to the litigation and Texas law applies.

interference with an existing contract, a plaintiff must prove: (1) the existence of a contract subject to interference . . . .").

To plead tortious interference with prospective business relations, "the plaintiff must establish that (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain and substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; [and] . . . (5) the plaintiff suffered actual damage or loss as a result." *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). As the District Court found, Plaintiffs "do not allege with any specificity or supporting facts what 'unlawful actions' ABIM . . . undertook 'without justification.'" ROA.1233 (Tab 3 at 11) (quoting *Apani Sw., Inc.*, 300 F.3d at 634). Plaintiffs' claim rests entirely on allegations that simply recite these elements without any supporting facts. For example, Plaintiffs assert "there is a reasonable probability that Plaintiff AAPS would have entered into a business relationship with third parties, namely conference attendees and donors." ROA.566 ¶ 187. But Plaintiffs fail to

identify any such third party or conference, much less plausibly allege that ABIM deliberately or knowingly sought to interfere with such relationships by engaging in tortious or unlawful conduct.

Drs. Kory and Marik rely on similarly unsupported allegations, and the District Court rightly determined they do not sufficiently allege a "reasonable probability" that they would have entered into a business relationship with a third party but for ABIM's conduct. Plaintiffs allege that ABIM has interfered with their "right [to] opportunities as physicians, expert witnesses, and public health advocates" without specifying which future business relationships would be affected. ROA.566 ¶ 190. Because Plaintiffs fail to allege the specifics of a proposed agreement that never came to fruition for Drs. Kory and Marik due to ABIM's conduct, the District Court correctly dismissed this claim.

To try to remedy this deficiency, Plaintiffs again use their appellate brief to introduce new allegations never introduced or considered below. They claim, for the first time, as a result of ABIM's revocation of his board certification, Dr. Kory was removed from a case for which he was serving as an expert witness. As discussed above, this Court may not consider allegations advanced for the first time on appeal. *English*, 777 F. App'x

at 96. But even if it could, Plaintiffs fail to plausibly allege any "unlawful actions" by ABIM "undertaken without justification or excuse" that led to Dr. Kory's removal as an expert witness, or that ABIM's actions were intended to harm Dr. Kory or motivated by malice. Accordingly, the Court should uphold dismissal of Plaintiffs' tortious interference claims.

## V. The District Court Correctly Held that Drs. Kory and Marik's Defamation Claims Fail as a Matter of Law Because Plaintiffs Do Not Identify any Specific Statement by ABIM that Purportedly Defamed Them.

Under Florida law, to state a claim for defamation, a plaintiff must allege that "(1) the defendant published a false statement (2) about the plaintiff (3) to a third party and (4) that the falsity of the statement caused injury to the plaintiff." *Alan v. Wells Fargo Bank, N.A.*, 604 F. App'x 863, 865 (11th Cir. 2015) (quoting *Valencia v. Citibank Int'l*, 728 So.2d 330, 330 (Fla. 3d DCA 1999)). The same requirements apply under Virginia law.[18] *See generally Va. Citizens Def. League v. Couric*, 910 F.3d 780, 783 (4th Cir. 2018).

---

[18] The District Court correctly held that Dr. Kory and Dr. Marik's defamation claims are governed, respectively, by Florida and Virginia law. *See Levine v. CMP Publ'ns*, 738 F.2d 660, 667 (5th Cir. 1984) (explaining that, under Texas' choice-of-law rules, defamation claims are usually governed by the law of the plaintiff's state of domicile); *see*

That means that Drs. Kory and Marik were required, at a minimum, to identify some specific statement by ABIM that purportedly defamed them. *See Basulto v. Netflix, Inc.*, 2023 WL 7129970, at *22 (S.D. Fla. Sept. 20, 2023) ("Under Florida law, a party must specifically identify and describe allegedly defamatory statements in a larger work." (cleaned up)); *Chacko v. Preston*, 2024 WL 943455, at *5 (E.D. Va. Mar. 5, 2024) ("When a plaintiff fails to identify an actionable statement, his defamation claim must be dismissed as a matter of law."), *aff'd*, 2024 WL 4814885 (4th Cir. Nov. 18, 2024).

The District Court correctly held that Dr. Kory and Dr. Marik's defamation claims failed on that threshold ground. ROA.1237-38 (Tab 3 at 15-16). In the Amended Complaint, Drs. Kory and Marik assert generally that ABIM "conveyed information to the public and third parties which is false and damaging to Plaintiffs Kory and Marik." ROA.574 ¶ 235. They do not identify any specific statement by ABIM that supposedly defamed them.

---

*also* ROA.524-25 ¶¶ 13, 15 (identifying Drs. Kory and Marik's states of residence as Florida and Virginia, respectively).

