No. 25-40624

## IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

————————————

Association of American Physicians and Surgeons Educational Foundation, AAPS; Pierre Kory, M.D., M.P.A.; Paul E. Marik, M.D., FCCM, FCCP,

Plaintiffs-Appellants,

v.

American Board of Internal Medicine, ABIM; American Board of Obstetrics & Gynecology, ABOG; American Board of Family Medicine, ABFM; Kristi Noem, Secretary, U.S. Department of Homeland Security,

Defendants-Appellees.

————————————

On Appeal from the United States District Court
for the Southern District of Texas

————————————

## BRIEF FOR APPELLEE SECRETARY OF HOMELAND SECURITY KRISTI NOEM

————————————

BRETT A. SHUMATE
  *Assistant Attorney General*

NICHOLAS J. GANJEI
  *United States Attorney*

DANIEL TENNY
SAMUEL B. GOLDSTEIN
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7242*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-0718*

# CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required because defendant-appellee Secretary of Homeland Security Kristi Noem is a governmental party.  5th Cir. R. 28.2.1.

## STATEMENT REGARDING ORAL ARGUMENT

The government does not believe that oral argument is necessary regarding the issues that concern the government in this case.  The government takes no position on whether oral argument would be appropriate to address the issues disputed by the other parties.  If the Court determines that oral argument would be helpful to resolve the issues relating to the government, the government stands ready to present argument.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

STATEMENT OF JURISDICTION ........................................................................2

STATEMENT OF THE ISSUE ................................................................................2

STATEMENT OF THE CASE ..................................................................................3

    A.    Statutory Background.....................................................................3

    B.    Factual Background ........................................................................4

    C.    Prior Proceedings...........................................................................7

SUMMARY OF ARGUMENT............................................................................... 12

STANDARD OF REVIEW ..................................................................................... 13

ARGUMENT ............................................................................................................. 13

THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFFS' FACA
    CLAIM, WHICH PRESENTS NO LIVE CONTROVERSY ........................ 13

    A.    Plaintiffs' FACA claim does not present a live controversy. ...................14

    B.    The district court's stay of discovery was appropriate and provides
        no basis for reversal.........................................................................21

CONCLUSION ......................................................................................................... 23

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                                                    **Page(s)**

*Already, LLC v. Nike, Inc.,*
568 U.S. 85 (2013) ........................................................................... 14

*Arbaugh v. Y & H Corp.,*
546 U.S. 500 (2006) ......................................................................... 20

*Association of Am. Physicians & Surgeons Educ. Found. v. American Bd. of Internal Med.,*
103 F.4th 383 (5th Cir. 2024) ................................... 1, 9, 10, 15, 16, 17

*Brazos Valley Coal. for Life, Inc. v. City of Bryan,*
421 F.3d 314 (5th Cir. 2005) ......................................................... 13, 21

*Byrd v. U.S. EPA,*
174 F.3d 239 (D.C. Cir. 1999) ........................................................ 20

*California v. Texas,*
593 U.S. 659 (2021) ........................................................................ 17

*Campaign Legal Ctr. v. Scott,*
49 F.4th 931 (5th Cir. 2022) .................................................... 18, 19, 20

*Cummock v. Gore,*
180 F.3d 282 (D.C. Cir. 1999) ........................................................ 20

*Doe 1 v. City View Indep. Sch. Dist.,*
150 F.4th 668 (5th Cir. 2025) ......................................................... 13

*EEOC v. BDO USA, LLP,*
876 F.3d 690 (5th Cir. 2017) ..........................................................23

*FBI v. Fikre,*
601 U.S. 234 (2024) ........................................................................ 15

*FDA v. Alliance for Hippocratic Med.,*
602 U.S. 367 (2024) ........................................................................ 18

*Landry v. Air Line Pilots Ass'n Int'l,*
901 F.2d 404 (5th Cir. 1990) ....................................................... 21, 22

*Petrus v. Bowen,*
833 F.2d 581 (5th Cir. 1987) ....................................................... 21, 22

*Public Citizen v. U.S. Dep't of Just.*,
  491 U.S. 440 (1989) ................................................................... 19

*Sapp v. Memorial Hermann Healthcare Sys.*,
  406 F. App'x 866 (5th Cir. 2010) .............................................. 21

*Shemwell v. City of McKinney*,
  63 F.4th 480 (5th Cir. 2023) ............................................... 13, 17

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
  549 U.S. 422 (2007) ................................................................... 17

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ................................................................... 18

*In re Terra Int'l, Inc.*,
  134 F.3d 302 (5th Cir. 1998) ..................................................... 23

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ............................................................. 18, 20

*United States v. Texas*,
  599 U.S. 670 (2023) ................................................................... 18

*Whitaker v. Collier*,
  862 F.3d 490 (5th Cir. 2017) ..................................................... 21

**U.S. Constitution:**

Art. III, § 2, cl. 1 ....................................................................... 14

**Statutes:**

Freedom of Information Act:
  5 U.S.C. § 552 *et seq.* ................................................................ 3

