# No. 25-40624

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

ASSOCIATION OF AMERICAN PHYSICIANS AND SURGEONS EDUCATIONAL FOUNDATION, AAPS; PIERRE KORY; M.D., M.P.A.; PAUL E. MARIK, M.D., FCCM, FCCP

Plaintiffs - Appellants

V.

AMERICAN BOARD OF INTERNAL MEDICINE, ABIM; AMERICAN BOARD OF OBSTETRICS & GYNECOLOGY, ABOG; AMERICAN BOARD OF FAMILY MEDICINE, ABFM; KRISTI NOEM, SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY,

Defendants - Appellees

---

On Appeal from the United States District Court
for the Southern District of Texas, Galveston Division
No. 3:22-CV-240 (The Honorable Jeffrey Brown)

---

## BRIEF OF APPELLEE AMERICAN BOARD OF OBSTETRICS & GYNECOLOGY

---

Date: January 16, 2026

**MCGINNIS LOCHRIDGE LLP**

Ashley Parrish
State Bar No. 15536850
Federal Bar No. 2229186
aparrish@mcginnislaw.com
500 N. Akard St., Ste. 2250
Dallas, Texas 75201
(214) 307-6960
(214) 307-6990 FAX

Marcus Eason
State Bar No.: 24092374
Federal Bar No. 2609087
meason@mcginnislaw.com
609 Main St., Ste. 2800
Houston, Texas 77002
(713) 615-8500
(713) 615-8585 FAX

April E. Lucas
State Bar No. 24046323
alucas@mcginnislaw.com
McGinnis Lochridge LLP
1111 W. 6th St., Bldg. B, Suite 400
Austin, TX 75703
(512) 495-6156
(512) 505-6356 FAX

*Attorneys for Defendant-Appellee
American Board of Obstetrics &
Gynecology*

# CERTIFICATE OF INTERESTED PERSONS

Defendant-Appellee American Board of Obstetrics & Gynecology ("ABOG") certifies that ABOG has no parent corporation and there is no publicly-held corporation that owns 10% or more of its stock.

Defendant-Appellee ABOG, through its undersigned counsel, certifies that the following listed persons and entities, as described in the fourth sentence of Local Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the Honorable Judges of this Court may evaluate possible disqualification or recusal:

<u>Defendants-Appellees</u>

1. American Board of Internal Medicine

2. American Board of Family Medicine

3. American Board of Obstetrics & Gynecology

4. Alejandro Mayorkas and then Kristi Noem, Secretary, U.S. Department of Homeland Security

<u>Counsel for Defendants-Appellees</u>

Jason Leckerman
Paul Lantieri III
Elizabeth Weissert
Andrew Philip Valencia
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103

Eric K. Gerard
HOGAN LOVELLS US, L.L.P.
609 Main Street, Suite 4300
Houston, Texas 77002


David Gerger
GERGER HENNESSY & MARTIN LLP
700 Louisiana, Suite 2300
Houston, Texas 77002

Ashley Parrish
MCGINNIS LOCHERIDGE LLP
500 N. Akard Street, Suite 2250
Dallas, Texas 75201

April Lucas
MCGINNIS LOCHERIDGE LLP
1111 W. 6th St., Bldg. B, Suite 400
Austin, TX 75703

Marcus Eason
MCGINNIS LOCHERIDGE LLP
609 Main St., Ste. 2800
Houston, Texas 77002

Barry Moscowitz
Cassie J. Dallas
Shelby Hall
THOMPSON, COE, COUSINS & IRONS, L.L.P.
700 N. Pearl Street, 25th Floor
Dallas, TX 75201

Simon Christopher Brewer
Samuel B. Goldstein
UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION APPELLATE SECTION
950 Pennsylvania Avenue NW
Washington, DC 20530

Daniel Bentele Hahs Tenny

Michael P. Clendenen

UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION

1100 L Street NW

Washington, DC

Indraneel Sur

UNITED STATES DEPARTMENT OF JUSTICE

Suite 12306

PO Box 883

Washington, DC

<u>Plaintiffs-Appellants:</u>

1. Association of American Physicians and Surgeons Educational Foundation

2. M.D., M.P.A. Pierre Kory

3. M.D., FCCM, FCCP Paul E. Marik

<u>Counsel for Plaintiffs-Appellants</u>

Andrew L. Schlafly

939 Old Chester Rd.

Far Hills, New Jersey 07931

*/s/ April E. Lucas*

*Attorneys of record for Attorneys for Defendant-Appellee American Board of Obstetrics & Gynecology*

## STATEMENT REGARDING ORAL ARGUMENT

Appellee American Board of Obstetrics and Gynecology ("ABOG") respectfully submits that oral argument is unnecessary because the appeal involves the application of well-established principles of law, and the facts and the arguments pertinent to the issues on appeal are adequately presented in the briefs and in the record. Nevertheless, ABOG requests to participate in oral argument should the Court permit oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................... i

STATEMENT REGARDING ORAL ARGUMENT ........................................... iv

TABLE OF CONTENTS ................................................................................. v

TABLE OF AUTHORITIES ........................................................................ vii

JURISDICTIONAL STATEMENT ......................................................................1

STATEMENT OF THE ISSUES..........................................................................1

STATEMENT OF THE CASE..............................................................................2

  I.    Introduction .............................................................................................2

  II.    Background ..............................................................................................4

    A.    ABOG Offers Board Certifications to Physicians in the Specialty of

Obstetrics and Gynecology. ................................................................4

    B.    ABOG Does Not Require Its Diplomates to Hold Certain Views, but to

Comply with Ethics and Professionalism Standards. .........................5

    C.    Appellants seek to punish free speech......................................................8

    D.    Appellants have not alleged ABOG harmed them by violating any

Constitutional rights. ..........................................................................9

  III.    Procedural History.................................................................................10

SUMMARY OF THE ARGUMENT .................................................................11

ARGUMENT ...................................................................................................14

  I.    Standard of Review ...............................................................................14

  II.    Argument................................................................................................14

A.     Appellants' First Amendment Claims Fail Because ABOG is not a state

actor. ...................................................................................................14

B.     The District Court Properly Dismissed Appellants' Antitrust Claims...32

C.     The District Court Properly Dismissed Appellants' Tortious Interference

Claims.................................................................................................52

CONCLUSION ....................................................................................54

CERTIFICATE OF COMPLIANCE ......................................................55

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*Abraham & Veneklasen Joint Venture v. Am. Quarter Horse Ass'n*, 776 F.3d 321 (5th Cir. 2015) ..............................................................................48, 49

*Adams v. Am. Bar Assoc.*, 400 F. Supp. 219 (E.D. Pa. 1975) ................................42

*Afzal v. Am. Bd. Of Internal Med.*, No. 22-1234, 2022 WL 2447115, 2022 U.S. App. LEXIS 18505, (3d Cir. July 6, 2022) ......................................................17, 21

*Aldabe v. Cornell Univ.*, 296 F. Supp. 3d 367–74 (D. Mass. 2017) ......................42

*Am. Bd. of Internal Med. v. Salas-Rushford, No. 19-1943 (SCC)*, 2021 U.S. Dist. LEXIS 128708 (D.P.R. July 9, 2021, 2021) ...........................................................18

*Am. Bd. Of Internal Med. v. Von Muller*, No. 10-CV-2680, 2011 U.S. Dist. LEXIS 25169 (E.D. Pa. Mar. 10, 2011) ....................................................................*passim*

*Anago, Inc. v. Tecnol Medical Prods.*, 976 F.2d 248 (5th Cir. 1992) ..............33, 39

*Apani Sw., Inc. v. Coca-Cola Enters.*, 300 F.3d 620 (5th Cir. 2002) ....................47

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................14

*Ass'n of Am. Physicians & Surgeons Educ. Found. ("AAPS") v. Am. Bd. of Internal Med.*, 103 F.4th 383 (5th Cir. 2024) ...................................................11, 15

*Ass'n of Am. Physicians & Surgeons., Inc. v. Am. Bd. of Med. Specialties*, 15 F.4th 831 (7th Cir. 2021) ..............................................................................................49

*Austin Legal Video, LLC v. Deposition Sols., LLC, No. 1:23-cv-00421*, 2024 U.S. Dist. LEXIS 128017 (W.D. Tex. July 19, 2024) ....................................................36

*Bailey v. McCann*, 550 F.2d 1016 (5th Cir. 1977) ............................. 19, 21, 22, 23

*Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777 (5th Cir. 2012) ................................14

*Belk v. Chancellor of Wash. Univ.*, 336 F.Supp. 45 (E.D. Mo. 1970) ...................26

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................14, 48

*Blum v. Yaretsky*, 457 U.S. 991 (1982) .................................................20

*BRFHH Shreveport, LLC v. Willis-Knighton Med. Ctr.*, 49 F.4th 520 (5th Cir. 2022) .................................................................................................48

*Bronx Legal Servs. v. Legal Servs.*, No. 02-cv-6199, 2003 U.S. Dist. LEXIS 695 (S.D.N.Y. Jan. 17, 2003) .................................................................41

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) ........32, 33, 37

*Clean Water Opportunities, Inc. v. Willamette Valley Co.*, 759 F. App'x 244 (5th Cir. 2019) ................................................................................51

*Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909 (Tex. 2013) ..53

*Collins v. Dep't of the Treasury*, 83 F.4th 970 (5th Cir. 2023) .............................38

*Corrosion Prevention Techs. LLC v. Hatle*, No. 4:20-CV-2201, 2020 WL 6202690 (S.D. Tex. Oct. 22, 2020) ...............................................................53

*DataCell EHF v. Visa, Inc.*, No. 1:14–CV–1658 GBL/TCB, 2015 U.S. Dist. LEXIS 100494 (E.D. Va. July 30, 2015) ..........................................................42

*David B. Turner Builders, LLC v. Weyerhaeuser Co.*, 603 F. Supp. 3d 459–65 (S.D. Miss. 2022) ............................................................................49

*Doctor's Hosp. v. Se. Med. All.*, 123 F.3d 301 (5th Cir. 1997) ............33, 45, 48, 50

*English v. Perdue*, 777 F. App'x 94 (5th Cir. 2019) .............................................38

*Estates of Coley v. Hillenbrand Indus.*, No. H-07-742, 2007 U.S. Dist. LEXIS 110075 (S.D. Tex. Aug. 27, 2007) ........................................................52

*Ferrer v. Chevron Corp.*, 484 F.3d 776 (5th Cir. 2007) .......................................14

*Fontenot v. McCraw*, 777 F.3d 741 (5th Cir. 2015) .............................................46

*Ford v. Harris County Medical Society*, 535 F. 2d 321 (5th Cir. 1976) ..........22, 23

*Freedom Watch, Inc. v. Judicial Watch, Inc.*, 289 F. Supp. 3d 1270 (S.D. Fla. 2018) ................................................................................................41

*FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447 (1986) .............................................50

*Fulton v. Hecht*, 545 F.2d 540 (5th Cir. 1977) ................................................. 22-23

*Ginzburg v. Memorial Healthcare Sys.*, 993 F. Supp. 998 (S.D. Tex. 1997) ...37, 40

