**Case No. 25-40624**

---

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

Association of American Physicians and Surgeons Educational Foundation, AAPS;
Pierre Kory, M.D., M.P.A.; Paul E. Marik, M.D., FCCM, FCCP,

Plaintiffs - Appellants

V.

American Board of Internal Medicine, ABIM; American Board of Obstetrics &
Gynecology, ABOG; American Board of Family Medicine, ABFM; Kristi Noem,
Secretary, U.S. Department of Homeland Security,

Defendants - Appellees

---

Appeal from the U.S. District Court for the
Southern District of Texas, Galveston Division (No. 3:22-CV-240)

---

**REPLY BRIEF OF APPELLANTS**

---

Andrew L. Schlafly
939 Old Chester Rd.
Far Hills, New Jersey 07931
908-719-8608
908-934-9207 (fax)

*Attorney for Plaintiffs-Appellants*

# TABLE OF CONTENTS

Page(s)

Table of Contents ................................................................... ii

Table of Authorities ............................................................. iii

Summary of Reply Argument .................................................... 1

Reply Argument ...................................................................... 5

I. Publicly Restricting Physicians' Ability to Practice Medicine Is a Public Function, and Defendants ABIM and ABOG Engage in State Action When They Do Likewise by Revoking Certifications ........................................ 6

II. ABOG Fails to Justify or Scale Back Its Infringement on the First Amendment ...................................................................... 13

III. Misuse of Monopoly Power to Censor Speech and Exclude Physicians from the Market Is Actionable under the Sherman Act, and Antitrust Injury Exists ...................................................... 19

    A. ABIM Fails to Distinguish the Precedent that Is Controlling Here ......... 23

    B. ABOG, Which Holds a Monopoly Over Board Certification in its Specialty, Violates the Sherman Act When It Misuses Its Monopoly Power to Chill Freedom of Speech ............................................ 24

IV. The Government Should Produce Documents from the Biden Administration as Required by FACA and as Requested by Plaintiffs in Discovery Below ...................................................................... 26

Conclusion ............................................................................. 27

Certificate of Compliance ........................................................ 28

# TABLE OF AUTHORITIES

**Cases**                                                                 Page(s)

*Aebisher v. Ryan*, 622 F.2d 651 (2d Cir. 1980) ......................................................18

*Am. Bd. of Internal Med. v. Muller*, No. 10-CV-2680,
    2011 U.S. Dist. LEXIS 25169 (E.D. Pa. Mar. 10, 2011) .............................15

*Anago, Inc. v. Tecnol Medical Prods.*, 976 F.2d 248 (5th Cir. 1992) ....................25

*Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal
    Med.*, 103 F.4th 383 (5th Cir. 2024)................................................... 18, 20-21

*Blue Shield of Va. v. McCready*, 457 U.S. 465 (1982) ...........................................25

*Bridges v. Methodist Hosp.*, No. 24-20483,
    2025 U.S. App. LEXIS 14964 (5th Cir. June 17, 2025) ...............................9

*Brown Shoe Co.* v. *United States*, 370 U.S. 294 (1962) .........................................22

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977)......................22

*Byrd v. United States EPA*, 174 F.3d 239 (D.C. Cir. 1999) ...................................27

*Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104 (1986)............................22, 25

*Cont'l Airlines, Inc. v. United Air Lines, Inc.*,
    120 F. Supp. 2d 556 (E.D. Va. 2000) ........................................................21

*Cornish v. Corr. Servs. Corp.*, 402 F.3d 545 (5th Cir. 2005)...................................9

*CSR Ltd. v. Cigna Corp.*, 405 F. Supp. 2d 526 (D.N.J. 2005)

*Cummock v. Gore*, 180 F.3d 282 (D.C. Cir. 1999)..................................................27

*Fontenot v. McCraw*, 777 F.3d 741 (5th Cir. 2015) ...............................................26

*Fuhrman v. Dretke*, 442 F.3d 893(5th Cir. 2006)...................................................18

*George v. Pacific-CSC Work Furlough*, 91 F.3d 1227 (9th Cir. 1996)....................9

*Mandeville Island Farms, Inc. v. Am. Crystal Sugar Co.*, 334 U.S. 219 (1948) ....25

*Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802 (2019) ............................7

*National Society of Professional Engineers v. United States*,
    435 U.S. 679 (1978)....................................................................................23

*NAACP v. Button*, 371 U.S. 415 (1963).................................................................17

*Papalote Creek II, L.L.C. v. Lower Colo. River Auth.*,
    918 F.3d 450 (5th Cir. 2019) .......................................................................2

*Pearson v. Shriners Hosps. for Children, Inc.*, 133 F.4th 433 (5th Cir. 2025) ........9

*Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*,
    40 F.3d 247 (7th Cir. 1994),
    *as amended on denial of reh'g* (Jan. 11, 1995) ................................................7

*Sims v. Jefferson Downs Racing Ass'n*,
    778 F.2d 1068 (5th Cir. 1985) ......................................................9, 10, 11, 12

*Tidelands Marine Serv. v. Patterson*, 719 F.2d 126 (5th Cir. 1983) ........................2

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ................................................26

*United States v. Terminal Railroad Association*, 224 U.S. 383 (1912)...................20

*Waggoner v. Denbury Onshore, L.L.C.*, 612 F. App'x 734 (5th Cir. 2015) .....24, 25

*World Wide St. Preachers Fellowship v. Town of Columbia*,
    245 F. App'x 336 (5th Cir. 2007)................................................................18