On appeal, Drs. Kory and Marik try to rectify this by pointing to their allegation that, at one point, ABIM's then-President and CEO referred to people "who disagree with his approach to COVID as 'being friends of the virus.'" Appellants' Br. at 52 (quoting ROA.534 ¶ 50). But this statement is not *about* either Dr. Kory or Dr. Marik specifically. Under well-established defamation law, a plaintiff cannot premise a defamation claim on a statement that casts general aspersions on the class of persons to which he belongs. *See, e.g.*, *Reed v. Chamblee*, 2023 WL 6292578, at *11 (M.D. Fla. Sept. 27, 2023) (professional golfer who left PGA tour to join LIV tour could not state defamation claim based on statements generally disparaging of "LIV players as a group"), *aff'd*, 2025 WL 1874638 (11th Cir. July 8, 2025); *Hanks v. Wavy Broad., LLC*, 2012 WL 405065, at *7 (E.D. Va. Feb. 8, 2012) (news report generally disparaging "unscrupulous tax preparers" could not support defamation claim by individual tax preparer); *see also generally Ewell v. Boutwell*, 121 S.E. 912, 914 (Va. 1924) ("If defamatory words are used broadly in respect to a general class of persons, and there is nothing that points, or by colloquium or innuendo can be made to apply to a particular member

thereof, such member has no right of action."). Drs. Kory and Marik cannot state a claim for defamation based on this statement.

Nor do Drs. Kory and Marik fare any better in paraphrasing ABIM's position as being "that there is no evidence whatsoever in support of Drs. Kory's and Marik's views." Appellants' Br. at 52-53 (quoting ROA.711-12 ¶ 124). Once again, they do not identify any specific statement by ABIM that conveyed this sentiment. And, even if they had, the defamation claims would still fail. A statement expressing scientific disagreement with a plaintiff's views cannot form the basis for a defamation claim, no matter how bluntly it is phrased. That is because courts are not proper forums to hash out who is right or wrong on matters of science. *See, e.g.*, *Mercola v. N.Y. Times Co.*, 2024 WL 551952, at *2-3 (M.D. Fla. Feb. 12, 2024) (newspaper's description of plaintiff-physician's views on COVID vaccine as "easily disprovable" could not support defamation claim); *Malone v. WP Co.*, LLC, 2023 WL 6447311, at *5 (W.D. Va. Sept. 29, 2023) (newspaper's description of plaintiff-physician's views on COVID-19 vaccines as "dangerous" could not support defamation claim).

Finally, Drs. Kory and Marik cannot state a defamation claim against ABIM based on news stories that reported about ABIM's decision to revoke their certifications. *See* Appellants' Br. at 53 (citing ROA.574 ¶ 235, which cites to two news reports about ABIM's decision). To state a claim against ABIM, Drs. Kory and Marik need to identify statements *by* ABIM, not statements by third parties *about* what ABIM did. *See Alan*, 604 F. App'x at 865 (under Florida law, defamation claims requires statement "published" by "the *defendant*" (emphasis added)); *Couric*, 910 F.3d at 783 (same as to Virginia law). Drs. Kory and Marik cannot get around this with their assertion that discovery might show ABIM played some role in those third-party "publications." Appellants' Br. at 53. To meet their pleading burden, Drs. Kory and Marik were required to allege facts plausibly suggesting ABIM was involved in those publications, not merely to assert that discovery might reveal such involvement. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). They did not do so.

The District Court correctly dismissed Dr. Kory and Dr. Marik's defamation claims on the ground that Plaintiffs fail to identify any specific defamatory statement about them by ABIM.

## CONCLUSION

This Court should affirm the District Court's order and judgment dismissing the Amended Complaint with prejudice.

Dated:  January 16, 2026          Respectfully submitted,

*/s/ Jason Leckerman*
Jason Leckerman
leckermanj@ballardspahr.com
Paul Lantieri III
lantierip@ballardspahr.com
Elizabeth Weissert
weisserte@ballardspahr.com
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
Tel. 215.665.8500
Fax 215.864.8999

*Attorneys for Defendant-Appellee*
*American Board of Internal*
*Medicine*

## CERTIFICATE OF COMPLIANCE

### With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

A.    This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because the Brief contains 11,851 words, excluding the part of the Brief exempted by Fed. R. App. P. 32(f).

B.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Office Word in 14-point Century Schoolbook font.

DATE: January 16, 2026        */s/ Jason Leckerman*
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
Tel. 215.665.8500
Fax 215.864.8999

*Attorneys for Defendant-Appellee*
*American Board of Internal Medicine*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 16th day of January, a true and correct copy of the foregoing Brief of Defendant-Appellee American Board of Internal Medicine was served on counsel for all parties via the Court's CM/ECF system.

DATE: January 16, 2026

/s/ Jason Leckerman
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
Tel. 215.665.8500
Fax 215.864.8999

*Attorneys for Defendant-Appellee*
*American Board of Internal Medicine*