Federal Advisory Committee Act:
  5 U.S.C. § 1001 *et seq.* .............................................................. 3
    5 U.S.C. § 1001(2)(A) ............................................................. 3
    5 U.S.C. § 1004(b)(2) .............................................................. 4
    5 U.S.C. § 1008(c) ................................................................... 3
    5 U.S.C. § 1009(a)(1) .............................................................. 3
    5 U.S.C. § 1009(a)(2) .............................................................. 3

5 U.S.C. § 1009(b) ................................................................. 3
5 U.S.C. § 1009(c) ................................................................. 3

6 U.S.C. § 451(a) ................................................................... 3

28 U.S.C. § 1291 ................................................................... 2

28 U.S.C. § 1331 ................................................................... 2

## Regulatory Materials:

41 C.F.R. § 102-3.60(b) .......................................................... 4

Exec. Order No. 14,149,
   90 Fed. Reg. 8243 (Jan. 20, 2025) ............................................. 7, 17

## Rule:

Fed. R. Civ. P. 15(a)(2) ......................................................... 16

## Legislative Material:

*Protecting the Homeland from Unmanned Aircraft Systems: Hearing*
   *Before the S. Comm. on Homeland Sec. & Governmental Affs.*,
   117th Cong. (2022) (statement of Samantha Vinograd) ........................... 4

## Other Authorities:

Disinformation Best Pracs. & Safeguards Subcomm., HSAC,
   U.S. Dep't of Homeland Sec., *Final Interim Recommendation*
   (July 18, 2022), https://perma.cc/J5GF-GPWY .................................. 5, 16

Disinformation Best Pracs. & Safeguards Subcomm., HSAC,
   U.S. Dep't of Homeland Sec., *Final Report* (Aug. 24, 2022),
   https://perma.cc/M9H6-C6XX ................................................... 6, 16

Letter from Nina Jankowicz, Exec. Dir., DGB, to Alejandro Mayorkas,
   Sec'y, U.S. Dep't of Homeland Sec. (May 18, 2022),
   https://perma.cc/5U9W-A3Z3 ................................................... 4

Meeting Notice, 87 Fed. Reg. 40,261 (July 6, 2022) .............................. 5

Meeting Notice, 87 Fed. Reg. 43,045 (July 19, 2022) ........................................................ 6

Meeting Notice, 87 Fed. Reg. 47,229 (Aug. 2, 2022) ........................................................ 6

Memorandum from Alejandro N. Mayorkas, Sec'y, U.S. Dep't
of Homeland Sec., to William J. Bratton & Jamie Gorelick,
Co-Chairs, HSAC; Karen Tandy, Vice Chair, HSAC
(May 18, 2022), https://perma.cc/Z6GV-3W7S ........................................... 5

Press Release, U.S. Dep't of Homeland Sec., *Following HSAC
Recommendation, DHS Terminates Disinformation Governance Board*
(Aug. 24, 2022), https://perma.cc/JM42-9PN7 ................................................. 6, 7, 16

Press Release, U.S. Dep't of Homeland Sec., *President Trump
Announces Appointments to the Homeland Security Advisory Council*
(June 24, 2025), https://perma.cc/FNH6-Y9H2 ........................................................ 7

U.S. Dep't of Homeland Sec., *Homeland Security Advisory Council:
Charter* (Mar. 11, 2021), https://perma.cc/6FWB-FBHB ........................................... 5

U.S. Dep't of Homeland Sec., *Homeland Security Advisory Council
Meeting Minutes* (July 18, 2022), https://perma.cc/WFP8-98DE .............................. 6

U.S. Dep't of Homeland Sec., *Homeland Security Advisory Council
Meeting Minutes* (Aug. 24, 2022), https://perma.cc/W7EM-NTZQ .......................... 6

## INTRODUCTION

At the end of a brief challenging a set of district-court decisions that do not concern the government, plaintiffs briefly urge this Court to reverse the district court's dismissal as moot of claims under the Federal Advisory Committee Act (FACA) regarding an alleged obligation to disclose records relating to a now-defunct working group—the Disinformation Governance Board (DGB or Board)—that the Department of Homeland Security created in 2022.  This Court has already held that plaintiffs' claims relating to that entity were moot.  *See Association of Am. Physicians & Surgeons Educ. Found. v. American Bd. of Internal Med.* (*AAPS*), 103 F.4th 383, 395-96 (5th Cir. 2024).  Plaintiffs' amended complaint provides no basis for deviating from that analysis.  Rather, as the district court explained, in this regard the amended complaint "simply rehash[ed]" plaintiffs' previously dismissed allegations.  ROA.1228.

In particular, plaintiffs' central contention remains that they were injured by the alleged FACA violation because the Disinformation Best Practices and Safeguards Subcommittee (Subcommittee) did not adequately represent plaintiffs' interests in formulating its recommendations about the Board.  But the Subcommittee's ultimate recommendation to dissolve the Board was consistent with plaintiffs' position in this litigation.  And the Secretary subsequently terminated the Board consistent with the Subcommittee's recommendation.  As this Court previously recognized, plaintiffs thus no longer have any cognizable interest in the Subcommittee's records, and they identify no concrete harm from nondisclosure of those materials.