*Goussis v. Kimball*, 813 F. Supp. 352 (E.D. Pa. 1993) ....................................18, 28

*Greenwood Utils. Com v. Miss. Power Co.*, 751 F.2d 1484 (5th Cir. 1985) .........43

*Hondros v. Hewlett Packard Enter., No. H-21-1982*, 2021 U.S. Dist. LEXIS 211360 (S.D. Tex. Nov. 2, 2021) ...................................................... 14-15

*HTI Health Servs. v. Quorum Health Grp.*, 960 F. Supp. 1104 (S.D. Miss. 1997) 33

*Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417 (5th Cir. 2001) .................................34

*In re Pool Prods. Distrb. Mkt. Antitrust Litig.*, 940 F. Supp. 2d 367 (E.D. La. 2013) ......................................................................................................................51

*Jallali v. Nat'l Bd. of Osteopathic Med. Examiners, Inc., No. 12–60548–CIV*, 2012 U.S. Dist. LEXIS 107999 (S.D. Fla. Aug. 2, 2012) ......................................... 21-22

*Jebaco Inc. v. Harrah's Operating Co. Inc.*, 587 F.3d 314 (5th Cir. 2009) .....33, 37

*Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Inv's Servs. Inc.*, 175 F.3d 848, 860 (10th Cir. 1999)........................................................................................................44

*Jihui Zhang v. Fed'n of State Med. Bds., No. 1:11CV129*, 2011 WL 7154507 2011 U.S. Dist. LEXIS 152911 (M.D.N.C. Dec. 29, 2011), *aff'd*, 473 F. App'x 196 (4th Cir. 2012) ....................................................................................................17

*Johnson v. Comm'n on Presidential Debates*, 869 F.3d 976 (D.C. Cir. 2017) 37, 42

*Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802 (2019) ....................15, 16

*Massachusetts School of Law at Andover v. ABA*, 937 F. Supp. 435 (E.D. Pa. 1996) ................................................................................................................44, 45

*Mattei v. Int'l Conf. of Funeral Serv. Examining Bds., No. 1–15–CV–139 RP*, 2015 U.S. Dist. LEXIS 116009 (W.D. Tex. Sept. 1, 2015) ............................................18

*McGowan & Co., Inc. v. Bogan*, 93 F.Supp.3d 624 (S.D. Tex. 2015) ..................52

*Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752 (1984) ...........................49

*Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743 (5th Cir. 2001) .....................15

*Munsif v. Cassel*, 331 F. App'x 954 (3d Cir. 2009) ...............................................18

*National Society of Professional Engineers v. United States* ("*NSPE*"), 435 U.S. 679 (1978) .......................................................................40, 41

*New Orleans Ass'n of Cemetery Tour Guides & Co. v. New Orleans Archdiocesan Cemeteries*, 56 F.4th 1026 (5th Cir. 2023) ...........................................47

*Oxford Glob. Res., Inc. v. Weekley-Cessnun, No. 3:04-CV-0330-N*, 2004 U.S. Dist. LEXIS 32186 (N.D. Tex. Nov. 12, 2004) ...............................................51

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438 (2009) ...................43

*Parker & Parsley Petrol. Co. v. Dresser Indus.*, 972 F.2d 580 (5th Cir. 1992) ....53

*Pendrell v. Chatham College*, 370 F.Supp. 494, n.8 (W.D. Pa. 1974) ...................26

*Pruneyard Shopping Center v. Robins*, 447 U.S. 74 (1980) .................................26

*PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412–18 (5th Cir. 2010) ...............................................................................................47

*Pulse Network, L.L.C. v. Visa, Inc.*, 30 F.4th 480 (5th Cir. 2022) .......32, 33, 34, 38

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001) .......................................14

*Retractable Techs., Inc. v. Becton Dickinson & Co.*, 842 F.3d 883 (5th Cir. 2016) ........................................................................................... 43-44

*Richard v. Hoechst Celanese Chem. Grp.*, 355 F.3d 345 (5th Cir. 2003) ..16, 23, 31

*Sanjuan v. Am. Bd. of Psychiatry & Neurology*, 40 F.3d 247 (7th Cir. 1994) .17, 21

*Shah v. VHS San Antonio, L.L.C.*, 985 F.3d 450–54 (5th Cir. 2021) .........39, 46, 47

*Sims v. Jefferson Downs Racing Ass'n*, 778 F.2d 1068 (5th Cir. 1985) .....23, 24, 25

*Stearns Airport Equip. Co. v. FMC Corp.,* 170 F.3d 518 (5th Cir. 1999)..............51

*Taylor Publ'g Co. v. Jostens Inc.*, 216 F.3d 465 (5th Cir. 2000) ...........................51

*Transource International, Inc. v. Trinity Industries, Inc.,* 725 F.2d 274, 280 (5th Cir. 1984) ............................................................................................46

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ...............................................46

*United States v. Colgate & Co.*, 250 U.S. 300 (1919)............................................43

*Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004) ...........................................................................................43

*Waggoner v. Denbury Onshore, L.L.C.*, 612 F. App'x 734 (5th Cir. 2015) ..........34

*Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711 (Tex. 2001) ..............................52

*White v. Scrivner Corp.*, 594 F.2d 140 (5th Cir. 1979) ....................................16, 21

*Whitney v. California*, 274 U.S. 357 (1927) ..........................................................32

**Statutes**

15 U.S.C. §§ 1, 2 ..........................................................................................*passim*

28 U.S.C. § 1291 ....................................................................................................1

TEX. CIV. PRAC. & REM. CODE § 74.401 ...................................................................4

TEX. OCC. CODE §155.002 ......................................................................................39

**Rules**

TEX. R. CIV. P. RULE 12(b) ............................................................................. 10, 14

**Other**

U.S. CONST. AMEND. I ..........................................................................................15

# JURISDICTIONAL STATEMENT

ABOG agrees that this Court has jurisdiction pursuant to 28 U.S.C. § 1291 to review the final judgment. However, as discussed below, the District Court properly dismissed this case for lack of subject matter jurisdiction.

# STATEMENT OF THE ISSUES

1.    Whether the District Court correctly held that ABOG—a private medical certification organization, which administers its own voluntary certification program that is not required for the licensed practice of medicine in any state—is not a state actor and not performing a public function, and therefore is not subject to liability under the First Amendment when it makes public comments about its certification requirements. (Response to Appellants' Issue No. 1 & 2.)

2.    Whether the District Court correctly held that Appellants failed to plead antitrust injury because, among other reasons, they failed to allege harm to competition in a properly defined relevant market. (Response to Appellants' Issue No. 3.)

3.    Whether the District Court's dismissal of the antitrust claims should be affirmed for additional reasons fully briefed in the District Court, including that Appellants failed to plead facts to support claims under Section 1 or Section 2 of the Sherman Act. (Response to Appellants' Issue No. 3.)

# STATEMENT OF THE CASE

## I.    Introduction

Appellant the Association of American Physicians and Surgeons Educational Foundation ("AAPS") is a private organization that hosts medical educational conferences.  AAPS and a group of three physicians (together, "Appellants") sued several private medical boards, Appellees American Board of Obstetrics and Gynecology ("ABOG"), American Board of Internal Medicine ("ABIM"), and American Board of Family Medicine ("ABFM") (collectively, "the Board Defendants").  Appellants sued because Appellants disagreed with the Board Defendants' voluntary standards for professionalism, claiming they violated the First Amendment, the Sherman Act, and Texas law on tortious interference with contract.

Appellants' allegations against ABOG center on two statements ABOG released related to its standards for professionalism and the obligation to avoid disseminating false information.  The statements were directed to physicians who choose to maintain ABOG certification, a group that does not include any of the individual Appellants here.  ABOG is not alleged to have disciplined any of the Appellants or any other physician Appellants identified for expressing political or moral views with which ABOG allegedly disagrees.

No Appellant is a competitor, consumer, or participant in any market in which ABOG operates. Neither AAPS nor any individual Appellant is subject to any of ABOG's standards. None has ever held, or even sought, ABOG certification.

The District Court properly dismissed all of Appellants' First Amendment, tortious interference, and antitrust claims. The First Amendment prohibits government censorship. ABOG, however, is a private actor providing voluntary certification. It is not a state actor and performs no function that is exclusively reserved to the state. Appellants contend that ABOG should be treated as a state actor because third parties, or the state medical boards that actually issue licenses and regulate the practice of medicine place value on board certification. But ABOG certification—unlike a state licensure—is not required to practice medicine, and legal precedent decisively holds that the importance of a private actor's certification to licensure or to practice does not transform the private actor into a state actor.

The District Court likewise properly dismissed Appellants' antitrust claims because Appellants cannot show an antitrust injury, which is required to state a claim under the Sherman Act. Appellants also cannot state the essential elements of either a Section 1 or Section 2 claim under the Sherman Act. Nor do Appellants plead the essential elements of their tortious interference claims.

3

In short, no claim can be stated against ABOG on the facts Appellants have pleaded, namely, that ABOG spoke openly about its professionalism standards, which ABOG has the right to do.

## II.    Background

### A. ABOG Offers Board Certifications to Physicians in the Specialty of Obstetrics and Gynecology.

ABOG is a private, apolitical, non-profit, and voluntary certification organization. ROA.686. It establishes uniform standards and certifies physicians in the specialty of obstetrics and gynecology who meet certain educational and professionalism requirements. *See id*. Physicians certified by ABOG are called "Diplomates."

ABOG certification is voluntary. It is not required to practice medicine in any state. As Appellants acknowledge, "only official state medical boards have the proper authority to regulate the practice of medicine." ROA.682. Some states, such as California, Florida, and Texas, have requirements that a doctor who holds himself out as "Board Certified" must truly hold a certification from an American Board of Medical Specialists member board like ABOG. Some states, like Texas, include Board Certification as one of a number of relevant datapoints in weighing qualifications to testify as an expert. TEX. CIV. PRAC. & REM. CODE § 74.401(c)(1). Nonetheless, ABOG certification is not a prerequisite to practicing medicine or to

testifying as an expert in medicine, and ABOG has no role in determining who is licensed to practice medicine in any state.

State licensing boards alone determine the fitness of physicians to practice medicine, and they do so independently of ABOG or any Board Defendant. ROA.682. The legislatures and trial courts in a state determine what is and is not relevant in expert witness contexts. And hospitals and insurance companies make their own independent decisions about qualifications for privileges, credentialing, and coverage. The Board Defendants do not control or direct the significance any other entities may attribute to board certification.[1]

Appellants do not allege that ABOG controls or participates in the decisions of the other Board Defendants or of the United States Department of Homeland Security ("DHS"), any medical board, licensing authority, or any other governmental entity. The only government connection alleged against ABOG was the exchange between a congressman and witness who did not work for ABOG.

## B. ABOG Does Not Require Its Diplomates to Hold Certain Views, but to Comply with Ethics and Professionalism Standards.