**Statute**

Sherman Act, 15 U.S.C. § 1 .....................................................................................21

**Articles and Public Statements by Defendants**

"2025 Specialty Certifying Examination Bulletin," ABOG,
    https://www.abog.org/docs/default-source/bulletins/2025/specialty-ce/
    2025-certifying-examination-in-obstetrics-and-gynecology-08-21-2025-
    2025.pdf?sfvrsn=d7ffba9b_1 ........................................................................14

ACOG, "Facts Are Important: Medication Abortion 'Reversal' Is Not
    Supported by Science," https://www.acog.org/advocacy/facts-are-
    important/medication-abortion-reversal-is-not-supported-by-science..........16

"Dobbs vs. Jackson Women's Health Organization Anniversary Statement"
    (June 27, 2023) https://tinyurl.com/565mmzsh.............................................17

Guttmacher Institute, "Most U.S. Obstetrician-Gynecologists in Private
    Practice Do Not Provide Abortions and Many Also Fail to Provide
    Referrals" (Nov. 27, 2017), https://tinyurl.com/2bw8mc9v ........................16

Linda M. Richmond, "4 common reasons doctors get disciplined by state
    medical boards," *MDLinx* (Apr. 23, 2021)
    https://www.mdlinx.com/article/most-common-reasons-doctors-get-
    disciplined-by-state-medical-
    boards/5p7yNlCEzZbBUBMw0cAUEK#Unprofessional%20conduct....8, 14

## SUMMARY OF REPLY ARGUMENT

The briefs by Defendants American Board of Internal Medicine ("ABIM") and American Board of Obstetrics & Gynecology ("ABOG", collectively the "Board Defendants") are mostly unresponsive concerning their conduct at issue here. They do not deny that their threats and actions to revoke board certification have a chilling effect on physicians' outspokenness about matters of public policy. The Board Defendants cannot deny that their board certifications are necessary for physicians to practice on the medical staff at hospitals and to be in insurance networks. A factual record should be allowed to develop below in order to address this devastating new interference with freedom of speech by these Defendants.

The Board Defendants fill their briefs with cases that have no factual similarity to their retaliation against professionals based on viewpoint discrimination. Defendant ABIM has threatened to and actually revoked board certifications of physicians based on their opinions about matters of public policy, while Defendant ABOG has threatened to take such action. No other entity is abusing monopoly power like this in the medical or legal professions. Analogous precedents establish that Plaintiffs do have valid causes of action.

The principles underlying state action doctrine and the Sherman Act, as well as its statutory text and precedents on conceptually analogous fact patterns, stand entirely against the Board Defendants' assault on freedom of speech by

professionals. Their viewpoint-based, subjective revocation of board certification bears no resemblance to the objective grading of multiple-choice exams on which initial board certification is based. Instead, the revocation of board certification is nearly indistinguishable from disciplinary action by a state medical board. Both are intentionally done with publicity, in contrast with private disciplinary decisions by schools or clubs. Both board certification revocation and licensure discipline terminate the ability of the physician to fully practice medicine. Both result in the exclusion of the physician from medical staffs of hospitals and insurance networks. Both are done with public statements that are devastating to the professional reputation of the physician. "'That which looks like a duck, walks like a duck, and quacks like a duck will be treated as a duck even though some would insist upon calling it a chicken.'" *Papalote Creek II, L.L.C. v. Lower Colo. River Auth.*, 918 F.3d 450, 456 n.1 (5th Cir. 2019) (quoting *Tidelands Marine Serv. v. Patterson*, 719 F.2d 126, 128 n.3 (5th Cir. 1983)). The Board Defendants emphasize that they are private entities, but they are acting like state medical boards in publicly disciplining physicians.

Despite this, Defendant ABOG argues that "ABOG cannot be liable under the First Amendment because it is a private entity, not a state actor." (ABOG Br. 11) But being a private entity has never completely immunized anyone from application of state action doctrine, particularly when the entity has authority over

professionals as ABOG does. ABOG argues that it "cannot license physicians or regulate the practice of medicine" (ABOG Br. 12), but obstetricians need ABOG certification to deliver babies in hospitals. By threatening to revoke these board certifications in a partisan manner, ABOG is deliberately silencing physicians on one side of the abortion debate.

As to the antitrust issue, it is an illegal abuse of the Board Defendants' monopoly power to impose viewpoint discrimination as a condition of having a professional certification. This conclusion can be reached under Section 1 or 2 of the Sherman Act, and Plaintiffs have alleged both. In their responses, the Board Defendants do not deny that they have vast monopoly power, which they are misusing to influence what physicians say about matters of public policy. The Board Defendants' conduct impedes competition, by eliminating renowned physicians, but these Defendants argue that there is a lack of an antitrust injury or a specifically defined relevant market. Plaintiffs Kory and Marik clearly have antitrust injury, as they have been excluded from fully practicing medicine, and a relevant market is not required here because the Board Defendants' monopoly power is undisputed and this case does not concern a merger or similar economic issue. Monopolists do not have a blank check to abuse their power by censoring others, and the Sherman Act exists to curb this and other wrongdoing by monopolists.

Left unaddressed by the Board Defendants' response briefs is the frightening slippery slope that would result if their arguments were accepted. If First Amendment values can be undermined by revoking board certification based on statements relating to public policy, then physicians lack genuine freedom of speech to the detriment of our form of government. Career-ending board certification revocation based on religious beliefs or even race could be next. Defendant ABOG represents that its board certification does not require a physician to perform abortions, if he has a religious, moral or ethical objection (ABOG Br. 9 n.7), but ABOG is chilling advocacy against abortion by threatening to revoke certification based on what a physician says. Testifying against abortion is a basis for ABOG's revocation of certification, and ABOG argues here against legal accountability for this partisan misuse of its monopoly power. A physician should not have to lose his medical career to ABOG retaliation for there to be standing to challenge its threatened revocation of board certification.