Because plaintiffs' claim is moot, plaintiffs' separate challenge to the district court's stay of discovery pending resolution of the government's motion to dismiss is beside the point, as plaintiffs do not explain how any of the requested discovery could have affected the district court's dismissal of their claims for lack of subject-matter jurisdiction. In any event, this Court has repeatedly recognized that district courts have broad discretion to stay discovery while they consider dispositive motions that would obviate any need for discovery if granted.

The district court's judgment should be affirmed in relevant part.

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. § 1331. ROA.687. The district court correctly held that it lacked subject-matter jurisdiction because the claims against Secretary Noem are moot. *See infra* pp. 14-20. The district court entered final judgment on July 31, 2025. ROA.1239-1240. Plaintiffs filed a timely notice of appeal on September 26, 2025. ROA.1241-1242. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

The only issue presented relating to plaintiffs' claim against the government is whether the district court correctly concluded that plaintiffs' FACA disclosure claim does not present a live controversy.

# STATEMENT OF THE CASE

## A.   Statutory Background

The Department of Homeland Security is permitted to establish "advisory committees" to provide guidance and recommendations on matters relating to the Department's mission.  6 U.S.C. § 451(a).  Such advisory committees are generally subject to the requirements of the FACA, 5 U.S.C. § 1001 *et seq.*

The FACA imposes various requirements on the work of advisory committees, which it defines to include any "committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof," that is (as relevant here) "established or utilized to obtain advice or recommendations for . . . one or more agencies or officers of the Federal Government."  5 U.S.C. § 1001(2)(A).  For example, an advisory committee must file a detailed charter before it can "meet or take any action," *id.* § 1008(c), and generally must publish notices of its upcoming meetings in the Federal Register, *id.* § 1009(a)(2).  Its meetings must be open to the public, *id.* § 1009(a)(1), with detailed and accurate minutes kept, *id.* § 1009(c).  Those minutes, together with all documents that were "made available to or prepared for or by" the committee, must be made available to the public under the terms of the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* *Id.* § 1009(b).  And an advisory committee's membership must "be fairly balanced in terms of the points of view represented and the functions to be performed by the

3

advisory committee." *Id.* § 1004(b)(2); *see* 41 C.F.R. § 102-3.60(b) (extending that requirement to advisory committees established by an agency).

### B.    Factual Background

1.  In February 2022, the Department of Homeland Security created the Disinformation Governance Board, an internal working group designed to "guide and support the Department's efforts to address mis-, dis-, and mal-information that threatens homeland security." ROA.165.  The Board's purpose was to ensure that such efforts were "coordinated, deconflicted, and harmonized . . . to ensure efficiency, unity of effort, and promotion of applicable compliance and best practices." ROA.165.  Consistent with that purpose, the Board lacked operational authority or capability.  *See* ROA.165-168.

The Board never met.  Its creation garnered significant public attention and criticism.  The Department paused indefinitely the Board's work prior to its first meeting.  *Protecting the Homeland from Unmanned Aircraft Systems: Hearing Before the S. Comm. on Homeland Sec. & Governmental Affs.*, 117th Cong. (2022) (statement of Samantha Vinograd, Acting Assistant Sec'y for Counterterrorism, Threat Prevention, & L. Enf't, Off. of Strategy, Pol'y, & Plans, U.S. Dep't of Homeland Sec.); *see* ROA.432.  The Board's Executive Director resigned shortly thereafter.  Letter from Nina Jankowicz, Exec. Dir., DGB, to Alejandro Mayorkas, Sec'y, U.S. Dep't of Homeland Sec. (May 18, 2022), https://perma.cc/5U9W-A3Z3.  No replacement was ever named.

While the Board's work was indefinitely paused, then-Secretary Mayorkas sought advice from the Homeland Security Advisory Council (HSAC or Council), an advisory committee established pursuant to the FACA. *See* U.S. Dep't of Homeland Sec., *Homeland Security Advisory Council: Charter* 1 (Mar. 11, 2021), https://perma.cc/6FWB-FBHB. Secretary Mayorkas tasked the Council with "assess[ing] how the Department can most effectively and appropriately address disinformation that poses a threat to the homeland, while increasing transparency and protecting free speech, civil rights, civil liberties, and privacy." Memorandum from Alejandro N. Mayorkas, Sec'y, U.S. Dep't of Homeland Sec., to William J. Bratton & Jamie Gorelick, Co-Chairs, HSAC; Karen Tandy, Vice Chair, HSAC 1 (May 18, 2022), https://perma.cc/Z6GV-3W7S; *see* ROA.432. In turn, the Council created a subcommittee called the Disinformation Best Practices and Safeguards Subcommittee. ROA.432-433.