ABOG is not a political organization. ABOG is fully committed to the protection of all American freedoms, especially—and explicitly—the freedom of

---

[1] Appellants also sued the Secretary of DHS based in part on DHS's creation of a Disinformation Governance Board and other government activities. They do not allege that ABOG had any involvement whatsoever in those activities, but rather, that the Board Defendants generally were "aware" of, and sought to follow, partisan positions taken by federal agency officials. ROA.528.

5

speech. In fact, in one of the two statements forming the basis of Appellants' allegations against ABOG, ABOG emphasized that **"[f]ree speech is a right in our country, and medical providers may practice according to their conscience and religious, moral, and ethical values. Diplomates are not required to provide services that conflict with these values."**[2]

What ABOG does require of its Diplomates is professionalism and honesty. ABOG is a voluntary organization with a specific medical mission: to define standards, certify obstetricians and gynecologists, and facilitate continuous learning to advance knowledge, practice, and professionalism in women's health. It can and should require that its Diplomates maintain the highest scientific and factual standards when they publicly discuss medical information related to their ABOG certification. *See id.* (opinions "should reflect the specialty's commitment to scientific and clinical excellence and to the needs of our patients"). Physicians who obtain and maintain ABOG certification or hold themselves out as Diplomates agree to comply with these standards.

The only factual allegations against ABOG in the Amended Complaint concern two public statements ABOG made on July 7, 2022, and September 27,

---

[2]    *See* https://web.archive.org/web/20230701094545/https://www.abog.org/about-abog/news-announcements/2022/07/07/statement-regarding-misinformation-and-disinformation-and-medical-professionalism (accessed January 11, 2026). Appellees cited this release in their Amended Complaint. ROA.696, 720.

2021.[3] These statements merely provide that ABOG's standards for its Diplomates include behaving professionally and not intentionally providing false information. *See* ROA.696 (complaining ABOG stated it may take action against physicians for not "behaving professionally with patients, families, and colleagues across health professions," or providing "false or misleading information"). The statements do not espouse any political position. And ABOG has never threatened to censor or decertify anyone on the basis of their values, politics, or opinions on any particular issue (including abortion).

Appellants also rely on a generalized comment that a witness—who was neither a representative nor agent of ABOG—made at a congressional hearing, that spreading false information could result in loss of board certification.[4] ROA.696, 709, 720. While Appellants point to this as a viewpoint-based threat (though not one made by ABOG), the actual exchange did not threaten discipline based on anyone's viewpoints, for example on abortion. Rather, it concerned allegedly false

---

[3]  *See*  https://web.archive.org/web/20230701094545/https://www.abog.org/about-abog/news-announcements/2022/07/07/statement-regarding-misinformation-and-disinformation-and-medical-professionalism  (accessed  January  11,  2026); https://web.archive.org/web/20230701100229/https://www.abog.org/about-abog/news-announcements/2021/09/27/statement-regarding-dissemination-of-covid-19-misinformation (accessed January 11, 2026); ROA.696, 720.

[4] *See* https://www.businessinsider.com/abortion-doctor-moayedi-ingrid-skop-obgyn-oversight-hearing-video-2021-9 (accessed January 11, 2026).

statements about the collection and maintenance of data about outcomes.[5] ROA.709.  ABOG did not participate in this exchange, nor make or approve the alleged statement from the congressional hearing.

These allegations fail to claim that ABOG has threatened to strip, or actually stripped, certification from any Diplomate based on the Diplomate's expressed opinion on any issue.  There is nothing more than conjecture that ABOG would do so.  On the contrary, one of the two ABOG statements identified in the Amended Complaint expressly states that ABOG will *not* take adverse action based on a Diplomate's views on moral or political issues.[6]

## C. Appellants seek to punish free speech.

In contrast to ABOG, Appellants are seeking to impose liability on a private actor for its speech.  Appellants suggest ABOG should be liable because ABOG has supposedly expressed the "wrong" viewpoints, e.g., by allegedly referring to "pregnant people" and "pregnant individuals."  ROA 696.  Appellants also complain that ABOG is "stridently supportive" of access to abortion and that it criticized the *Dobbs* opinion.[7]  ROA 720.  ABOG's expression of its own views does not equate

---

[5] *Id.*

[6]  *See*  https://web.archive.org/web/20230701094545/https://www.abog.org/about-abog/news-announcements/2022/07/07/statement-regarding-misinformation-and-disinformation-and-medical-professionalism (accessed January 11, 2026).

[7] Appellants' brief also cites a statement by ABOG that it would evaluate continuing certification for physicians who had criminal, civil, or licensing actions taken against them for providing

4522258.v1

to viewpoint discrimination. Appellants do not have a cause of action against ABOG based on a disagreement with ABOG, nor because ABOG exercises its own First Amendment rights.

### D. Appellants have not alleged ABOG harmed them by violating any Constitutional rights.

Appellants include AAPS, a non-profit organization that sponsors medical conferences and that promotes its views on medicine online, as well as three individual doctors—none of whom practice (or have ever practiced) in the OB-GYN specialty or have sought certification from ABOG. ROA.683-85. AAPS alleges it "co-sponsors" medical conferences and posts videos of physicians' presentations at those conferences on the internet. ROA.679-80. It sketches out an attenuated theory of harm based on various acts by the Board Defendants (as to some Board Defendants, alleged discipline or decertification; as to ABOG, public statements of professionalism standards only). It argues that doctors who speak at conferences it co-sponsors are less "candid and outspoken," making the conferences less "lively"

---

evidence-based reproductive health care including abortions. Brief of Appellants at 4, n.2; https://web.archive.org/web/20230627150940/https://www.abog.org/about-abog/news-announcements/2023/06/27/dobbs-vs.-jackson-women-s-health-organization-anniversary-statement (accessed January 11, 2026). This is not part of the pleadings or the record below, and thus provides no basis for reversal, but it bears noting that this is the *opposite* of what Appellants complain of—it is an *absence* of discipline. In the statement, ABOG also reiterates: "ABOG standards do not force residents, fellows, or diplomates to perform abortions if they have religious, moral, or ethical objections." Thus, Appellants are targeting ABOG not for anything it has supposedly done to them or to any Diplomates, but rather for expressing opinions with which Appellants disagree.

9

because of fear that the Board Defendants may discipline them for unprofessional behavior. AAPS alleges that this, in turn, will lead to less conference attendance and less internet attention (from which it presumes it will lose revenue).

AAPS does not allege that ABOG (or the other Board Defendants) have directed any action at AAPS.

Appellants also include individual doctors, some of whom allege disciplinary action against them. But none of those disciplinary acts were allegedly taken by ABOG. And none of the individual Appellants are ABOG Diplomates affected by ABOG's standards or acts. Nor has AAPS identified any ABOG Diplomate with which it has any relationship who has been affected by ABOG's acts.

## III.    Procedural History

AAPS sued ABOG and others in July 2022, asserting claims for violating AAPS's freedom of speech and Section 2 of the Sherman Act, and for tortiously interfering with AAPS's business relationships. ROA.15. In September 2022, ABOG and the other Board Defendants moved to dismiss for lack of subject matter jurisdiction and failure to state a claim. ROA.231. The District Court did not permit AAPS to amend its complaint and granted the Board Defendants' motion to dismiss under Rules 12(b)(1) and 12(b)(6). ROA.443.

AAPS appealed. ROA.444. The Fifth Circuit reversed the dismissal of AAPS's First Amendment claims on standing grounds, but declined to address the

10

state action issue to allow the District Court to address it on remand. *Ass'n of Am. Physicians & Surgeons Educ. Found. ("AAPS") v. Am. Bd. of Internal Med.*, 103 F.4th 383 (5th Cir. 2024); ROA.453 et seq. It reversed the denial of an opportunity to replead, vacated the dismissal of the antitrust claims and remanded. *Id.*

On remand, AAPS amended its complaint and asserted First Amendment, tortious interference, and antitrust claims. ROA.679 et seq. It added the individual plaintiffs Pierre Kory, M.D., Paul Marik, M.D. and Karl N. Hanson, M.D. These doctors are not and have not ever been Diplomates of ABOG.

ABOG moved to dismiss the repleaded claims. It argued that Appellants failed to state a First Amendment claim because ABOG is a private entity, not a state actor; that they do not plausibly plead any elements of a state law tortious interference claim; and that they lack antitrust injury and failed to plead the elements of their Sherman Act claims. ROA.887 et seq.

The District Court dismissed, and Appellants appealed to this Court. ROA.1239, 1241.

## SUMMARY OF THE ARGUMENT

Appellants sued ABOG because they disapprove of statements ABOG made. But that disagreement does not support their asserted claims against ABOG.

ABOG cannot be liable under the First Amendment because it is a private entity, not a state actor. Appellants concede ABOG (and the other Board

Defendants) cannot license physicians or regulate the practice of medicine. That power is reserved to the state.

Appellants nevertheless argue that being certified is important to physicians becoming licensed or profitably practicing medicine. But the fact that state licensing boards, as well as hospitals and insurance companies, place value on board certification does not make that certification a "public function" or otherwise subject the Board Defendants to liability under the First Amendment. Even if certain states *required* board certification for a medical license (they do not), ABOG's alleged acts still would not qualify as state action because the states control what requirements to impose for licensure.

Recognizing that board certification is not state action, Appellants try to draw a distinction between certification and decertification. That invented distinction is irrelevant. Even if an entity can be a state actor for some but not all purposes, ABOG is not a state actor with respect to *any* of the complained-of acts. There is no meaningful difference between certifying a physician or decertifying or disciplining them in the state action analysis. The Board Defendants' alleged political motivation (again, an unfounded assertion) does not change that analysis.

Moreover, there are no well-pleaded factual allegations to support Appellants' theory that ABOG restricted any physicians' ability to practice for political reasons, nor that ABOG penalized any Diplomates or prospective Diplomates for their speech

12

or views. The only factual allegations about ABOG's behavior were the two referenced statements, which were permissible and legitimate requirements of professionalism and truthfulness, and not actionable.

Therefore, the District Court did not err in dismissing all of Appellants' First Amendment Claims.

The District Court also correctly dismissed Appellants' antitrust claims because Appellants failed to allege antitrust injury, that is, an injury to "competition" as opposed to an injury to an individual market participant. Because none of the individual Appellants has ever held or sought ABOG certification, Appellants fail to allege even that ABOG injured them in their individual capacities. There are certainly no allegations that ABOG took any action that impaired competition in any properly defined relevant market; in fact, Appellants and ABOG are not participants in the same alleged markets. Additionally, dismissal was proper in the alternative based on multiple fully-briefed other grounds, including that the Amended Complaint failed to allege necessary facts to state a claim under either Section 1 or Section 2 of the Sherman Act.

Finally, the District Court properly dismissed Appellants' tortious interference claims because they did not plead any "unlawful actions taken without justification or excuse," did not plead intent to harm, actual damages, and malice,

and did not plead facts showing a reasonable probably they would have entered into a business relationship but for ABOG's actions.

The District Court's dismissal should be affirmed in all respects.

# ARGUMENT

## I.    Standard of Review

This Court reviews the grant of a motion to dismiss under Rule 12(b)(6) *de novo*. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  This Court may "affirm on any ground supported by the record, including one not reached by the district court." *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012).