As to the government (Defendant U.S. Department of Homeland Security Secretary Kristi Noem), it changed its position here on appeal by reversing its argument below "that plaintiffs' [Federal Advisory Committee Act] FACA disclosure claim 'is not subject to the requirement for a plaintiff to show injury-in-fact.'" (Govt. Br. 20 n.2, quoting ROA.948 n.16) The posture of this appeal is that Plaintiffs' allegations are to be taken as true and all inferences are to be construed

in favor of Plaintiffs. Injury-in-fact from the failure of the government to comply with the FACA disclosure requirements should be inferred on the facts of this case on the government's motion to dismiss. The information being withheld by the government in violation of FACA is from the period of the Biden Administration and would be helpful to Plaintiffs in their ongoing pursuit of their claims against the Board Defendants. Plaintiffs' reasonable discovery request below – which the district court unjustifiably blocked – makes that relevance clear by asking the government for its documents mentioning the Board Defendants. In addition, mootness does not excuse FACA-violations, or else that would become an improper avenue for the government to repeatedly avoid accountability for its FACA violations by merely disbanding its advisory committees to dodge an adverse court ruling against it.[1]

## REPLY ARGUMENT

This Court should reject the demands by Defendants ABIM and ABOG for a blank check to retaliate with revocation of board certification and thereby wield a powerful new form of censorship over physicians. Plaintiffs do not seek an

---

[1] Finally, as to Defendant American Board of Family Medicine (ABFM), the only party with a direct claim against it was Plaintiff Karl N. Hanson, and he did not appeal its dismissal below for lack of personal jurisdiction. Similarly, no one specifically appealed the opinions below dismissing ABFM. (ROA.1186-92, 1203-04, 1245-46) Appellants stated in their opening brief that no appeal is being pursued against ABFM. (Appellants Br. 1)

expansive ruling declaring the Board Defendants to be state actors for their
traditional work of objectively grading multiple-choice exams to grant initial board
certifications, but rather seek a narrow ruling that when Board Defendants abuse
their monopoly power to revoke board certifications based on viewpoint
discrimination, then that is state action subject to First Amendment and Sherman
Act safeguards.

Freedom of speech is chilled; public discourse is undermined; and the
democratic process suffers due to the misuse by Defendants ABIM and ABOG of
their board certification monopolies to censor physicians. Under the rationale
adopted below, these Defendants could revoke needed board certifications by
retaliating with impunity based on a physician's views on abortion and other
controversial issues. Fortunately, legal doctrines stand against this abuse of power.

## I.     Publicly Restricting Physicians' Ability to Practice Medicine Is a Public Function, and Defendants ABIM and ABOG Engage in State Action When They Do Likewise by Revoking Certifications.

Defendant ABIM's brief fails to confront and address how its board
certification revocation campaign is virtually indistinguishable from state medical
board discipline, which of course is state action. (ABIM Br. 17-25) Both processes
limit a physician's ability to practice medicine, and both are publicly devastating to
the reputation of the physician. In contrast with academic discipline which is
typically confidential, both ABIM's revocation of board certification and state

medical board discipline are done in a highly publicized manner, as ABIM posts its revocations on its public website just as a state medical board does. Both forms of discipline are undertaken supposedly to protect the public in some way. Both are based on subjective criteria rather than the more objective process of grading multiple-choice exams.

Rather than confronting and addressing this central issue, ABIM takes the Court through a series of decisions that bear no resemblance to the wrongdoing alleged here. ABIM's first precedent, for example, is a 5-4 decision in favor of an entity controlling public access channels on a private television cable system in Manhattan, which had suspended two film producers. *See Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 805 (2019) ("[W]e conclude that operation of public access channels on a cable system is not a traditional, exclusive public function."). While historically interesting, ABIM's cited authorities are unhelpful to ABIM's campaign of revoking board certification with an effect nearly indistinguishable from the traditional, exclusive public function of state medical board discipline. Similarly, ABIM misplaces reliance on a case concerning the initial board certification (as opposed to revocation) of a psychiatrist, who practiced in a field that does not typically require hospital medical staff privileges dependent on board certification. (ABIM Br. 20-21, quoting *Sanjuan v. Am. Bd. of Psychiatry & Neurology*, 40 F.3d 247, 248-50 (7th Cir. 1994)). That 30-year-old

7

case relating to the process of initial board certification, which is based on objectively grading multiple-choice exams, has no bearing on viewpoint-based revocation of board certification, which is at issue here.

The nub of ABIM's argument is that Plaintiffs lack precedent establishing that ABIM's activity, which it says is based on professionalism, is a traditional state function. (ABIM Br. 23) But professionalism is precisely the basis on which state medical boards have traditionally and exclusively disciplined physicians. *See, e.g.*, Linda M. Richmond, "4 common reasons doctors get disciplined by state medical boards," *MDLinx* (Apr. 23, 2021) [hereinafter, "*MDLinx*"] ("The most common reason for physician disciplinary action for professionalism in 2019 was the catch-all term 'unprofessional conduct' ….").[2] By revoking board certification based on "professionalism", ABIM is encroaching on state medical boards and ABIM should be legally accountable for acting like the state, just as state action doctrine provides.