The Subcommittee met with "leaders and subject matter experts from every [Department of Homeland Security] component that plays a role in the mis- dis- and mal-information mission." Disinformation Best Pracs. & Safeguards Subcomm., HSAC, U.S. Dep't of Homeland Sec., *Final Interim Recommendation* 3 (July 18, 2022), https://perma.cc/J5GF-GPWY. After receiving these briefings, the Subcommittee concluded that "there is no need for a Disinformation Governance Board." *Id.* at 4 (emphasis omitted). The Subcommittee presented that interim recommendation to the full Council at a public meeting. *See* Meeting Notice, 87 Fed. Reg. 40,261, 40,261

(July 6, 2022). The Council discussed the recommendation and voted to approve it. U.S. Dep't of Homeland Sec., *Homeland Security Advisory Council Meeting Minutes* 4-6 (July 18, 2022), https://perma.cc/WFP8-98DE.

In August 2022, the Subcommittee released its final report. ROA.433. The final report reiterated the Subcommittee's prior recommendation "that there is no need for a separate Disinformation Governance Board," and it noted that the Council previously accepted that recommendation. Disinformation Best Pracs. & Safeguards Subcomm., HSAC, U.S. Dep't of Homeland Sec., *Final Report* 12 (Aug. 24, 2022), https://perma.cc/M9H6-C6XX; *see* ROA.433. The Subcommittee presented its final report to the full Council at a public meeting. *See* Meeting Notice, 87 Fed. Reg. 43,045, 43,045 (July 19, 2022) (announcing the Council's meeting agenda, including discussion of the final report); Meeting Notice, 87 Fed. Reg. 47,229, 47,229 (Aug. 2, 2022) (rescheduling the meeting for August 24, 2022). Following the presentation and a discussion by the Council's members, the Council voted to approve the final report. U.S. Dep't of Homeland Sec., *Homeland Security Advisory Council Meeting Minutes* 3-8 (Aug. 24, 2022), https://perma.cc/W7EM-NTZQ; *see* ROA.433.

The same day, August 24, 2022, Secretary Mayorkas terminated the Board and rescinded its charter. Press Release, U.S. Dep't of Homeland Sec., *Following HSAC Recommendation, DHS Terminates Disinformation Governance Board* (Aug. 24, 2022), https://perma.cc/JM42-9PN7 (*Board Termination Press Release*); *see* ROA.433. The

accompanying public statement explained that the Secretary acted "[i]n accordance with the HSAC's prior recommendation." *Board Termination Press Release.*

2. On January 20, 2025, after the change in administration, President Trump signed an Executive Order titled "Restoring Freedom of Speech and Ending Federal Censorship." Exec. Order No. 14,149, 90 Fed. Reg. 8243 (Jan. 20, 2025). The Executive Order's stated purpose is to protect "free speech rights" and to protect against "censor[ship]" of "Americans' speech on online platforms . . . [u]nder the guise of combatting 'misinformation,' 'disinformation,' and 'malinformation.'" *Id.* at 8243. The Executive Order accordingly states that it is "the policy of the United States" to "ensure that no Federal Government officer, employee, or agent engages in or facilitates any conduct that would unconstitutionally abridge the free speech of any American citizen." *Id.* And it prohibits federal agencies, officers, and employees from "act[ing] or us[ing] any Federal resources in a manner contrary to" this policy. *Id.*

Further, in June 2025, President Trump and Secretary Noem appointed new members to the Homeland Security Advisory Council. Press Release, U.S. Dep't of Homeland Sec., *President Trump Announces Appointments to the Homeland Security Advisory Council* (June 24, 2025), https://perma.cc/FNH6-Y9H2.

### C. Prior Proceedings

1. Plaintiff Association of American Physicians and Surgeons Educational Foundation (AAPS)—a nonprofit organization that co-sponsors medical

conferences—filed this suit in July 2022. Although much of the complaint focused on allegations against private defendants, as relevant here AAPS advanced claims against then-Secretary Mayorkas. ROA.21-22. In particular, AAPS asserted that (1) the establishment of the Board violated the First Amendment, and (2) the use of the Council to advise the Secretary regarding the Board violated the FACA, giving rise to a claim under the Administrative Procedure Act. ROA.34-37.

As to the First Amendment claim, the complaint alleged that Secretary Mayorkas injured AAPS "[b]y establishing the Disinformation Governance Board." ROA.23; *see also* ROA.31 ("The establishment of the Disinformation Governance Board . . . has a chilling effect on internet speech . . . ."); ROA.34 ("Defendant Mayorkas's creation of a Disinformation Governance Board has a chilling effect on internet speech . . . ."). For relief on this claim, AAPS sought "an injunction requiring Defendant Mayorkas to disband and permanently discontinue the Disinformation Governance Board." ROA.42.

The complaint asserted that the Council's alleged failure to comply with applicable FACA requirements injured AAPS "by denying its rights to have its interests represented on HSAC while it acts under the command of Defendant Mayorkas to make recommendations about the DGB." ROA.37. As relief for this claim, AAPS sought "an injunction requiring Defendant Mayorkas to comply fully with FACA in connection with all activities by HSAC and/or its members relating to

8

the DGB, or abolishing DGB altogether by virtue of this violation of FACA."
ROA.42.