A plaintiff's claims are subject to dismissal under Rule 12(b)(6) for failure to state a claim unless he has pleaded facts sufficient to state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

## II.    Argument

### A. Appellants' First Amendment Claims Fail Because ABOG is not a state actor.

There is no colorable First Amendment claim against ABOG because the conduct Appellants challenge—making public statements about professionalism— is not state action.  *See Hondros v. Hewlett Packard Enter.*, No. H-21-1982, 2021

U.S. Dist. LEXIS 211360, at *7 (S.D. Tex. Nov. 2, 2021) (dismissing First Amendment claim with "no allegations of state action as needed to plead a constitutional violation").

The First Amendment "prohibits only governmental abridgement of speech." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 812 (2019) ("[A] private entity is not ordinarily constrained by the First Amendment because the private entity is not a state actor."). As this Court has recognized in this case: "[w]hile the government cannot abridge free speech, U.S. Const. amend. I, private parties typically bear no such burden." *AAPS*, 103 F.4th at 393 (5th Cir. 2024).

 "For a plaintiff to state a viable [constitutional] claim . . . against any private defendant, the conduct that forms the basis of the claimed constitutional deprivation must constitute state action under color of law." *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 747 (5th Cir. 2001). Here, the only conduct by ABOG identified in the Amended Complaint are two public statements concerning ABOG's professionalism standards. That private conduct, as a matter of law, is not state action.

This Court has identified three circumstances in which private conduct can be considered state action for purposes of susceptibility to a constitutional claim: (1) when "a private entity . . . performs a function which is exclusively reserved to the state" (the public functions test); (2) when the government "has exercised coercive

15

power or has provided such significant encouragement, either overt or covert, that the [challenged conduct] must in law be deemed that of the State" (the state coercion test); and (3) when the government "has so far insinuated itself into a position of interdependence with the private actor that it was a joint participant in the enterprise" (the joint action test). *Richard v. Hoechst Celanese Chem. Grp.*, 355 F.3d 345, 352 (5th Cir. 2003).

Appellants argue only the public functions test. Brief of Appellant at 32-42. Under that test, "[i]t is not enough that the federal, state, or local government exercised the function in the past, or still does," or "that the function serves the public good or the public interest in some way. . . . the government must have traditionally *and* exclusively performed the function." *Halleck*, 587 U.S. at 809 (emphasis in original). There are "very few activities" that qualify as "exclusively reserved to the state" for purposes of this test. *White v. Scrivner Corp.*, 594 F.2d 140, 142 (5th Cir. 1979). ABOG is not alleged to have performed any function that the government has traditionally and exclusively performed. The factual allegations pleaded against ABOG boil down to two public statements of professionalism requirements. Articulation of professionalism requirements by a private, voluntary board is plainly not a function exclusively reserved to the state.

Moreover, no factual allegations support Appellants' assertion that ABOG's certification or disciplinary decisions are the same as medical board licensing. They are not.

As Appellants concede, licensure to practice medicine is exclusively the province of state medical licensing boards, and ABOG does not provide nor deny that licensure. ABOG does not regulate medicine by offering its voluntary certification programs and is not empowered to license doctors. Employers and others, including state medical boards, are free to accord as much or as little weight to ABOG's decisions as they see fit. Courts have uniformly rejected the contention that private organizations like ABOG, which administer professional certifications, are state actors.[8] *See, e.g. Afzal v. Am. Bd. Of Internal Med.,* No. 22-1234, 2022 WL 2447115, 2022 U.S. App. LEXIS 18505, at *3-4 (3d Cir. July 6, 2022) (holding allegation that some states require board certification as one component in licensing scheme insufficient to plead state action); *Sanjuan v. Am. Bd. of Psychiatry & Neurology,* 40 F.3d 247, 250 (7th Cir. 1994) (holding board certification being a prerequisite for public positions does not convert the board into a state actor);[9]

---

[8] For example, the Federation of State Medical Boards has successfully challenged the argument that it is a state actor in multiple cases. *Jihui Zhang v. Fed'n of State Med. Bds.,* No. 1:11CV129, 2011 WL 7154507, at *3; 2011 U.S. Dist. LEXIS 152911 (M.D.N.C. Dec. 29, 2011), *aff'd,* 473 F. App'x 193 (4th Cir. 2012)).

[9] *Sanjuan* is not distinguishable based on the type of specialty; even were the Court to take at face value Appellants' assertions that gynecologists need certification more than psychiatrists, that is just an argument that there is more importance for gynecologists—when the cases say the importance is not the relevant issue. Rather, the issue is whether the board performed a function

17

*Mattei v. Int'l Conf. of Funeral Serv. Examining Bds.*, No. 1–15–CV–139 RP, 2015 U.S. Dist. LEXIS 116009, at \*8 (W.D. Tex. Sept. 1, 2015) ("Federal courts have consistently held that private entities administering examinations relied upon by the state do not qualify . . . as state actors.").[10]

### 1. The importance of board certification or discipline does not convert it into state action.

Even though Appellants acknowledge that ABOG and the other Board Defendants are not state actors when they offer certification, they argue the Board Defendants could *become* state actors by disciplining or decertifying physicians. Brief of Appellants at 34-35. According to this argument, because discipline or decertification could affect a physician's ability to practice, it is necessarily a public function. *Id.*

The authorities show otherwise. The fact that a private entity's act may cause some practical restriction on a physician's ability to practice medicine is not the test.

---

exclusively reserved to the state. *Id.* at 250.

[10] Many other cases have also held that medical certification entities are not state actors, even when actual state actors relied on such certification for their own decisions. *See, e.g., Munsif v. Cassel*, 331 F. App'x 954, 959 (3d Cir. 2009) (dismissing § 1983 claim against ABIM officers because they and ABIM do not act under color of state law); *Am. Bd. of Internal Med. v. Salas-Rushford*, No. 19-1943 (SCC), 2021 U.S. Dist. LEXIS 128708, at \*32 (D.P.R. July 9, 2021, 2021) ("ABIM and the ABIM Individuals are not state-actors"); *Goussis v. Kimball*, 813 F. Supp. 352, 357 (E.D. Pa. 1993) (holding that ABIM is not a state actor).

4522258.v1

As the District Court here correctly held, the significance or importance of private-entity licensure does not alone convert the decision into state action. *See Bailey v. McCann*, 550 F.2d 1016, 1019 (5th Cir. 1977).

Similar cases applying the public function test examined similar allegations and expressly found that ABIM, a private medical board like ABOG, was not a state actor when it revoked a Diplomate's certification when she violated its "Pledge of Honesty" by copying and disseminating its protected exam questions. *See Am. Bd. Of Internal Med. v. Von Muller*, No. 10-CV-2680, 2011 U.S. Dist. LEXIS 25169, at *7-10, 2011 WL 857337 (E.D. Pa. Mar. 10, 2011), *aff'd* 540 F.App'x 103 (3d Cir. Sept. 12, 2013) (acknowledging the importance of board certification but dismissing constitutional claims because board was not state actor: "the evaluation and accreditation of medical education in this country is neither a traditional nor an exclusive state function."). The allegations in *Von Muller* concerning the impact of decertification mirror those here. As here, the plaintiff argued that: (i) certification conferred many benefits on doctors; (ii) hospitals require it to grant admitting privileges; (iii) many insurers or health plans require it for coverage; (iv) that certified physicians are often more highly compensated; and (iv) the board had a virtual monopoly on certification. *Id*. at *9-10.[11] None of these allegations, even

---

[11] In *ABIM*, also as here, the plaintiff acknowledged board certification is not required for a doctor to practice medicine. *Id*. at *10.

taken as true, satisfied the public function test. *Id*. at *7-10.; *cf. also Blum v. Yaretsky*, 457 U.S. 991, 1008 (1982) (holding that decisions by private physicians to discharge Medicaid patients from nursing homes did not qualify as state action because the "decisions ultimately turn[ed] on medical judgments made by private parties according to professional standards that are not established by the State").

### 2. Incorporation of board certification into licensure would not constitute state action.

Appellants rely heavily on the fact that the Interstate Medical Licensure Compact ("IMLC") permits expedited multistate licensing for physicians who, among other qualifications (like licensure in the initial state), are board certified. This is not the applicable test, and it is wrong. The IMLC permits a shortcut for physicians licensed in one state to have their licenses recognized in another without going through the entire process for licensing in each.[12] To qualify for that shortcut, among other requirements, a physician must have an employer in the state of principal license, have graduated from an accredited or listed international medical school, and not be currently under any investigation.[13] Board certification is one

---

[12] "The Interstate Medical Licensure Compact is an agreement among participating U.S. states and territories to work together to significantly streamline the licensing process for physicians who want to practice in multiple states. It offers a voluntary, expedited pathway to licensure for physicians who qualify." https://imlcc.com/a-faster-pathway-to-physician-licensure/ (accessed December 30, 2025).

[13] *See id.*

4522258.v1

component. *Compare Afzal,* 2022 U.S. App. LEXIS 18505, at *3-4. (holding that allegation that some states require board certification as one component in a broader licensing scheme was insufficient to plead state action).

If any of these requirements (or others) are not met, that doesn't mean a doctor cannot practice medicine in the state; it just means the doctor must seek licensure through the traditional process instead of the shortcut. And the fact that board certification is one component of the IMLC shortcut does not transform certifying organizations into state actors any more than the other requirements convert the applicant's employer, medical school, and investigators into state actors.

But even if the IMLC, or a state medical board, chose to *require* board certification for licensure, that decision still would not render the board's decision state action. Courts have held that the state alone is responsible for its decisions regarding what to require for licensure. *Bailey,* 550 F.2d at 1019; *see also Sanjuan,* 40 F.3d at 250 (holding board certification being a prerequisite for public positions does not convert the board into a state actor, and public belief in reliability of board's decisions does not bestow governmental power);[14] *see also Jallali v. Nat'l Bd. of*

---

[14]Alleged public portrayal in a single news report does not qualify the Board Defendants generally or ABOG specifically as state actors under the public functions test, as AAPS suggests on page 37 of its brief. A headline writer's offhand use of the term "regulators" to refer collectively to what the body of the article describes "as a specialty board and a state medical board" has no bearing on whether, as a matter of fact or law, the Board Defendants' certification activities fall within the "very few activities" that qualify as "exclusively reserved to the state" for purposes of the public functions test. *White,* 594 F.2d at 142.

*Osteopathic Med. Examiners, Inc.*, No. 12–60548–CIV, 2012 U.S. Dist. LEXIS 107999, at *12-14 (S.D. Fla. Aug. 2, 2012) (holding private boards' action is not sufficient to show state action even when they are actually necessary for state licensure).