ABIM objects to Plaintiffs' distinction between the Board Defendants' revocation campaigns and their process of initial board certification. (ABIM Br. 23) But the sharp contrast between initial certification and revocation is obvious. The latter is an objective process based on assessing knowledge, while the former

---

[2] https://www.mdlinx.com/article/most-common-reasons-doctors-get-disciplined-by-state-medical-boards/5p7yNlCEzZbBUBMw0cAUEK#Unprofessional%20conduct (viewed Feb. 3, 2026).

is entirely subjective and susceptible to bias and viewpoint discrimination. ABIM argues that "Plaintiffs cite no case indicating that whether an activity constitutes a public function for purposes of the state action analysis depends on how it is performed." (*Id.*) But Plaintiffs have quoted clear Fifth Circuit holdings that a private entity can be engaged in state action without becoming a state actor overall: "defendant may be a state actor for some purposes but not for others." *Bridges v. Methodist Hosp.*, No. 24-20483, 2025 U.S. App. LEXIS 14964, at *6 (5th Cir. June 17, 2025) (quoted by Appellants' Br. 32). *See also Pearson v. Shriners Hosps. for Children, Inc.*, 133 F.4th 433, 444 (5th Cir. 2025) (quoting *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 550 (5th Cir. 2005), quoting *George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1230 (9th Cir. 1996)) (cited by Appellants Br. 33).

The decisions relied upon by ABIM (and by the district court) do not address the misuse of power to revoke board certification based on viewpoint, and thus are nearly irrelevant here. A notable exception is the remarkable *Sims v. Jefferson Downs Racing Ass'n* decision written by Judge Wisdom of this Court, where a private racetrack excluded an outspoken jockey and this Court found that he had a valid First Amendment claim. (Appellants Br. 36-37; ABIM Br. 23-24; ABOG Br. 23-35) This decision, which found state action, is closely analogous to the appeal here in that the Board Defendants as private entities are excluding physicians from

9

something they need to practice their profession, just as the jockey needed access to the private racetrack to pursue his career.

ABIM errs in trying to distinguish *Sims v. Jefferson Downs* based on the ground that "the manager of the [private] racetrack wrongfully enlisted police to enforce the improper eviction notice." (ABIM Br. 24) ABIM is incorrect, as the Court specifically held that "[b]ecause we have found that the involvement of the Kenner police does ***not*** transform the action of Jefferson Downs on March 22 into state action, Sims ***cannot prevail*** on the basis of this specific allegation." 778 F.2d at 1080 n.10 (emphasis added). Merely calling the cops does not convert an eviction by a private entity into state action. ABIM is wrong in asserting that this was a basis for the finding by this Court of state action by the private racetrack in excluding the outspoken jockey, in ABIM's unsuccessful attempt to distinguish this precedent.

ABIM's only other argument for distinguishing the state action found by this Court in *Sims v. Jefferson Downs* for the private retaliatory eviction of a jockey is this: "under the relevant state law, the eviction [by the private racetrack] required action by a state commission." (ABIM Br. 23-24) But ABIM overstates that, as the *Sims* decision explained that an action by merely a steward, two of whom were appointed by the private racetrack, would be sufficient to evict. 778 F.2d at 1079 ("Exclusion of permittees may be accomplished only through the stewards ***or*** the

Commission in accordance with the rules of the Commission.") (emphasis added); *id.* at 1076 (the stewards were paid by the private racetrack). The nexus between the private racetrack and a public entity in *Sims* was more tenuous than ABIM asserts, and more tenuous than the nexus here.

Most importantly, this Court held in *Sims* that an allegation very similar to that made by Plaintiffs here was sufficient to overcome a motion to dismiss on the pleadings:

> [B]ecause of the plaintiff's involvement with the organization and planning of the Louisiana Thoroughbred Trainers Association, and because of plaintiff's exercise of his constitutional rights of freedom of speech and freedom of association ... the defendants herein, Jefferson Downs Racing Association, Marie Krantz, and the Louisiana State Racing Commission and its Stewards in co-operation, conjunction, and participation with one another, did willfully and intentionally deny the plaintiff the right of access to Jefferson Downs Racing Association facilities." R. at I, 193. ***The district court must proceed to consider the merits of this allegation***.

*Sims v. Jefferson Downs*, 778 F.2d at 1080 n.10 (emphasis added). Mere "co-operation, conjunction, and participation" by a state-controlled entity with a private one in excluding a licensee from something essential to his profession is sufficient under *Sims* to allege state action by a private entity. Defendant ABOG discusses this *Sims* case at length but never addresses its holding as quoted above. (ABOG Br. 23-25)

Plaintiffs alleged involvement by the Federation of State Medical Boards, such that the motion to dismiss on the issue of state action should not have been

granted below, as Plaintiffs' opening brief argued. (Appellants Br. 36-37 – "The

involvement of the state in Jefferson Downs is analogous to the encouragement by

the Federation of State Medical Boards (FSMB) of the retaliation by ABIM and

ABOG against physicians.") Plaintiffs' Amended Complaint includes the

following:

> 69.    The Board Defendants then agreed with the FSMB, which took credit
> that other health organizations including the umbrella organization for the
> Board Defendants, ABMS, then agreed with FSMB on this by threatening
> adverse actions against physicians based on their public statements about
> matters of public policy.

(ROA.699 ¶ 69) (citation omitted). Yet the briefs of ABIM and ABOG fail entirely

to address the FSMB in the context of state action.