2.  The district court granted the government's motion to dismiss for lack of
subject-matter jurisdiction.  ROA.431, 442.  The court explained that AAPS's "claims
all rely on the [B]oard's continued existence and became moot with the [B]oard's
termination in August 2022," as that termination provided plaintiff "the precise relief
that it requested" in its complaint.  ROA.438.  The court then held that the voluntary-
cessation exception to mootness did not apply.  ROA.440.  Government officials are
presumed to act in good faith when making policy changes that moot a pending case,
ROA.439, and the court found no indication in the record that "Mayorkas or the
Department will reinstate the [B]oard," ROA.440.  In so holding, the court declined
to consider new factual allegations that AAPS first advanced in its brief opposing
dismissal.  ROA.441.  And even construing those new allegations as a motion for
leave to amend the complaint, the court denied leave to amend, explaining that any
amendment "would be futile, cause undue delay, and unfairly prejudice" the
government.  ROA.441 n.2.

3.  This Court affirmed the district court's mootness dismissal.  *AAPS*, 103
F.4th at 395-96.  The Court held that "[t]he DGB's dissolution mooted AAPS's
claims" against the government.  *Id.* at 395.  It further concluded that the voluntary-
cessation exception to mootness did not apply, as "the evidence [AAPS] presents only
shows that the DGB *could* be [re]established, not that it *will* be reestablished."  *Id.*

9

at 396.  Accordingly, AAPS could not "overcome mootness based on the allegations contained within the complaint, at least as it [was] currently written." *Id.*  But the Court modified the district court's dismissal to be without prejudice because it was based on "jurisdictional . . . grounds." *Id.*

This Court separately addressed AAPS's argument that the district court's application of a local rule conflicted with the "liberal[]" amendment standard under the Federal Rules of Civil Procedure and thus improperly deprived AAPS of an opportunity to amend its complaint.  *AAPS*, 103 F.4th at 394-95 (quotation marks omitted).  The Court's holding in that regard applied to all of AAPS's claims, not just those against the government, and did not discuss the substance of any claim.  *See id.* at 393-96.

4.  On remand, the district court granted leave to file an amended complaint. ROA.678.  The amended complaint added several individual physicians as plaintiffs, though these new plaintiffs did not assert any distinct claims against the government. ROA.684-686; *see also, e.g.*, ROA.514 (plaintiffs asserting that amended complaint's FACA claim presents "the same cause of action as raised originally").

Like the original complaint, plaintiffs' amended complaint asserted First Amendment and FACA claims against the government.  ROA.719-725.  As to the First Amendment claim, plaintiffs alleged that "[t]hen-DHS Secretary Mayorkas chilled and infringed on Plaintiffs' First Amendment right of freedom of speech" by "imposing censorship based on viewpoint."  ROA.689.  And as to the FACA claim,

plaintiffs alleged that the Subcommittee violated the FACA's disclosure requirements by "fail[ing] to make available to the public many of [its] minutes and documents" about "the creation and purported discontinuation of the DGB and other censorship activities." ROA.724. Plaintiffs also alleged that "HSAC and its Subcommittee have not been fairly balanced" as required by the FACA. ROA.724. According to plaintiffs, these alleged FACA violations "have injured Plaintiffs by denying their rights to have their interests represented on HSAC and its Subcommittee." ROA.725. For relief on their FACA claims, plaintiffs requested "an injunction requiring Defendant Noem to comply fully with FACA in connection with all activities by HSAC and its Subcommittee." ROA.736.

5. The district court granted the government's motion to stay discovery pending resolution of its motion to dismiss the amended complaint. ROA.1184. The court subsequently granted the government's motion to dismiss for lack of subject-matter jurisdiction. ROA.1224, 1238. The court concluded that "plaintiffs' amended complaint simply rehashes claims they made against the Department during the Biden Administration and alleges in a conclusory fashion that the Homeland Security Advisory Council's current political imbalance is an ongoing injury." ROA.1228. The court thus "once again" held that plaintiffs' "claims against the Department are moot." ROA.1228.

11

## SUMMARY OF ARGUMENT

A.    This case is moot.  On appeal, plaintiffs have abandoned all their claims except their contention that the Subcommittee violated the FACA's requirement to make its minutes and other records available to the public.  But this Court has already concluded that the Board's dissolution mooted plaintiffs' FACA claim, and that conclusion applies with equal force to plaintiffs' amended complaint.  The only respect in which this Court suggested that additional allegations in the complaint could overcome mootness was in stating that the case might be different if plaintiffs could show that the Disinformation Governance Board would be reestablished.  Plaintiffs have not even attempted to make that showing in their amended complaint.

Thus, like its predecessor, the amended complaint fails to show that plaintiffs have any continued interest in the Subcommittee's materials.  The amended complaint, like the original, asserts that plaintiffs are injured insofar as their interests were inadequately represented on the Homeland Security Advisory Council and its Subcommittee.  But the Subcommittee recommended against the continuation of the Department of Homeland Security's Disinformation Governance Board—just as plaintiffs wanted—and the then-Secretary of Homeland Security terminated the Board shortly after this lawsuit was filed.  Plaintiffs' claims against the government are therefore moot.  Indeed, plaintiffs could not even demonstrate Article III standing because the Subcommittee's recommendation aligned with plaintiffs' position in this litigation, so any alleged imbalance did not harm them.