The private entity in *Bailey*, like ABOG here, had no power to issue licenses that permitted one to work in the state. 550 F.2d at 1019. There, the state took its own unilateral action and adopted the private board standards as part of its own regulatory scheme, but that did not turn the private entity's action into state action. *Id.* (observing that the state could at any time choose to do otherwise and adopt different standards). *Bailey* involved horse racing, but it analyzed and followed similar cases addressing private entity approvals in various professions. It reasoned that some states' requirement that bar applicants graduate from an accredited law school does not turn private law schools into public actors subject to all the restrictions applicable to government entities. *Id.* It relied on *Ford v. Harris County Medical Society*, 535 F. 2d 321 (5th Cir. 1976), which held that a medical association was not a state actor because "the defendant association had no power to issue the licenses which permit one to practice medicine in the State, and was not delegated such authority." *Id.* Even where a private entity's refusal "effectively precluded the plaintiff from engaging" in an activity heavily supervised by the state, that did not constitute public action. *Id.* (citing *Fulton v. Hecht*, 545 F.2d 540 (5th Cir. 1977)

22

(declining to find state action where greyhound racing club refused to renew breeder's contract permitting him to do business)).

Although *Bailey* does not use the term, "public function test," it does analyze many different types of regulated activities, to determine whether a private entity performs a function which is exclusively reserved to the state, *i.e.*, the public function test. *Richard*, 355 F.3d at 352. *Bailey* examined whether the various private actors were performing a function exclusively reserved to the state. In each instance, as here, the license or certification was alleged to be critical to the plaintiff's ability to participate. And in each instance, the courts held that doing so—what Appellants call "restricting the ability to practice"—does *not* constitute performing a function reserved to the state. *Bailey*, 550 F.2d at 1019 (even where the state expressly prohibited all participation without private entity license, that was insufficient to find state action).

Appellants' cited case, *Sims v. Jefferson Downs Racing Ass'n*, 778 F.2d 1068 (5th Cir. 1985), supports ABOG's position, not Appellants'. There, a horse trainer made negative public statements about a race track, and its manager issued a "rejection letter" barring him from the premises on August 23, 1975.[15] *Id*. at 1071. The track also asked the Louisiana Racing Commission to penalize him, and the

---

[15] As the Court there emphasized: "Dates are important." *Id*. at 1071.

Commission negotiated a "gentleman's agreement" between Sims and the track, which had the force of a Commission order. *Id*. at 1077. The "gentleman's agreement" was from August 28 through November 8. After that "gentleman's agreement" expired, the track asserted its prior "rejection letter," barred Sims from the track, and asked for state officials called "stewards"[16] to deny him all privileges. *Id*. at 1079. They did, based on the rejection letter, not based on an independent determination Sims should be evicted under Commission rules. *Id.* at 1079. On March 22, 1976, he was ejected pursuant to an allegation that he was in violation of the August 23, 1975 rejection letter.

*Sims* did *not* hold that prevention of plaintiff's use of his license constituted state action. On the contrary, the Court examined all the allegations and held that there was state action *when state officials were directly involved*. That is, there was no state action in the August 23 "rejection letter." *Id*. at 1077. Actions taken pursuant to the "gentlemen's agreement," which was created by the Commission, a state actor, did constitute state action. *Id.* at 1077. The March 22 eviction, even if wrongful, was not state action because "neither the Commission nor the stewards participated in the March 22 eviction. When racing officials are not involved in a

---

[16] "The Commission is, quite clearly, an arm of the state, and any actions taken directly by the Commission itself constitutes state action . . . . Although the stewards are paid by the race track, they are 'state officials.'" *Sims,* 778 F.2d at 1076.

private decision to exclude a licensed trainer from a track, that exclusion does not amount to state action." *Id*. at 1078. And the stewards' rulings based solely on the rejection letter *were* state action, because the track "both solicited and was granted this improper use of state power." *Id*. at 1079. Thus, the remand Appellants point to is not applicable here: it was to determine whether *the stewards' rulings* were issued as a direct result of protected First Amendment activity. *Id*. at 1080. *Only* the acts in which state officials were involved constituted state action.

Here, there is no request by ABOG for intervention by any state entity, nor any restriction by ABOG of any physician using their license. But even if there were, under the rule articulated by *Sims*, this would not constitute state action. It is not the *effect* (making it harder for a licensee to use the license) that determines state action. Rather, because there is no participation by any state officials, there are no First Amendment claims. *See id*. at 1078.

These cases discussing incorporation of certification into a licensing requirement are even stronger examples of what Appellants argue is "*de facto*"[17] state regulation. And they hold it is insufficient.

The cases Appellants cite, *Pruneyard* and *Belk*, cannot save their argument. *See Pruneyard Shopping Center v. Robins*, 447 U.S. 74, 80-81 (1980) (holding that

---

[17] Or allegations that certification is so important it is "virtual" or "tantamount to" actual state regulation.

California could *by statute* require a privately owned shopping mall to accommodate peaceful speech, but acknowledging that, in the absence of that statute, the Constitution did *not* prevent the owner from excluding citizens exercising speech rights); *Belk v. Chancellor of Wash. Univ.*, 336 F.Supp. 45, 48 (E.D. Mo. 1970) (finding that state action could be alleged against a state-chartered university and its Chancellor because "[e]ducation is a public function" but not applying any discernible test).[18]

### 3. Initial certification is no different than discipline in the state action analysis.

Courts do not analyze certification differently from discipline or decertification. Neither is a function exclusively reserved for the government. And there is no rationale to justify different treatment on this basis. It is the Diplomate status, or lack thereof, that Appellants claim restricts a physician's general ability to practice medicine, which is what Appellants (incorrectly) offer as the test for state action. That status or lack of status would be equally important to obtain or maintain.

The authorities do not in any way turn on whether the certification was the initial qualification or later maintenance of status; this is not a distinction *Sanjuan* or any other known case makes. On the contrary, in *Von Muller*, the complained-of

---

[18] *Belk* was distinguished by *Pendrell v. Chatham College*, 370 F.Supp. 494, 497, n.8 (W.D. Pa. 1974) ("Without an appropriate standard which would enable us to distinguish between those activities which constitute state action and those which do not, the Court would be proceeding blindly and arbitrarily in making a decision.").

conduct that the court held was not state action was suspension and revocation of a license that the plaintiff claimed she had already earned through on her test scores. 2011 U.S. Dist. LEXIS 25169, at *5-8.

Also, as to ABOG the distinction makes no sense as a practical matter: ABOG certifications expire and are renewed regularly, so ABOG re-certifies Diplomates periodically based on a range of requirements, which are reviewed and revised based on advancements and changes in the specialty.[19] Additionally, for ABOG, as for ABIM in the *Von Muller* case, even the initial certification is based on qualifications in addition to its multiple choice test, including an oral exam and considerations of character and judgment, and requires routine yearly assessments.[20]

Thus, whether focusing on certification or decertification, Appellants fail to allege ABOG is performing any function exclusively reserved for the government.

---

[19] *See* https://www.abog.org/continuing-certification/time-limitations#:~:text=Certification%20by%20ABOG%20and%20participation,of%20the%202025%20CC%20requirements (accessed December 29, 2025).

[20] *See* https://www.abog.org/resources/faqs/frequently-asked-questions-about-board-certification (accessed January 11, 2026).

### 4. The Boards' alleged political motivation does not convert private decisions to state action.

Appellants spend significant time arguing that the Board Defendants have adopted "new roles" that are outside their "traditional lane" or their "proverbial lane." Brief of Appellants at 39. This, of course, is not the test for state action. Appellants cannot distinguish the legion of cases that establish that no matter how important maintaining—not just obtaining—Diplomate status is, that importance does not convert it to state action. And as *Von Muller* shows, this argument is not factually supported. The Board Defendants have traditionally held their Diplomates to standards of honesty and have disciplined and decertified them—and litigated over those acts; they were not simply test administrators who suddenly began to insert irrelevant requirements. *Von Muller*, No. 2011 U.S. Dist. LEXIS 25169 at *2-9 (holding that board who suspended and revoked board certification of physician—who qualified based on exam results but violated board's policies by selling protected certification exam questions—was not state actor).

Appellants misleadingly quote language from *Von Muller* that is actually lifted from *Von Muller*'s quote from another case, *Goussis v. Kimball*, 813 F.Supp. 352 (E.D. Pa. 1993). But neither case held ABIM could only grade a test. On the contrary, *Von Muller*, like *Goussis* before it, was distinguishing private board certification from state licensing. *Goussis* held that an entity that merely certifies, and does not license, is not a state actor, and *Von Muller* (a case expressly about

28

suspension and revocation, not tests) held "we cannot substantively distinguish the pleading in this matter from the complaint in *Goussis*." *Von Muller*, 2011 U.S. Dist. LEXIS 25169 at *11. This type of management and supervision was always within the Board Defendants' "lanes" and it changes nothing about the public function analysis.

To avoid this, Appellants argue instead that the Board Defendants' decisions are based on political ideology. This is, of course, untrue. And is not supported by any well-pleaded allegations, as discussed below. Appellants do no more than assume disagreement based on attenuated inferences and theories. But political disagreement, even if it did exist, could not create state action nor give rise to any cause of action against the Board Defendants. The purported motivations for an act do not convert it to state action when there is no public function performed, and Appellants cite no authority supporting their position.

### 5. No factual allegations support Appellants' theory that ABOG restricted Diplomates' ability to practice for political beliefs.

In addition to the fact that this is not the test, there are no well-pleaded allegations to support Appellants' theory. Appellants allege only three acts related to ABOG: the public statement of July 7, 2022, the public statement of September 27, 2021, and an exchange between a congressman and witness, neither of whom spoke for ABOG. ROA 696, 709. But no Appellant has held or even sought ABOG certification. No Appellant has ever been disciplined by ABOG or had their

certification terminated. None of the Appellants has alleged any act by ABOG that restricted anyone's general ability to practice medicine.

The very statements Appellants complain of contradict Appellants' claims. In them ABOG stated: "[f]ree speech is a right in our country, and medical providers may practice according to their conscience and religious, moral, and ethical values. Diplomates are not required to provide services that conflict with these values."[21] ABOG has Diplomates from all political and belief systems. It does not have an ideology or political requirements.

The standards require truthfulness only. A physician whose spiritual or moral beliefs prohibit certain practices is no less well-qualified to be a Diplomate than others, and ABOG includes and values all such physicians. In contrast, a physician who is dishonest about data and factual matters is not qualified or reliable, and may even be a danger to patients, and ABOG should not be forced to remain in association with, nor have its own speech censored as to such physicians or matters. This is not a viewpoint-based restriction.[22]

---

[21] *See* https://web.archive.org/web/20230701094545/https://www.abog.org/about-abog/news-announcements/2022/07/07/statement-regarding-misinformation-and-disinformation-and-medical-professionalism (accessed January 11, 2026).

[22] Moreover, the exchange at the Congressional hearing does not properly plead any such issue against ABOG, because ABOG was not involved. And the challenged statement was not a statement of pro-life belief, but a statement about whether data was collected. No Appellant alleges that ABOG disciplined, or even threatened, a Diplomate based on this exchange.

4522258.v1

### 6. The public nature of ABOG's communications is not relevant to state action test, and is protected speech by ABOG.

The public functions test concerns functions that are exclusively reserved to the state, not whether the functions are publicized as opposed to private in character. *Richard*, 355 F.3d at 352.   Curiously, Appellants argue that ABOG's alleged statements were made in "an unnecessarily public manner" and "generated publicity."  Brief of Appellants at 35.  They suggest it would be better for ABOG to have "purely private communications with physicians" rather than posting its statements on its website.   *Id*.   Appellants offer no explanation why secret communications would, as a matter of law, be less like the disciplinary decisions an actual state actor might undertake, nor why openly publishing ABOG's professionalism standards via its website is in some way prohibited.   It is not. ABOG's mission of setting standards to certifying physicians to ensure and improve women's health should be transparent to the public.