Plaintiffs do not seek a vast expansion in the scope of what qualifies as state

action, but merely a narrow recognition that when Board Defendants behave like

state medical boards in publicly disciplining physicians by revoking their board

certification, to limit their practice of medicine, then this is traditionally a state

function to which state action doctrine applies. At a minimum, there should be a

remand to the district court so that a factual development of the record can

proceed. The decision by this Court in *Sims v. Jefferson Downs* requires reversing

the dismissal below such that an essential factual record can be developed.

Finally, Defendant ABIM argues that even if its board certification

revocation constitutes state action, it nevertheless comported with due process by

giving Plaintiffs Kory and Marik an opportunity to be heard. (ABIM Br. 25-27)

But ABIM did not comply with constitutional due process:

> 228.   Plaintiffs Kory and Marik received a mere one-day, combined hearing from Defendant ABIM, while the outcome was predetermined and the ensuing ABIM Decisions failed to address voluminous evidence in support of these Plaintiffs.

(ROA.732 ¶ 228) Plaintiffs Kory and Marik never had an opportunity to overcome the "predetermined" outcome, and ABIM never addressed in its internal process Plaintiffs Kory's and Marik's submitted evidence in a meaningful or adequate manner. ABIM's argument that it already provides due process is factually incorrect, but does imply that ABIM could easily provide due process if this Court or the district court held that these certification revocations constitute state action.

## II.    ABOG Fails to Justify or Scale Back Its Infringement on the First Amendment.

Defendant ABOG's extensive argument against state action (ABOG Br. 14-32) is most notable for what it omits: ABOG does not retreat in any way from its announcements threatening to revoke board certification based on statements against abortion. In response to Plaintiffs' example of a pro-life obstetrician (and a speaker at Plaintiff AAPS's conferences) being intimidated by ABOG's potential revocation based on her testimony against abortion at a congressional hearing, ABOG's defense is that it was not the one who actually bullied her at that hearing. (ABOG Br. 29) ABOG does not narrow or disavow in any way its aggressive

stance that it can and will punish obstetricians who speak out in detail against abortion, by revoking their board certifications.

ABOG denies any harm caused by abortion. (Appellants Br. 25, citing ROA.696-97 ¶ 56) ABOG does not dispute that this is its position, and thus any statements by an obstetrician asserting that abortion causes harm becomes a potential basis for ABOG to revoke the obstetrician's board certification. ABOG's only exemption is for obstetricians who decline to perform abortion due to "religious, moral, or ethical objections." (ABOG Br. 9 n.7) This exemption does not include obstetricians who advocate against abortion, including testimony at legislative hearings. In its brief here, ABOG has notably not disclaimed its intention to revoke board certification of those who criticize abortion. And ABOG does include questions about the "induced abortion procedure" in its board certification exam, so those who oppose it are forced to provide answers preferred by ABOG on this topic or else they will lose points on the exam.[3]

ABOG's argument in its brief is to recast its revocation policy as an issue of "professionalism" for which board certification revocation might be justified. (ABOG Br. 9, 13, 14, etc.) But professionalism and unprofessional conduct is what state medical boards discipline for. *See* Point I, *supra* (citing *MDLinx*).

---

[3] "2025 Specialty Certifying Examination Bulletin," ABOG, https://www.abog.org/docs/default-source/bulletins/2025/specialty-ce/2025-certifying-examination-in-obstetrics-and-gynecology-08-21-2025-2025.pdf?sfvrsn=d7ffba9b_1 (viewed Feb. 4, 2026).

Like ABIM, ABOG's brief misplaces reliance on cases concerning initial board certification based on multiple-choice exams, such as a revocation of certification when an applicant "violated [ABIM's] 'Pledge of Honesty' by copying and disseminating its protected exam questions." (ABOG Br. 19-20, citing *Am. Bd. of Internal Med. v. Von Muller*, No. 10-CV-2680, 2011 U.S. Dist. LEXIS 25169, at *7-10, 2011 WL 857337 (E.D. Pa. Mar. 10, 2011), *aff'd*, 540 F.App'x 103 (3d Cir. 2013)) That bears no resemblance to ABOG's threatened retaliatory conduct at issue here, which has a deliberate chilling effect on speaking out against abortion. Plaintiffs have been clear that they are not asserting that initial board certification is state action. Rather, it is the retaliatory board certification akin to state medical board discipline that constitutes state action.

Despite the stark differences between initial board certification based on an objective grading of a multiple-choice exam and this unprecedented campaign by the Board Defendants to revoke certification based on subjective disagreement with public opinions by physicians, Defendant ABOG unpersuasively argues at length that they are really one and the same for legal purposes. (ABOG Br. 26-27) ABOG asserts that it considers additional factors for its initial board certification, and that its certifications expire and are renewed from time to time based on a variety of considerations. But to the extent ABOG strays from an objective assessment of knowledge, on which its initial board certification undeniably is

15

based, into the subjective realm of regulating professionalism based on ideology, ABOG enters the realm of state action for which viewpoint-based discrimination is prohibited. State medical boards already discipline based on standards of professionalism, and ABOG cannot legitimately bypass the safeguards in place under state action doctrine for such discipline.