12

B.     Because plaintiffs' claim is moot, no amount of discovery could save it, and the district court's decision to stay discovery caused no prejudice.  In any event, the district court acted within its broad discretion over discovery matters when it stayed discovery pending resolution of the government's motion to dismiss.  The government's motion, if granted, would result in dismissal of the claims against the Department on jurisdictional grounds, obviating any need for discovery.

## STANDARD OF REVIEW

This Court reviews de novo an order dismissing a case for lack of subject-matter jurisdiction.  *Shemwell v. City of McKinney*, 63 F.4th 480, 483 (5th Cir. 2023) (per curiam).  The Court "review[s] a decision to stay discovery pending resolution of a dispositive motion for an abuse of discretion."  *Brazos Valley Coal. for Life, Inc. v. City of Bryan*, 421 F.3d 314, 327 (5th Cir. 2005).  This Court "may affirm the district court's judgment on any grounds supported by the record."  *Doe 1 v. City View Indep. Sch. Dist.*, 150 F.4th 668, 676 n.5 (5th Cir. 2025) (per curiam) (quotation marks omitted).

## ARGUMENT

## THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFFS' FACA CLAIM, WHICH PRESENTS NO LIVE CONTROVERSY

On appeal, plaintiffs do not challenge the dismissal of their First Amendment claim against the government or their claim that the Subcommittee violated the FACA's fair-balance requirement.  *See* Br. 2, 29-30, 53-58.  And they concede that their "claim of a lack of balance" on the Council "is moot" given that "President

13

Trump has replaced the members of" the Council. Br. 29-30. Thus, the only claim at issue here is plaintiffs' claim that "Secretary Mayorkas violated" the FACA's public-disclosure requirement by failing to disclose the Subcommittee's minutes and other records. Br. 55-56. As explained below, the district court properly concluded that in this respect plaintiffs' amended complaint merely rehashed the claim as to which this Court has already affirmed a mootness dismissal and thus dismissed the claim.

## A.    Plaintiffs' FACA claim does not present a live controversy.

The Constitution limits federal courts' jurisdiction to resolving "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. Accordingly, an "actual controversy" must exist "through all stages of the litigation." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90-91 (2013) (quotation marks omitted). No such live controversy exists here. Any interest plaintiffs may have had in the Subcommittee's compliance with the FACA ended when the Subcommittee recommended disbanding the Disinformation Governance Board—the very relief plaintiffs have requested in this lawsuit—and subsequently completed its work.

1. As the district court correctly concluded, plaintiffs' claim that the Subcommittee violated the FACA's public-disclosure requirement is moot. A case has become moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already*, 568 U.S. at 91 (quotation marks omitted). This principle prevents federal courts from "pronounc[ing] on past actions

that do not have any continuing effect in the world." *FBI v. Fikre*, 601 U.S. 234, 241

(2024) (quotation marks omitted).

This Court has already held that the Board's termination mooted the FACA

claim here. *AAPS*, 103 F.4th at 395-96. The original complaint asserted a FACA

claim based on then-Secretary "Mayorkas's creation of the DGB and his order to the

HSAC to provide a recommendation to him concerning the activities of the DGB."

ROA.36. It claimed that the alleged FACA violations "have injured AAPS by denying

its rights to have its interests represented on HSAC while it acts . . . to make

recommendations about the DGB." ROA.37. The district court thus determined

that the FACA claim "rel[ied] on the [B]oard's continued existence" and "became

moot with the [B]oard's termination in August 2022." ROA.438. And this Court

affirmed that determination, concluding that the "DGB's dissolution mooted AAPS's

claims against the Department"— including its FACA claim. *AAPS*, 103 F.4th

at 395; *see id.* at 389.

Nothing in plaintiffs' amended complaint warrants a different result. Plaintiffs

assert an interest in the Subcommittee's FACA compliance only "with respect to the

creation and purported discontinuation of the DGB." ROA.724. And like the

original complaint, plaintiffs' only alleged injury from the purported FACA violations

is a "den[ial]" of "their rights to have their interests represented on HSAC and its

Subcommittee." ROA.725. Thus, as the district court explained, plaintiffs' amended

allegations "simply rehash[]" their original claims, and this Court's mootness holding

15

applies equally to plaintiffs' amended complaint.  ROA.1228.  Plaintiffs' amendment does not change the fact that the Subcommittee's recommendation—that there was "no need" for the Disinformation Governance Board—was aligned with plaintiffs' position in this litigation.  *Final Interim Recommendation* 4; *Final Report* 12; *see* ROA.42. And the Board has since been disbanded, consistent with the Subcommittee's recommendation.  *Board Termination Press Release.*  Plaintiffs thus have no continuing stake in the availability of the Subcommittee's minutes and other records.