This argument reveals the gravamen of Appellants' complaint: Appellants object to ABOG's exercise of its own First Amendment rights to speech.  ROA 696. ABOG is a private actor with the right to its own speech.  Appellants are asking the courts to penalize its speech, based on an attenuated and hypothetical theory—that the use of terms like "pregnant individuals," alone, implies an opinion, and that opinion in turn is somehow tantamount to disciplinary action.  But Appellants present no pleadings outlining even the barest factual allegations about any such

discipline having occurred. This is plainly insufficient. And it is an attempt to silence, not promote, free speech. Imposing liability for ABOG's speech is contrary to the American tradition of "avert[ing] . . . evil by the processes of education" – "more speech, not enforced silence." *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring).

## B. The District Court Properly Dismissed Appellants' Antitrust Claims.

The antitrust laws are designed to protect competition, not as tools for social engineering. Accordingly, to state a claim under the Sherman Act, a plaintiff must allege antitrust injury—that is, an injury "of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). An antitrust injury is one that impairs competition or the competitive process, not a single market participant. *See Pulse Network, L.L.C. v. Visa, Inc.*, 30 F.4th 480, 488 (5th Cir. 2022) ("Antitrust injury fleshes out the basic idea that the antitrust laws were enacted for the protection of competition, not competitors." (cleaned up and citation omitted)). The Amended Complaint fails to allege any harm to competition in a defined market; instead, it conflates Appellants' perceived social and political disagreements with ABOG (and the other Board Defendants) with an antitrust violation. For that reason alone, the District Court's dismissal of Appellants' antitrust claims for failure to allege an antitrust injury must be affirmed.

4522258.v1

This Court can also affirm the district court's dismissal of Appellants' antitrust claim for a separate, independent reason: the Amended Complaint fails to plead facts necessary to state a violation of either Section 1 or Section 2 of the Sherman Act. *See Jebaco Inc. v. Harrah's Operating Co. Inc.*, 587 F.3d 314, 318 (5th Cir. 2009) (affirming dismissal of antitrust claims on an "alternate ground" that was "fully briefed below").

### 1. Appellants Lack Antitrust Standing.

"Antitrust injury must be established for the plaintiff to have standing under section 1 or section 2 of the Sherman Act." *Id.* at 319 (quoting *Doctor's Hosp. v. Se. Med. All.*, 123 F.3d 301, 305 (5th Cir. 1997)). A plaintiff's burden to show antitrust injury "is a heavy one," *HTI Health Servs. v. Quorum Health Grp.*, 960 F. Supp. 1104, 1111 (S.D. Miss. 1997), because this Court "has narrowly interpreted the meaning of antitrust injury." *Anago, Inc. v. Tecnol Medical Prods.*, 976 F.2d 248, 249 (5th Cir. 1992).

An "antitrust injury" is an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendant's acts unlawful." *Brunswick Corp.*, 429 U.S. at 489. The antitrust laws were intended to protect "competition, not competitors," so to plead an antitrust injury, Appellants must do more than merely plead harm to themselves. *Pulse Network*, 30 F.4th at 488. The

alleged harm to competition must "reflect," or be tied to, the alleged anticompetitive conduct undertaken by the defendant.  *Id.*

Antitrust injuries are typically suffered by "competitors, purchasers, or consumers in the relevant market[.]" *Waggoner v. Denbury Onshore, L.L.C.*, 612 F. App'x 734, 737 (5th Cir. 2015). A plaintiff does not suffer antitrust injury when its injury was the result of conduct "in a market in which [plaintiff] is not a participant." *Id*. at 738; *accord Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 423 (5th Cir. 2001) (finding injuries experienced in another market insufficient).

Appellants lack antitrust injury and, therefore, antitrust standing to state a claim under the Sherman Act.  The conduct alleged against ABOG was not alleged to have harmed any Appellant, nor was it alleged to have harmed competition in an identified market.  Even setting that basic deficiency aside, Appellants' attempt to state a claim based on a "marketplace of ideas" is not recognizable under the plain text of the Sherman Act.  Further, Appellants—not ABOG—are attempting to stifle free speech by weaponizing the threat of antitrust liability against ABOG's protected speech.  For these reasons, the District Court rightly dismissed Appellants' antitrust claims at the pleading stage for lack of antitrust injury.

### a. ABOG's alleged conduct is disconnected from Appellants' alleged harm, or harm to competition in an identified market.

The Amended Complaint identifies only three alleged actions linked to ABOG: (i) a September 27, 2021, statement that ABOG "may" take "adverse action

on OB GYN certification status" against diplomates who provide "intentional misinformation that may harm patients or public health";[23] (ii) a July 7, 2022, statement that reiterated ABOG's prior statement;[24] and (iii) a statement by Dr. Ghazaleh Moayedi—who is not an agent or representative of ABOG—at a congressional hearing.[25] ROA.696, 709. Crucially, Appellants never allege that ABOG revoked, or even threatened to revoke, a specific physician's certification based on that physician's speech. And the July 2022 statement makes clear that ABOG diplomates "may practice according to their conscience and religious, moral, and ethical values" and "are not required to provide services that conflict with these values."[26]

Appellants' allegations against ABOG—one of which is wholly unrelated to actual conduct by ABOG—are disconnected from any alleged harm to Appellants. Appellants' opening brief asserts that ABOG "exclude[s] physicians who express

---

[23] *See* https://web.archive.org/web/20230701100229/https://www.abog.org/about-abog/news-announcements/2021/09/27/statement-regarding-dissemination-of-covid-19-misinformation (accessed January 11, 2026); ROA.696, 720.

[24] See https://web.archive.org/web/20230701094545/https://www.abog.org/about-abog/news-announcements/2022/07/07/statement-regarding-misinformation-and-disinformation-and-medical-professionalism (accessed January 11, 2026); ROA.696, 720.

[25] See https://www.businessinsider.com/abortion-doctor-moayedi-ingrid-skop-obgyn-oversight-hearing-video-2021-9 (accessed January 11, 2026).

[26] https://web.archive.org/web/20230701094545/https://www.abog.org/about-abog/news-announcements/2022/07/07/statement-regarding-misinformation-and-disinformation-and-medical-professionalism (accessed January 11, 2026).

particular opinions." Brief of Appellants at 42. But none of the three individual Appellants is an OB GYN, and there are no allegations that any of them ever held (or sought) ABOG certification. Accordingly, there are no allegations showing that any individual Appellant was harmed by ABOG. ROA.710 et seq. And setting aside the individual appellants, the Amended Complaint fails to identify a single example of *any* physician who lost ABOG certification for expressing pro-life (or any other) views.

Appellant AAPS likewise does not allege any injury—antitrust or otherwise— stemming from ABOG's statements. Without referring to ABOG specifically, AAPS vaguely alleges that "Defendants' [undifferentiated] retaliation against speakers at AAPS conferences injures AAPS" because that retaliation "causes it losses in financial support, in the form of decreased attendance at its conferences and reduced contributions to it." *Id.* ¶¶ 109–10. But AAPS never identifies any conduct *by ABOG* that injured AAPS.[27] At most, Appellants allege that one physician (not ABOG) "threat[ened]" another physician at a congressional hearing by reminding that physician that ABOG "recently warned that spreading medical

---

[27] "It is fundamental to pleading in the *post-Twombly* era that before a defendant is forced to be held to account for conduct as serious as a conspiracy in restraint of trade in violation of the Sherman Act that the pleader inform the defendant what it is alleged to have done. It is not sufficient for the plaintiff to allege that a group has done something wrong unless the allegations give reason to believe that the defendant, as a member of the group, also has committed the wrong." *Austin Legal Video, LLC v. Deposition Sols., LLC*, No. 1:23-cv-00421, 2024 U.S. Dist. LEXIS 128017, at *13 (W.D. Tex. July 19, 2024).

misinformation can result in loss of board certification." *Id.* ¶ 115. Setting aside that this statement was ***not*** conduct by ABOG or an ABOG representative, the Amended Complaint concedes that the allegedly threatened physician went on to present at an AAPS conference in 2023, so plainly the alleged "threat of retaliation" had no chilling effect or impact on AAPS's conferences. *Id.*

Even assuming *arguendo* that Appellants could allege that ABOG retaliated against an individual Appellant or member of AAPS, that retaliation alone would not constitute antitrust injury. At best, such allegations would allege harm to the individual Appellants—not harm to competition in an identified market. That is insufficient to show antitrust injury. *See Jebaco*, 587 F.3d at 320 ("The federal antitrust laws protect competition, not competitors."); *Johnson v. Comm'n on Presidential Debates*, 869 F.3d 976, 983 (D.C. Cir. 2017) (holding that a candidate excluded from a Presidential debate failed to allege antitrust injury because lost "donations" only showed harm to the candidate, not to competition). Appellant's additional scattershot allegations of injury relate to loss (or in ABOG's case, hypothetical loss) of certification, loss of revenue from conferences, or censorship of speech. None of these injuries is "of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp.*, 429 U.S. at 489. They do not concern the prices, quantity, or quality of goods or services. *Ginzburg v. Memorial Healthcare Sys.,* 993 F. Supp.

998, 1015 (S.D. Tex. 1997). Instead, the alleged injuries describe harm to the Appellants as individuals—not a harm to competition. *Pulse Network,* 30 F.4th at 488.

The Amended Complaint also never identifies a specific market in which competition was allegedly reduced. ROA.727-732; *see also* Section II.B.2.a., below. Nonetheless, although the allegations do not appear in the complaint, Appellants' assert in their brief that "Defendants'" actions have excluded the individual plaintiffs "from practicing medicine in hospitals and in insurance networks," which "reduce[s] the quantity and quality of medical services." Brief of Appellants at 42, 45–47. Appellants cannot use their appellate brief to amend their complaint. *Collins v. Dep't of the Treasury*, 83 F.4th 970, 977 n.4 (5th Cir. 2023).[28] But even if they could, their last-minute attempt to state an antitrust injury fails for at least three reasons.

First, Appellants have not identified a single physician whose certification was revoked by ABOG for expressing any viewpoint. They allege no loss of output (or quality) of medical services as a result of ABOG's public statements. ABOG has not excluded any Appellant from practicing medicine, from practicing in any hospital, or from any insurance network. Insofar as Appellants suggest the threat of

---

[28] *See also English v. Perdue,* 777 F. App'x 94, 96 (5th Cir. 2019) ("We cannot and do not consider . . . allegations advanced for the first time on appeal.").

adverse action by ABOG is sufficient to state an antitrust injury, that is false: the Fifth Circuit has "narrowly interpreted the meaning of antitrust injury, excluding from it the threat of decreased competition." *Anago*, 976 F.2d at 249.