ABOG implausibly disclaims having a political motivation for its threatened revocation, even though its retaliation against physicians related to advocacy about abortion is entirely on one side of that issue. Fewer than a quarter of obstetricians perform abortion, while more than a third of obstetricians decline to provide even a referral for abortion,[4] and yet ABOG includes "induced abortion procedure" as a mandatory part of its board certification exam. *See supra* n.3 and accompanying text. The American College of Obstetricians and Gynecology (ACOG), with which ABOG is closely aligned, declares that the two-dose abortion pill regimen is "safe and effective," that "as many as half of women who take only [the first dose] mifepristone continue their pregnancies," and yet it is somehow improper to advocate that "medication abortion can be 'reversed.'"[5] ABOG's threat to revoke board certification encompasses physicians who testify for and speak out in favor

---

[4] Guttmacher Institute, "Most U.S. Obstetrician-Gynecologists in Private Practice Do Not Provide Abortions and Many Also Fail to Provide Referrals" (Nov. 27, 2017), https://tinyurl.com/2bw8mc9v (viewed Feb. 4, 2026).

[5] ACOG, "Facts Are Important: Medication Abortion 'Reversal' Is Not Supported by Science," https://www.acog.org/advocacy/facts-are-important/medication-abortion-reversal-is-not-supported-by-science (viewed Feb. 4, 2026).

of abortion pill reversal. Meanwhile, ABOG has implied that it will probably not take any actions against physicians "who may have criminal or civil action taken against them" for providing abortion,[6] as in the situation of illegal telemedicine abortions provided across states lines into a state prohibiting it.

ABOG argues that even if its threatened revocation of board certifications is politically motivated, that would not make it state action. Plaintiffs have never argued that it would. But when a mother cannot have her baby delivered in her local hospital by her preferred obstetrician because ABOG's revocation of his certification excludes the obstetrician from hospital medical staffs, then this is far more than a merely private action between a private entity and an obstetrician. This is state action by ABOG that profoundly affects the public in a way tantamount to state medical board discipline.

ABOG next devotes a section to asserting that "no Appellant has held or even sought ABOG certification" and that "[n]one of the Appellants has alleged any act by ABOG that restricted anyone's general ability to practice medicine." (ABOG Br. 29-30) But it is well-established that infringement on the First Amendment occurs based on the mere threat of an action, due to its chilling effect, without necessarily any restriction actually being imposed. *See, e.g.*, *NAACP v. Button*, 371 U.S. 415, 433 (1963) ("The threat of sanctions may deter [the exercise

---

[6] "Dobbs vs. Jackson Women's Health Organization Anniversary Statement" (June 27, 2023) https://tinyurl.com/565mmzsh (viewed Feb. 4, 2026).

of First Amendment rights] almost as potently as the actual application of sanctions."); *World Wide St. Preachers Fellowship v. Town of Columbia*, 245 F. App'x 336, 343 (5th Cir. 2007) ("Where the use of coercive power is threatened, First Amendment rights may be violated by the chilling effect of governmental action that falls short of a direct prohibition against speech.") (quoting *Aebisher v. Ryan*, 622 F.2d 651, 655 (2d Cir. 1980)).

Moreover, this Court has already found standing in this case to object to the conduct by ABOG, and this is the law of the case. "The District Court incorrectly dismissed AAPS's First Amendment claims on standing grounds. AAPS provides sufficient allegations to support standing …." *Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383, 387 (5th Cir. 2024). As this Court held, the remand (and thus this appeal) is to determine "whether the Board Defendants' acts qualify as state action." *Id.* at 388. This is the law of this case. "The law of the case doctrine provides that an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *Fuhrman v. Dretke*, 442 F.3d 893, 896 (5th Cir. 2006) (citations and inner quotations omitted). ABOG's argument about merely threatening to revoke board certification without yet actually doing so to any Plaintiff is an issue already decided against it in this litigation, and is not relevant to the application of state action doctrine to its conduct.

18

Finally, ABOG argues that it has free speech rights of its own to use statements like "pregnant individuals," as Plaintiffs quoted from one of ABOG's posted statements (ROA.696 ¶ 55), and ABOG argues that "Appellants are asking the courts to penalize its speech." (ABOG Br. 31) But Plaintiffs are not seeking in any way to censor ABOG's ideologically motivated statements. Rather, Plaintiffs object to the partisan ABOG misusing its monopoly power to impose its viewpoints on physicians by trying to censor those who, for example, reject the transgender notion that biological males can somehow become pregnant. ABOG's statements show it has an ideological agenda while it threatens to revoke the board certification of physicians on the opposite side of ABOG's agenda.

### III.   Misuse of Monopoly Power to Censor Speech and Exclude Physicians from the Market Is Actionable under the Sherman Act, and Antitrust Injury Exists.

Section 1 of the Sherman Act prohibits collusion that has an anti-competitive effect, and Section 2 of the Sherman Act prohibits the misuse of monopoly to exclude others. The Board Defendants are violating both sections with their campaign to threaten to and actually revoke board certifications. The effect of these revocations is to exclude physicians from hospitals and insurance networks, and thereby deny access to them.

Examples of two prominent, world-renowned physicians excluded from treating patients at hospitals are Plaintiffs Kory and Marik in this case. Collusively,

and in an abuse of the monopoly power, the Board Defendants took away the board certifications of these physicians and thereby blocked them from being able to see patients at hospitals. The effect of the Board Defendants' conduct at issue in this case is plainly anticompetitive, by removing these and other physicians from the marketplace of medical care. Plaintiffs Kory and Marik have antitrust injury as excluded physicians, and Plaintiff AAPS has antitrust injury due to the harm it suffers from the chilling effect caused by the Board Defendants' retaliation.