Nor does it matter that this Court previously concluded "AAPS was wrongly denied an opportunity to amend" its complaint.  *AAPS*, 103 F.4th at 394.  The Court held that the district court improperly relied on a local rule limiting amendments after the filing of a motion to dismiss, explaining that the local rule contradicts the "liberal[]" amendment standard under the Federal Rules of Civil Procedure.  *Id.* at 394-95 (quotation marks omitted) (citing Fed. R. Civ. P. 15(a)(2)).  But that procedural holding applied to all the claims in the original complaint—not just the claims against the government.  *See id.* at 393.  And this Court's analysis of that issue did not suggest that any new allegations could make the claims against the government no longer moot.  *See id.* at 393-96.  To the contrary, the only statement specific to plaintiffs' claims against the government that alluded to the possibility of new allegations in the complaint related to the possibility that plaintiffs could show the Disinformation Governance Board would be reestablished, *id.* at 396, and plaintiffs' amended complaint does not attempt to do so.  The district court thus

16

adhered to this Court's decision in granting plaintiffs leave to amend their complaint, ROA.678, but concluding that plaintiffs' amended claims against the government remained moot, ROA.1227-1228.

Plaintiffs do not contend that any exception to mootness applies here. *See* Br. 53-56. For good reason. This Court held that the original complaint failed to show that the Board "*will* be reestablished," as would be required to overcome "the government's good faith carveout to the mootness doctrine's voluntary cessation exception." *AAPS*, 103 F.4th at 388, 396. Plaintiffs' amended complaint similarly lacks any allegations that the Department will reestablish the Board. *See* ROA.701-707. And President Trump's January 2025 Executive Order—which disclaims any effort to take action "[u]nder the guise of combatting 'misinformation,' 'disinformation,' and 'malinformation,'" 90 Fed. Reg. at 8243—further undermines any claim that the Board will be reestablished.[1]

2. Article III standing principles similarly support the district court's dismissal. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'"). To establish Article III standing, "a plaintiff must show an

---

[1] The complaint's prayer for a declaratory judgment, ROA.735, cannot prevent mootness, as declaratory relief "cannot alone supply jurisdiction otherwise absent." *California v. Texas*, 593 U.S. 659, 673 (2021); *see also Shemwell*, 63 F.4th at 483-84 (holding that request for "prospective declaratory relief" could not prevent mootness where plaintiff "no longer faced an actual or imminent injury that could be prospectively declared" (quotation marks omitted)).

injury in fact caused by the defendant and redressable by a court order." *United States v. Texas*, 599 U.S. 670, 676 (2023).  An injury in fact must be "concrete" and "particularized"—*i.e.*, the injury must be "real and not abstract," and it must "affect the plaintiff in a personal and individual way." *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (quotation marks omitted).  And when, as here, "a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury." *Id.*

Notably, "Article III standing requires a concrete injury even in the context of" an alleged "statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).  Thus, even where a statute grants the public a right to certain information, a plaintiff must identify some "downstream consequences from failing to receive the required information" to establish Article III standing.  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021) (quotation marks omitted).  "An asserted informational injury that causes no adverse effects cannot satisfy Article III." *Id.* (quotation marks omitted).  Accordingly, this Court has recognized that "even in public disclosure-based cases," plaintiffs must identify "concrete and particularized harm" from "not obtaining the requested . . . information" to establish a "cognizable injury in fact." *Campaign Legal Ctr. v. Scott*, 49 F.4th 931, 937-38 (5th Cir. 2022).

Under these settled principles, plaintiffs here lack Article III standing because they identify no concrete and particularized injury from nondisclosure of the Subcommittee's records.  They allege only that the purported FACA violations "have

injured Plaintiffs by denying their rights to have their interests represented on" the Subcommittee.  ROA.725.  But the Subcommittee's recommendations were consistent with the relief plaintiffs have sought in this litigation, and the Subcommittee's work ended after it made its final recommendation to the Council in August 2022.  *See supra* pp. 5-7.  Plaintiffs have not identified any purpose for which they would use the requested information or any other concrete harm from the absence of disclosures.  They thus assert no cognizable injury in fact for Article III purposes.

3.  Plaintiffs' contrary arguments lack merit.  Plaintiffs rely on *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440 (1989), for the proposition that a "FACA claim does not require proof of any injury-in-fact."  Br. 54.  But this Court has rejected that understanding of *Public Citizen*.  In *Public Citizen*, the Supreme Court held that the public interest group plaintiffs there had Article III standing to sue for alleged FACA violations by the American Bar Association's judicial nominations committee.  491 U.S. at 449-51.  It explained that the plaintiffs sought "access to the [committee's] meetings and records in order to monitor its workings and participate more effectively in the judicial selection process."  *Id.* at 449.  Accordingly, this Court has observed that "in *Public Citizen*, the plaintiffs had actually asserted 'downstream consequences' since they needed the information in order to participate directly and actively in" the "judicial selection process[]."  *Campaign Legal Ctr.*, 49 F.4th at 938.  This Court has

19

thus rejected the argument that *Public Citizen* supports the notion that a "nondisclosure violation alone creates concrete injury." *Id.*[2]