Second, Appellants' repeated references to "the market" are insufficient to define the relevant market, which necessarily includes both product and geographic dimensions that are wholly lacking in the Amended Complaint. *See Shah v. VHS San Antonio, L.L.C.*, 985 F.3d 450, 453–54 (5th Cir. 2021) ("As a prerequisite to both Sherman Act claims, [the plaintiff] must define the relevant market."). Additional defects in the product and geographic market allegations are addressed in Section II.B.2.a., below.

Third, as the District Court noted, physicians without board certification can still legally practice medicine and voice their medical opinions. TEX. OCC. CODE §155.002. Indeed, all three individual Appellants (none of whom was ever ABOG certified) are still licensed to practice medicine in their respective states despite losing certification from other Board Defendants. ROA.684-686. Thus, the Board Defendants cannot, as a practical matter, exclude competitors (doctors) from the markets in which they participate (provision of medical care). The Amended Complaint even concedes that other physicians who have espoused similar views have retained their board certification (ROA.717), suggesting that there is no widespread viewpoint-based exclusion. Brief of Appellants at 47. Accordingly,

Appellants cannot now suggest that ABOG's (or any other Board Defendant's) conduct has reduced the quality or quantity of medical services.[29]

Appellants cite a line of cases where a professional association's rules—for example, rules prohibiting competitive bidding or boycotting certain clientele—were found to violate the Sherman Act. Brief of Appellants at 45–47. Those cases are easily distinguished because there was a finding that those rules had an anticompetitive effect in a defined market.

For instance, in *National Society of Professional Engineers v. United States* ("*NSPE*"), the defendant association had adopted a rule prohibiting its member engineers from competitively bidding on projects. 435 U.S. 679, 692 (1978). The association conceded the rule's purpose was to prevent price erosion, and the Supreme Court concluded that this ban on competitive bidding, which was implemented through an association of competitors, was an unreasonable restraint of trade in violation of the Sherman Act. *Id*. at 693–95. Appellants' assertion that *NSPE* case is analogous to the facts here is simply false. While the Supreme Court in *NSPE* found that an association's rules "can be in violation of antitrust laws," the

---

[29] Other courts have recognized that business harm to individual physicians does not reduce overall consumer choice or quality of care and so cannot constitute antitrust injury. *Ginzburg*, 993 F. Supp. at 1015–20. Appellants quibble that this case was decided on a motion for summary judgment (Brief of Appellants at 44), but the Amended Complaint is devoid of factual—as opposed to conclusory—allegations that any medical services market has experienced a reduction in the quantity or quality of medical services as a result of ABOG's action.

ban on competitive bidding in *NSPE* stands in stark contrast with the statements by ABOG at issue here, which merely require truthfulness and professionalism and do not proscribe any competitive business conduct by ABOG diplomates.[30]  *NSPE* in no way supports a finding of antitrust injury here given that the Amended Complaint here fails to define a relevant market (*see* Section II.B.2.a., below) and fails to identify any ABOG-directed conduct that harmed competition in that market.

### b. There is no antitrust claim for alleged injury to the "marketplace of ideas."

Appellants next argue that the Board Defendants' alleged misuse of monopoly power to censor speech is evidence of antitrust injury.  That is wrong as a matter of law.  The Sherman Act prohibits only conspiracies to restrain, or monopolization of, "trade or commerce."  15 U.S.C. §§ 1, 2.  Accordingly, Appellants must identify a *commercial* market where competition has suffered.  *See, e.g.*, *Freedom Watch, Inc. v. Judicial Watch, Inc.*, 289 F. Supp. 3d 1270, 1274 (S.D. Fla. 2018) (finding that "trade or commerce" as used in the Sherman Act is limited to business and commercial transactions); *accord Bronx Legal Servs. v. Legal Servs.*, No. 02-cv-6199, 2003 U.S. Dist. LEXIS 695, at *9 (S.D.N.Y. Jan. 17, 2003).

---

[30] And the *NSPE* court acknowledged that avoiding deceptive communications by professionals is a legitimate and protected objective. *See* 435 U.S. at 699. The Supreme Court expressly stated that the Society could adopt ethical guidelines to prevent deceptive business communications, particularly those confined to the "legitimate objective of preventing deceptively low bids." *Id.*

The "marketplace of ideas"—where views are freely exchanged in any number of forums or mediums—is not "regulated by the antitrust laws." *Johnson*, 869 F.3d at 983; *see also Aldabe v. Cornell Univ.*, 296 F. Supp. 3d 367, 373–74 (D. Mass. 2017) (dismissing antitrust claims because "[t]he global 'market for ideas' is not a clearly defined market"); *Adams v. Am. Bar Assoc.*, 400 F. Supp. 219, 223 (E.D. Pa. 1975) ("The antitrust laws . . . clearly do not reach conduct which the plaintiffs perceive as a monopoly of free trade in ideas.").

Alleged harm to the free exchange of ideas is by definition not an antitrust injury. *See DataCell EHF v. Visa, Inc.*, No. 1:14–CV–1658 GBL/TCB, 2015 U.S. Dist. LEXIS 100494, at *18 (E.D. Va. July 30, 2015) ("Congress created antitrust laws to protect free market competition, not to protect the free exchange of ideas.").

Additionally, the Amended Complaint confirms that there *was* no injury to the marketplace of ideas; it shows that the three individual plaintiffs—none of whom has ever held ABOG certification—have continued to express their views and participate in the marketplace of ideas despite their loss of ABIM or ABFM board certification. ROA.684-86. What is really at issue here is whether Appellants can impose their views in litigation to punish ABOG for participating in the "marketplace of ideas" as well.

Appellants next assert that the District Court's interpretation of the antitrust laws would allow any monopolist to "withhold a product or services from a customer

based on his political views." Brief of Appellants at 48. To be sure, Appellants do not properly allege that ABOG has withheld anything based on any physician's political views. But even if they had, such conduct is plainly not violative of the federal antitrust laws. The Supreme Court has long held that "businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing." *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 448 (2009); *Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004) ("[A]s a general matter, the Sherman Act 'does not restrict the long recognized right of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal.'" (quoting *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919))). Appellants are calling on this Court to act as a "central planner" and dictate the terms on which ABOG and the Board Defendants may conduct themselves; such a result is anathema to the antitrust laws. *Verizon Commc'ns*, 540 U.S. at 408.

### c. The antitrust laws cannot be used to stifle ABOG's own speech.

As discussed above, ABOG is being sued here solely for its public statements. This is not a basis for an antitrust claim. This Court has recognized that "the threat of antitrust liability" should not be weaponized against protected First Amendment activity. *Greenwood Utils. Com v. Miss. Power Co.*, 751 F.2d 1484, 1497 (5th Cir. 1985); *see also Retractable Techs., Inc. v. Becton Dickinson & Co.,* 842 F.3d 883,

43

894 (5th Cir. 2016) (noting that the Seventh Circuit's holding that commercial speech "is not actionable under the antitrust laws . . . adheres to traditional free speech principles" (citation omitted)).  The District Court recognized as much by noting that "the First Amendment does not allow antitrust claims to be predicated solely on protected speech."  ROA.1237 (quoting *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Inv's Servs. Inc.*, 175 F.3d 848, 860 (10th Cir. 1999)).  Appellants contest the District Court's reliance on *Jefferson County*, claiming that they are "not objecting 'solely' to 'protected speech' by Defendants, but to action by Defendants ABIM and ABOG that cause the exclusion of the Individual Plaintiffs and others from practicing medicine in hospitals and insurance networks."  Brief of Appellants at 45.  But again, Appellants have not identified an "action" by ABOG, such as the revocation of certification, that prevented an individual physician from practicing medicine in any hospital or as part of any insurance network.  Accordingly, the sole focus of Appellants' antitrust claims against ABOG is ABOG's "constitutionally protected speech," which cannot form the basis of an antitrust violation.

An accrediting entity's promulgation of standards has been held to be protected speech that cannot trigger antitrust liability, even though it allegedly affected the actions of third parties toward the plaintiff.  In *Massachusetts School of Law at Andover v. ABA*, 937 F. Supp. 435 (E.D. Pa. 1996), a law school brought an antitrust claim against the ABA after the ABA denied accreditation.  The court found

that the ABA's promulgation of standards was protected speech that "cannot be the basis for antitrust liability." *Id.* at 443. The court held that expression of that opinion cannot violate the antitrust laws merely because third parties agreed with that opinion. *See id.* at 444 (stating, "A contrary result leads to the anomalous situation that antitrust liability would attach to associations that put persuasive speech into the marketplace of ideas but not to those that put forth fluff. Antitrust laws do not exist to stifle the effects of speech. They exist to protect consumers and to stop conduct that disrupts the marketplace. Thus, any stigma that MSL has suffered because of ABA's not listing MSL as an [accredited] school does not provide the necessary offensive conduct for antitrust liability."). That reasoning applies with equal force here: ABOG has made public statements regarding its professionalism standards; antitrust liability cannot attach to those statements regardless of Appellants' allegations that third parties, such as Diplomates, hospitals or carriers, might be persuaded by or read additional meaning into those statements.

### d. Because there is no antitrust injury, dismissal was appropriate at the pleadings stage.

As this Court has held, "the [antitrust] standing test is often a useful filter at an early stage of litigation," to "ensure[] that the plaintiff's demand for relief ultimately serves the purposes of antitrust law to increase consumer choice, lower prices and assist competition, not competitors." *Doctor's Hosp.*, 123 F.3d at 306. This is particularly true in an "atypical" case like this one because it can prevent

unnecessary proceedings where a court, even assuming an antitrust violation, can straightforwardly determine there is no antitrust injury-in-fact. *See id*; *see also Transource International, Inc. v. Trinity Industries, Inc.*, 725 F.2d 274, 280 (5th Cir. 1984) ("The question of standing is a preliminary one, to be answered from examination of the allegations of the complaint.").[31]

## 2. Appellants Failed to State a Claim Under Either Sections 1 or 2 of the Sherman Act.

This Court should also affirm the dismissal of Appellants' antitrust claim on the grounds, fully briefed by the parties below, that Appellants failed to state a claim under either Section 1 or Section 2 of the Sherman Act.

### a. Appellants Failed to Plead a Relevant Market.

To state a claim under either Section 1 or Section 2 of the Sherman Act, a complaint "must define the relevant market" that includes all interchangeable substitute products within a clear geographic scope. *Shah*, 985 F.3d at 453–54. Failure to define a relevant market "with reference to the rule of reasonable interchangeability and cross-elasticity of demand" or that "does not encompass all

---

[31] Appellants assert that this Court should apply a "one plaintiff rule" from Article III standing to antitrust standing, such that if one plaintiff shows antitrust injury, then all plaintiffs are allowed to proceed with antitrust claims. Brief of Appellant at 43–44. However, the Supreme Court has decisively rejected such a rule even in the context of Article III standing: "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021); *accord Fontenot v. McCraw*, 777 F.3d 741, 746 (5th Cir. 2015).

interchangeable substitute products" is grounds for dismissal at the pleading stage. *Apani Sw., Inc. v. Coca-Cola Enters.*, 300 F.3d 620, 628 (5th Cir. 2002).