Despite this, the Board Defendants assert in their responses that Plaintiffs' antitrust claims should be denied at the pleading stage due to a lack of clarity about the relevant market. (ABIM Br. 27, 32, 37, etc.; ABOG Br. 13, 46, 47, 48, etc.) But this is not that kind of a run-of-the-mill antitrust case. Instead, this is a case whereby monopolists have denied access by physicians to the equivalent of an essential facility – board certification – in violation of Sherman Act. *See, e.g.*, *United States v. Terminal Railroad Association*, 224 U.S. 383 (1912).

Plaintiffs do not seek to apply anything that is not supported by the text of Sherman Act, or to depart from any existing relevant antitrust precedents. Under well-established antitrust principles, "Collusion always creates antitrust problems," as conceded by counsel for the Board Defendants on appeal in this action and adopted by the U.S. Court of Appeals for the Fifth Circuit in what has become the law of this case, *Ass'n of Am. Physicians & Surgeons Educ. Found.*, 103 F.4th at

399 (Ho, J., dissenting in part, quoting the appellate Oral Argument at 32:27-33:01). A textualist interpretation of the Sherman Act fully supports Plaintiffs' causes of action here, as its Section 1 states that: "Every … conspiracy, in restraint of trade or commerce among the several States … is hereby declared to be illegal." 15 U.S.C. § 1. The collusion by the Board Defendants to revoke board certifications is a conspiracy in restraint of trade, and is therefore illegal. Neither ABIM nor ABOG address the plain meaning of the text of Section 1, but instead rely on precedents from wholly unrelated economic circumstances without relevance here.

A relevant market need not be clearly defined in all antitrust cases, and this unusual misuse of monopoly power by the Board Defendants does not require defining a relevant market at this early stage. *See, e.g.*, *Cont'l Airlines, Inc. v. United Air Lines, Inc.*, 120 F. Supp. 2d 556, 567 n.19 (E.D. Va. 2000) ("[A] showing of manifest anticompetitive effects *a fortiori* renders unnecessary the definition of a relevant market."). Definition of a relevant market is needed for analyzing mergers under Section 7 of the Clayton Act, which is not at issue here, or if there is doubt about the market power of defendants. Here, the Board Defendants indisputably hold monopoly power over board certification for medical doctors in their specialties. This is sufficient at the pleading stage. It would be premature at this time to decide whether this is a Rule of Reason or a *per se*

antitrust case, and a definition of a relevant market is not typically required for *per se* violations or where there is direct evidence of harmful effects.

In their responses, both Board Defendants rely heavily on *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, and its line of cases. 429 U.S. 477 (1977). But *Brunswick* concerned an objection by a competitor to allowing his rivals to remain in business due to a merger, and the Supreme Court rejected the notion that antitrust laws are for the protection of competitors rather than for competition. As the Supreme Court later explained in elaborating on the *Brunswick* holding:

> The plaintiffs were 3 of the 10 bowling centers owned by a relatively small bowling chain. The defendant, one of the two largest bowling chains in the country, acquired several bowling centers located in the plaintiffs' market that would have gone out of business but for the acquisition. The plaintiffs sought treble damages under § 4, alleging as injury the loss of income that would have accrued had the acquired centers gone bankrupt and had competition in their markets consequently been reduced. We held that this injury, although causally related to a merger alleged to violate § 7, was not an antitrust injury, since it is inimical to the antitrust laws to award damages for losses stemming from continued competition. This reasoning in *Brunswick* was consistent with the principle that "the antitrust laws ... were enacted for 'the protection of *competition*, not *competitors.*"

*Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 109-10 (1986) (cleaned up, while retaining the final quotation from *Brown Shoe Co.* v. *United States*, 370 U.S. 294, 320 (1962) (emphasis in original)). The restraint on trade by the Board Defendants at issue here is injurious to Plaintiffs **and** harmful to competition too. When the Board Defendants revoke the board certification of a physician, the effect is to remove that physician from hospital medical staffs and insurance

22

networks. This is a reduction in output and in competition, which the Sherman Act safeguards against. The foregoing teaching by *Brunswick* and many similar cases cited by the Board Defendants is irrelevant to this case.

By mistakenly relying on merger-related and other antitrust decisions inapplicable here, ABIM argues at length for dismissal based on antitrust injury (ABIM Br. 27-40). But ABIM's conduct has excluded Plaintiffs Kory, Marik, and others from practicing in hospitals, and this is the type of anticompetitive injury that antitrust laws are designed to prevent. This Court has already held that the third remaining Plaintiff AAPS has Article III standing, so it was improper for the district court to dismiss this case based on antitrust injury.

### A. ABIM Fails to Distinguish the Precedent that Is Controlling Here.

Plaintiffs emphasized in their opening brief that there is a Supreme Court precedent, cited in an opinion relied upon below, which is remarkably close to the facts here. This Supreme Court precedent found the analogous antitrust claim to be valid. *See National Society of Professional Engineers v. U.S.*, 435 U.S. 679 (1978) (emphasized by Appellants Br. at 46-47). Yet ABIM relegates this precedent to merely a footnote in its unsuccessful attempt to distinguish it on the basis, according to ABIM, that it "involved a ban on competitive bidding for engineering services, an openly anticompetitive attempt to interfere with the setting of price by

free market forces." (ABIM Br. 31 n.8) ABIM argues further that "[a]ll of these cases involved economic activity that was alleged to affect competition." (*Id.*)

But the National Society of Professional Engineers (NSPE) was a nonprofit, standard-setting organization analogous to ABIM. The rule set by the NSPE was justified by it based on professionalism, just as the Board Defendants attempt to do here. The punishment by the NSPE was the equivalent of revoking the certification of engineers, just as the Board Defendants threaten to or have revoked certification of physicians. And engineering consulting work is no more or less of an economic activity than taking care of patients. The Supreme Court found an antitrust violation in *NSPE*, just as the district court below should have allowed the claims here by Plaintiffs to proceed.