Plaintiffs' cited D.C. Circuit cases are inapposite for similar reasons. *See* Br. 53-54. For instance, the plaintiff in *Cummock v. Gore*, 180 F.3d 282 (D.C. Cir. 1999), was a member of the relevant advisory committee, and she alleged that the committee's failure to provide her certain documents in violation of the FACA "compromised her ability to prepare a fully informed dissent." *Id.* at 290. And the plaintiff in *Byrd v. U.S. EPA*, 174 F.3d 239 (D.C. Cir. 1999), requested a declaration that a committee had not timely provided him FACA-required information to give him "ammunition for his attack on the Committee's findings in subsequent agency proceedings." *Id.* at 244 (alteration and quotation marks omitted). Here, by contrast, plaintiffs do not allege any concrete harm from the absence of disclosures about the Subcommittee. *See supra* pp. 18-19. Regardless, these out-of-circuit cases—which were in any event decided before the Supreme Court stated in *TransUnion* that an "asserted informational injury that causes no adverse effects cannot satisfy Article III." 594 U.S. at 442 (quotation marks omitted)—could not override this Court's clear precedent.

---

[2] A footnote in the government's motion to dismiss suggested that plaintiffs' FACA disclosure claim "is not subject to the requirement for a plaintiff to show injury-in-fact." ROA.948 n.16. But objections to a court's "subject-matter jurisdiction . . . can never be forfeited or waived." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (quotation marks omitted).

### B.    The district court's stay of discovery was appropriate and provides no basis for reversal.

"A trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987).  Accordingly, this Court has repeatedly upheld orders staying discovery when a dispositive motion raises "an issue that might preclude the need for the discovery altogether[,] thus saving time and expense." *Landry v. Air Line Pilots Ass'n Int'l*, 901 F.2d 404, 436 (5th Cir. 1990); *see also, e.g.*, *Sapp v. Memorial Hermann Healthcare Sys.*, 406 F. App'x 866, 870 (5th Cir. 2010) (per curiam); *Brazos Valley Coal.*, 421 F.3d at 327; *Petrus*, 833 F.2d at 583.

Here, as discussed above, the district court properly concluded that the amended complaint's allegations, even if supported by evidence, did not present a live controversy.  Plaintiffs have not even attempted to demonstrate otherwise, illustrating that they were not prejudiced by the district court's decision.  *See Whitaker v. Collier*, 862 F.3d 490, 502 (5th Cir. 2017) (holding that "[a]ny discovery error was harmless" where district court properly dismissed complaint for failure to state a claim).  Plaintiffs do not explain how any of the documents they requested in discovery could have altered the district court's conclusion that the Board's dissolution mooted plaintiffs' FACA claim.  *See* Br. 56-58.  Because "[n]othing that [plaintiffs] could have learned through discovery could have affected the resolution of" the government's

21

motion to dismiss, plaintiffs provide no reason to disturb the district court's judgment of dismissal. *Petrus*, 833 F.2d at 583.

In any event, for similar reasons, the district court acted well within its broad discretion in following that course here. The government's motion to dismiss contended that plaintiffs' claims were moot and plaintiffs lacked Article III standing based on the undisputed fact that the Disinformation Governance Board no longer exists. *See* ROA.935-948. Because dismissal on those jurisdictional grounds would obviate the need for discovery altogether, the district court reasonably stayed discovery pending resolution of the government's motion. ROA.1184.

Plaintiffs fail to show any abuse of discretion. They assert that the government could not "satisf[y] its burden to show good cause for blocking discovery" without submitting an "affidavit" or similar evidence. Br. 57. But there is nothing novel about resolving a motion to dismiss before engaging in discovery. Accordingly, this Court has recognized that parties can "me[e]t their burden of showing" that discovery is unwarranted by demonstrating that a dispositive motion "would preclude the need for the discovery" and that "discovery was not needed prior to the resolution of" the motion. *Landry*, 901 F.2d at 435-36; *see also, e.g.*, *Petrus*, 833 F.2d at 583 (upholding discovery stay without requiring such evidence). Plaintiffs do not meaningfully dispute that those criteria were met here. And plaintiffs' cited cases (Br. 56-57) are not to the contrary, as neither involved a request to stay discovery pending resolution

of a dispositive motion. *See In re Terra Int'l, Inc.*, 134 F.3d 302, 306-07 (5th Cir. 1998)

(per curiam); *EEOC v. BDO USA, LLP*, 876 F.3d 690, 698 (5th Cir. 2017).

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be

affirmed.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

NICHOLAS J. GANJEI
  *United States Attorney*

DANIEL TENNY

 *s/ Samuel B. Goldstein*
SAMUEL B. GOLDSTEIN
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7242*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-0718*
  *samuel.b.goldstein@usdoj.gov*

January 2026

# CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system.


*s/ Samuel B. Goldstein*
Samuel B. Goldstein

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5203 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word in Garamond 14-point font, a proportionally spaced typeface.

*s/ Samuel B. Goldstein*

Samuel B. Goldstein