Appellants do not plead facts about the relevant market's geographic or product scope. *Shah*, 985 F.3d at 454. Indeed, the only references in the Amended Complaint to a "market" are (i) an unsupported conclusion that the Board Defendants "each control[] roughly 80% of the market for certification of physicians in their corresponding specialties" and (ii) another broad, conclusory allegation that the Board Defendants have "wrongly interfered" with "competition in the market of medical conferences and fundraising based on presentations posted on the internet." ROA.730-31.

Appellants have failed to allege necessary facts to support an allegation that any alleged market is well-defined based on the principles of cross-elasticity of demand and reasonable interchangeability of products. *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417–18 (5th Cir. 2010). Courts routinely dismiss antitrust claims for such pleading deficiencies. *See, e.g.*, *id.* at 418 (holding "women's accessories" is "too broad and vague a definition to constitute a market"); *New Orleans Ass'n of Cemetery Tour Guides & Co. v. New Orleans Archdiocesan Cemeteries*, 56 F.4th 1026, 1035 (5th Cir. 2023) ("ACTGC fails to state a claim for relief because it does not define a legally sufficient relevant market as required by both sections 1 and 2 of the Sherman Act.").

Separately, any antitrust claim predicated on the alleged "market for medical conferences" and related fundraising must also fail because ABOG does not participate in that market. To state an antitrust claim, Appellants must both "define the relevant market and establish that the defendants possessed market power" in that market. *Doctor's Hosp.*, 123 F.3d at 318; *Abraham & Veneklasen Joint Venture v. Am. Quarter Horse Ass'n*, 776 F.3d 321, 327 (5th Cir. 2015) ("[E]ssential attributes of illegal monopoly power are judged by the monopolist's participation in the relevant market."). Here, the Amended Complaint cannot allege that ABOG has market power in the vague and undefined market for medical conferences.

### b. Appellants Have Not Pleaded A Conspiracy to Support a Section 1 Claim.

To establish a Section 1 violation, "a plaintiff must show that the defendant[]: (1) engaged in a conspiracy (2) that restrained trade (3) in a particular market." *BRFHH Shreveport, LLC v. Willis-Knighton Med. Ctr.*, 49 F.4th 520, 525 (5th Cir. 2022). Independent or parallel decisions are not actionable under Section 1. *Abraham & Veneklasen Joint Venture*, 776 F.3d at 327; *see also Twombly*, 550 U.S. at 556–57 ("Parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point" are insufficient to plead illegal antitrust activity.). Accordingly, to plead a Section 1 violation, Appellants must allege ***facts*** that "tend[] to exclude" the possibility that the alleged conduct was the product of independent decision making. *Twombly*, 550 U.S. at 554.

There are no such factual allegations here. Instead, Appellants made conclusory allegations of collusion based solely on statements by the Board Defendants that Appellants characterize as "similar" and "threatening." ROA.728. They allege no meetings, contacts, or discussions between the Board Defendants— or anything else to suggest that the formed a "conscious commitment to a common scheme." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984). Instead, Appellants allege only parallel conduct, which is insufficient to sustain a Section 1 claim. *Abraham & Veneklasen Joint Venture*, 776 F.3d at 327; *see also David B. Turner Builders, LLC v. Weyerhaeuser Co.*, 603 F. Supp. 3d 459, 464–65 (S.D. Miss. 2022) (collecting cases).

Indeed, this is not the first time AAPS has failed to state a plausible Section 1 claim under Twombly. *See Ass'n of Am. Physicians & Surgeons., Inc. v. Am. Bd. of Med. Specialties*, 15 F.4th 831, 834 (7th Cir. 2021) ("[H]aving taken our own careful look at AAPS's amended complaint, all we see are conclusory allegations—that the Board 'agreed,' 'conspired,' 'colluded,' or 'induced' agreement, conspiracy, or collusion. Repetition cannot substitute for factual allegations. Once we filter out AAPS's legal conclusions, not nearly enough is left on the factual front for the amended complaint to survive dismissal").[32]

---

[32] The Seventh Circuit even chastised AAPS for filing a "frivolous" appeal that disregarded *Twombly*'s clear requirement for plaintiffs to plead facts "plausibly suggesting conspiracy." *Id.* at 835.

In reality, the Amended Complaint fails to even allege parallel conduct: while ABIM and AFBM are alleged to have revoked physicians board certifications, Appellants never allege that ABOG engaged in similar conduct. ROA.728. Appellants even concede another Board Defendant (ABIM) has *not* retaliated against a physician that has expressed identical views as two of the plaintiffs, suggesting Appellants know there is no basis to allege that the Board Defendants ever agreed to exclude a wholesale category of physicians. ROA.717.

Nor do Appellants plead the second element, restraint of trade. *See, e.g. FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 455 (1986) (requiring showing of actual suppression of competition in concerted refusal to deal case). There is no pleading of facts tending to show a supposed agreement to exclude certain viewpoints actually and unreasonably limited competition. *See Ind. Fed'n of Dentists*, 476 U.S. at 457-58 (requiring actual and unreasonable restraint resulting in actual effect of eliminating competition).

### c. Appellants Have Not Pleaded Anticompetitive Conduct or Monopoly Power Necessary to State a Claim Under Section 2.

To state a Section 2 claim, Appellants must: (a) identify a relevant market where the defendant has monopoly power, and (b) allege the defendant engaged in exclusionary conduct to acquire or maintain that monopoly power. *Doctor's Hosp.*, 123 F.3d at 311. For the reasons stated in Section II.B.2.a above, Appellants have failed to allege sufficient facts to satisfy the first element of a Section 2 claim. And

50

Appellants have failed to allege facts showing "exclusionary conduct" by ABOG. *Clean Water Opportunities, Inc. v. Willamette Valley Co*., 759 F. App'x 244, 248 (5th Cir. 2019). "Exclusionary conduct under [S]ection 2 is the creation or maintenance of monopoly by means other than the competition on the merits." *Id.* (quoting *Stearns Airport Equip. Co. v. FMC Corp.,* 170 F.3d 518, 522 (5th Cir. 1999)). Conduct does not fall into this category "simply because it negatively impacts a competitor or violates a law or contract." *Oxford Glob. Res., Inc. v. Weekley-Cessnun*, No. 3:04-CV-0330-N, 2004 U.S. Dist. LEXIS 32186, at *5 (N.D. Tex. Nov. 12, 2004) (citing *Taylor Publ'g Co. v. Jostens Inc*., 216 F.3d 465, 475 (5th Cir. 2000)). Rather, conduct is exclusionary when it "unfairly tends to destroy competition itself." *In re Pool Prods. Distrb. Mkt. Antitrust Litig.*, 940 F. Supp. 2d 367, 388 (E.D. La. 2013) (citations omitted).

Appellants plead no facts showing exclusionary conduct by ABOG. Even if Appellants did allege ABOG had revoked any physician's board certification for his viewpoint (which they don't), it would still be insufficient to state a Section 2 claim because Appellants cannot explain how revoking a doctor's certification would contribute to, or help maintain, ABOG's alleged monopoly over the market for certifying OB GYNs. At most, the Amended Complaint speculates, with no alleged facts, that a Board Defendant may have made public statements to ingratiate itself with Democrats in Congress and other federal agencies. ROA.731-32. There is no

4522258.v1

plausible, nonconclusory allegation that ABOG received any benefits related to an alleged monopoly over certification decisions or that it blocked competition from other accreditation organizations. There is no factual allegation that ABOG's alleged monopoly was at all furthered by any alleged threats to revoke certification. *See Estates of Coley v. Hillenbrand Indus.*, No. H-07-742, 2007 U.S. Dist. LEXIS 110075, at *7 (S.D. Tex. Aug. 27, 2007) ("[A]n antitrust complaint is 'subject to dismissal where it does little more than recite the relevant antitrust laws. Thus, the mere use of antitrust buzz words will not provide factual circumstances necessary to support . . . conclusory allegations.'").

## C. The District Court Properly Dismissed Appellants' Tortious Interference Claims.

Texas law recognizes two distinct torts: tortious interference with <u>existing</u> business relations and tortious interference with <u>prospective</u> business relations. Appellants did not plead the elements for either.

Appellants have not pleaded factual allegations that ABOG took "unlawful actions . . . without justification or excuse," nor intent to harm, actual damages, or malice. *McGowan & Co., Inc. v. Bogan*, 93 F.Supp.3d 624, 654 (S.D. Tex. 2015); *see also Wal-Mart Stores, Inc. v. Sturges,* 52 S.W.3d 711, 726 (Tex. 2001) (requiring conduct that would be actionable under a recognized tort). ABOG strongly disagrees with Appellants' unsupported implication that it has an intent to "interfere" with

"ongoing debates about public policy." But even if it had, it is not <u>unlawful</u> for ABOG to publicly state its professionalism standards.

Appellants also fail to plead facts supporting a claim for prospective business relations. They do not plead facts showing a reasonable probability that any Appellant would have entered into a business relationship absent ABOG's conduct, or identify any prospective agreement. *See Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013); *Corrosion Prevention Techs. LLC v. Hatle*, No. 4:20-CV-2201, 2020 WL 6202690, at *4, 2020 U.S. Dist. LEXIS 196742 (S.D. Tex. Oct. 22, 2020). Nor do they allege the other necessary elements, conscious desire to prevent the relationship or knowledge the interference was substantially certain to occur as a result; independently tortious or unlawful conduct; proximate cause; and injury. *See Coinmach Corp.*, 417 S.W.3d at 923. Their suggestions that physicians had unspecified contracts that were "affected" or that presentations at AAPS conferences might be less candid following general Board Defendant statements are insufficient. Simply put, the pleadings do not meet this test, and none of the alleged facts related to the individual Appellants apply to ABOG, because they are not and never were its Diplomates.

Finally, both types of tortious interference are state law claims that should be dismissed because there are no federal claims against ABOG that survive dismissal. *Parker & Parsley Petrol. Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992).

# CONCLUSION

This Court should affirm the District Court's dismissal of all claims against

ABOG in all respects.

Respectfully submitted,


*/s/ April E. Lucas*
McGinnis Lochridge LLP
Ashley Parrish
State Bar No. 15536850
Federal Bar No. 2229186
aparrish@mcginnislaw.com
500 N. Akard St., Ste. 2250
Dallas, Texas 75201
(214) 307-6960
(214) 307-6990 FAX

April E. Lucas
State Bar No. 24046323
Federal Bar No. 659410
alucas@mcginnislaw.com
1111 W. 6th St., Bldg. B, Suite 400
Austin, TX 75703
(512) 495-6156
(512) 495-6356 FAX

Marcus Eason
State Bar No. 24092374
Federal Bar No. 2609087
meason@mcginnislaw.com
609 Main St., Ste. 2800
Houston, Texas 77002
(713) 615-8500
(713) 615-8585 FAX

4522258.v1

*Attorneys for Defendant-Appellee*
*American Board of Obstetrics & Gynecology*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f), and 5th CIR. R. 32.1: this document contains 12,613 words.

This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14 point type.

*/s/ April E. Lucas*

4522258.v1