### B. ABOG, Which Holds a Monopoly Over Board Certification in its Specialty, Violates the Sherman Act When It Misuses Its Monopoly Power to Chill Freedom of Speech.

The protection by the Sherman Act has never been limited by a controlling authority to "'competitors, purchasers, or consumers in the relevant market,'" as ABOG argues in its incomplete quotation of a non-precedential ruling by this Court. (ABOG Br. 34, quoting *Waggoner v. Denbury Onshore, L.L.C.*, 612 F. App'x 734, 737 (5th Cir. 2015)). The *Waggoner* decision says that proper antitrust plaintiffs are merely "[t]ypically" in the above group, and then explains, "[b]ut standing is ***not*** necessarily limited to this group." *Id.* (emphasis added). ABOG

omitted that crucial qualification from its brief. ABOG also omitted the more

detailed explanation, chock-full of U.S. Supreme Court precedents, which followed

in the *Waggoner* decision:

> *See Blue Shield of Va. v. McCready*, 457 U.S. 465, 472, 102 S. Ct. 2540, 73 L. Ed. 2d 149 (1982) ("As we have recognized, '[§ 4 of the Clayton Act] does not confine its protection to consumers, or to purchasers, or to competitors, or to sellers ....'" (quoting *Mandeville Island Farms, Inc. v. Am. Crystal Sugar Co.*, 334 U.S. 219, 236, 68 S. Ct. 996, 92 L. Ed. 1328 (1948) (alteration in original)); *cf. Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 112, 107 S. Ct. 484, 93 L. Ed. 2d 427 (1986) (extending the antitrust injury requirements of Clayton Act § 4 claims for damages to § 16 claims for injunctive relief).

*Waggoner*, 612 F. App'x at 737.

ABOG argues that the Fifth Circuit has "narrowly interpreted the meaning of

antitrust injury, excluding from it the threat of decreased competition." *Anago, Inc.*

*v. Tecnol Medical Prods.*, 976 F.2d 248, 249 (5th Cir. 1992) (ABOG Br. 39; *see id.*

at 33). But *Anago* has no relation to the misuse of monopoly power to infringe on

freedom of speech that is at issue here. Rather, in *Anago* the issue was a loss in

economic independence by the plaintiff due to a planned merger initiated by the

defendant. "The sole issue we face in this appeal is whether Anago, a target

company, has alleged an antitrust injury." *Id.* at 249.

Finally, ABOG objects to applying the "one plaintiff rule" used for Article

III standing to antitrust injury (antitrust standing), whereby it is sufficient for

merely one plaintiff to have standing for a case to proceed for all plaintiffs.

(ABOG Br. 46 n.31) But ABOG's quotation of a Supreme Court decision refers to the need for standing on each of multiple claims, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021), which did not relate to antitrust injury. Likewise, ABOG's citation to *Fontenot v. McCraw*, 777 F.3d 741, 746 (5th Cir. 2015), does not support its argument because *Fontenot* likewise concerned Article III standing on a claim-by-claim basis, rather than addressing the one plaintiff rule on a particular claim.

### IV.    The Government Should Produce Documents from the Biden Administration as Required by FACA and as Requested by Plaintiffs in Discovery Below.

The government insists on affirmance of the dismissal below by asserting a new argument, the opposite of what it argued below, concerning whether Plaintiffs must show an injury-in-fact to obtain the FACA-required documents. But the posture of this case is at the pleading stage, and thus an injury-in-fact to Plaintiffs should be inferred as they need these documents to proceed fully against the Board Defendants. Moreover, Plaintiffs requested related documents in discovery below and the government should have complied with this routine discovery request rather than moving for a protective order. The district court erred in granting a protective order for it to withhold documents dating from the Biden Administration that should have been disclosed long ago under FACA.

As Plaintiffs emphasized in their opening brief, "FACA rights are enforceable ***even after an advisory committee has been disbanded***." *Cummock v. Gore*, 180 F.3d 282, 292 (D.C. Cir. 1999) (emphasis added in Plaintiffs' opening brief, citing *Byrd v. United States EPA*, 174 F.3d 239, 243-44 (D.C. Cir. 1999)). The government attempts to avoid its disclosure obligations by arguing that it lacks downstream consequences for the purposes of Article III standing (Govt. Br. 19-20), but Plaintiffs' attempt to obtain disclosure by the government of its Biden Administration documents relating to the Disinformation Governance Board and the Board Defendants clearly does have "downstream consequences." Plaintiffs need these documents from the government to fully litigate its case against the Board Defendants.

## CONCLUSION

Plaintiffs-Appellants request reversal of the decision below with respect to the Board Defendants and the government.

Dated:  February 6, 2026           Respectfully submitted,

<u>/s/ Andrew L. Schlafly</u>
Andrew L. Schlafly
Attorney at Law
939 Old Chester Road
Far Hills, New Jersey 07931
Tel: 908-719-8608
Fax: 908-934-9207
Email: aschlafly@aol.com

*Attorney for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements pursuant to Fed. R. App. P. 32(a):

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

> this brief contains 6,487 words excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman font.

Dated: February 6, 2026

s/ Andrew L. Schlafly
Attorney for Appellants